**Law Offices of Avrum J. Rosen, PLLC**
38 New Street
Huntington, New York 11743
(631) 423-8527
Avrum J. Rosen, Esq.
Alex E. Tsionis, Esq.
Nico G. Pizzo, Esq.

*Proposed Attorneys for the Debtors and Debtors in Possession*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

In re:                                                                    Chapter 11

      COWORKRS 3RD STREET LLC                          Case No.: 23-44306-ess
      *dba* BOND GOWANUS,
                                    Debtor.
-------------------------------------------------------------X
COWORKRS 3RD STREET LLC
*dba* BOND BOWANUS

                              Plaintiff,                    Adv. Pro.: 23-

      - against –

92 THIRD STREET LLC,
OREN RICHLAND,
DEARBORN CAPITAL GROUP LLC,
INNOVO WORKS 92 THIRD STREET LLC,
and INNOVO WORKS LLC,

                              Defendants.
-------------------------------------------------------------X

## <u>COMPLAINT</u>

      CoWorkrs 3rd Street LLC *dba* Bond Gowanus the debtor and debtor in possession in the underlying bankruptcy case and plaintiff herein (the "<u>Plaintiff</u>" or "<u>Debtor</u>"), by its proposed attorneys, the Law Offices of Avrum J. Rosen, PLLC, as for its Complaint against Oren Richland ("<u>Oren</u>"), Dearborn Capital Group, LLC ("<u>Dearborn</u>"), Innovo Works LLC ("<u>Innovo Works</u>"), Innovo Works 92 Third Street LLC ("<u>Innovo 92</u>" together with Oren, Dearbon, Innovo Works collectively the "<u>Restrained Defendants</u>") and 92 Third Street LLC (the "<u>Landlord</u>" with the Restrained Defendants, collectively the "<u>Defendants</u>"), alleged as follows:

1

## NATURE OF THE PROCEEDING

1.      This is an action seeking, among other things, immediate injunctive relief for a myriad of reasons. First, the Debtor made demand on the Defendants for turnover of property of the estate and to vacate and turnover the leased space. The Defendants affirmatively denied the Debtor's demands despite the automatic stay. Second, The Defendants notified all the licensees to stop paying rent to the Debtor and instead send all rent payments to the Restrained Defendants. The Debtor notified the licensees of the bankruptcy filing and to continue to remit rent payments as previously scheduled to the Debtor, and a number of the licensees have voiced their frustration at the contradicting notice of rent. Third, a number of licensees have notified the Debtor that either they will be vacating their offices due to this conflict. Other licenses have notified the Debtor that they already paid the Defendants, due to their presence at the premises and are unsure of who is rightfully collecting rent.

2.      As it will be more formally pled below, this adversary proceeding surrounds the shocking and reprehensible actions of the defendants, Oren and Dearborn in their capacity as a fiduciary to the Debtor. Prior to the Filing Date, Oren and Dearborn were hired by the Debtor's parent company, Coworkrs, LLC d/b/a Bond Collective ("Bond"), as Chief Restructuring Officer and then elevated to Chief Executive Officer to help the company during a time it was financially struggling. Oren and Dearborn had complete control of Bond's employees, resources, bank accounts and revenue stream and that Oren became the face of Bond to all of its landlords, employees and members. In his capacity as CRO and Interim CEO, Oren began a rebranding process of Bond and used Bond's money and employees to work with a branding firm to create the name "Innovo Works" and commenced negotiations with the Landlord and other creditors on behalf of the Debtor. There came a time when Oren and Dearborn stopped paying the Landlord,

on behalf of the Debtor. Upon the Landlord taking back the Premises due to the cessation of payment, Oren began working as the face of the entities that purported to take over the Debtor's business, Innovo Works and Innovo 92. Oren on behalf of Dearborn entered in and executed a Letter of Intent ("LOI") and a Non-Disclosure Agreement ("NDA") with Bond and, there is no dispute, that Oren and Dearborn violated those agreements, breached their fiduciary duty and fraudulently conveyed the lease that had been negotiated on the Debtor's behalf to Innovo Works and Innovo 92..

## JURISDICTION

3.      This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334. This Application is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(1), (b)(2)(A), (b)(2)(B), and (b)(2)(E).

4.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5.      The statutory predicates for the relief sought herein include 11 U.S.C. §§ 105(a), 502, 541, 542, 543, 548, 550 of the Bankruptcy Code, Rules 6009, 7001, and 7065 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), section 853 of the RPAPL, New York Limited Liability Law and any common law, rule, regulation and/or any applicable law of any other jurisdiction in which assets that are property of the estate currently unknown to Plaintiff are located.

6.      Plaintiff consents to the entry of final orders and judgments by the Bankruptcy Judge presiding over this adversary proceeding if it is determined that the Bankruptcy Judge, absent consent of the parties, cannot enter final orders or judgment consistent with Article III of the United States Constitution.

## THE PARTIES

7.      The Plaintiff is a New York limited liability company and the debtor in possession of the underlying Bankruptcy Case. Bond is the sole managing member of the Plaintiff.

8.      Defendant, Landlord is a New York Limited Liability Company with an address for service c/o Samson Management LLC, 118-35 Queens Boulevard, Suite 1710, Forest Hills, New York, 11375.

9.      Defendant, Oren is an individual and manager of Dearborn.

10.     Defendant, Dearborn is a limited liability company with offices located at 1345 Avenue of the Americas, 33rd Floor, New York, New York 10105.

11.     Defendant, Innovo Works is a Delaware limited liability company.

12.     Defendant, Innovo 92 is a Delaware limited liability company.

## ALLEGATIONS APPLICABLE TO ALL CLAIMS FOR RELIEF

**A.      The Plaintiff's Business**

13.     The Plaintiff's principal asset consists of - a tenancy under a lease between itself and the Landlord consisting of a portion of the cellar, a portion of the first floor and a portion of the second floor in the building located at 68-80 Third Street Brooklyn, N.Y. 11231 (the "Premises").

14.     That lease (the "Lease") was entered into on October 6, 2014, for a term of ten (10) years. Attached hereto as **Exhibit "A"** is the Lease.

15.     The Plaintiff is a wholly owned subsidiary of Bond which is a ten-year-old luxury shared workspace brand that provides unique conference room, office space, hot desking and virtual amenities to its members (also referred to as licensees) on a month-to-month basis. It operates eight locations in four states.

16.     The Plaintiff is the leaseholder subsidiary that holds the Lease to the Premises.

**B.**     **Oren and Dearborn's Employment**

17.     The Covid-19 pandemic effected Bond particularly hard as the demand for shared workspace plummeted.  As a result, in February, 2022 Bond was actively seeking new investors. Oren of Dearborn was introduced as a potential investor and was very interested in Bond from the outset.

18.     Upon information and belief, Oren is the sole member and manager of Dearborn and Dearborn is essentially an alter-ego of Oren.

19.     In March, 2022 Oren as Dearborn entered into an LOI and executed an NDA for the purposes of learning the ins and outs of the business and setting up an investment into the company.

20.     Through this process Oren came to learn the entire business structure of Bond, inclusive of locations, business models, member lists, service providers, assets, and liabilities.

21.     The NDA signed by Oren on behalf of Dearborn specifically prohibits:

(a) Entering into any deal or other transaction with any business contact and/or relationship of the Disclosing Party...to whom the Receiving Party is introduced pursuant to the Agreement that (1) is the same as, substantially similar to, or in competition with the potential transaction(s) contemplated by the Agreement and/or that is being discussed by the parties hereunder; or (2) is otherwise reasonably capable of having the effect of preventing the Disclosing Party from deriving the full benefit of any such transactions....

22.     A list of "Prohibited Transactions" identified in the NDA was then set forth which included "(b) Soliciting or otherwise encouraging any Disclosing Party Contact to enter into a Prohibited Transaction" and "(c) Soliciting, procuring, inducing, or otherwise encouraging any of its employees, affiliates, or agents, and or any third party, to enter into any prohibited Transaction

or to respond to any solicitation to enter into a Prohibited Transaction. . .” A copy of the NDA is annexed hereto as **Exhibit "B"**.

23.      In addition, the term of that restriction was stated as:

The foregoing commitments of each Party shall survive any termination of the Relationship between the Parties, and shall continue for a period terminating on the later to occur of the date (a) 4 years following the date of this Agreement or (b) 3 years from the date on which Confidential Information is last disclosed under this Agreement.

24.      The earliest date that Oren could have taken any of the actions that he has taken against the Debtor in these cases is March of 2026. *See* NDA.

25.      Oren was given full access to Bond's confidential information.

26.      Although the original idea did not come to fruition throughout the next year, Oren proposed several different iterations of potential investment structures and had a keen interest in Bond.

27.      Oren never followed through on providing any financing for Bond through any of the proposed investment structures.

28.      Nonetheless, in April, 2023 – when Bond was in particularly dire straits – Oren was brought on as Chief Restructuring Officer and was given a $50,000/month salary.

29.      Oren was brought on for the specific purpose of helping Bond out of its financial straits by renegotiating leases, finding new investors, and restructuring the debt and judgments levied against Bond and its personal guarantors.

30.      To further these objectives a revised LOI was entered into memorializing the obligations of Oren inclusive of requirements that Oren fund Bond in the amount $250,000 within forty-five days, settle all lien judgments against Bond, renegotiate Bond leases and a varied list of further obligations.

31.     To date Oren has been paid $300,000 and he has diverted an additional $15,000 to pay his attorney.

32.     The restructuring agreement gave Oren exclusive control over Bond and certain subsidiaries, including the Debtor.

33.     Oren failed to fulfill a single one of the obligations required under the terms of the revised LOI.  The Revised LOI is annexed hereto as **Exhibit "C"**.

34.     In June of 2023, Oren was elevated to interim Chief Executive Officer of Bond.

35.     As such, Oren had complete control of Bond employees, resources, bank accounts and revenue stream and he became the face of Bond to all of its landlords, employees and members.

36.     During this period, Oren began a rebranding process of Bond with the stated goal of moving Bond toward financial stability and profit.

37.     Bond's money and employees were utilized in this process and a branding firm was hired. It was the rebranding of Bond that created the name "Innovo Works".

38.     The "Innovo" name was specifically discussed by Oren with Bond employees. It was Bond resources that created the new name for Bond's use.

39.     Upon information and belief, Oren – with the knowledge and help of certain landlords and investors – was working the entire time as CRO and Interim CEO of Bond, not for the benefit of Bond, as was his fiduciary duty, but for the destruction of Bond and to undertake a hostile takeover of all of Bond's leases and assets and to fraudulently convey them to Innovo and Innovo 59.

40.     Upon information and belief, Oren used his time as CRO and Interim CEO to negotiate new leases on behalf of the Debtor and then fraudulently conveyed that new lease to a

new entity he created (through the branding firm paid for with Bond resources) "Innovo Works, LLC".

41.     The Debtor has obtained a copy of the last draft of that lease which is annexed hereto as **Exhibit "M"**.

42.     Pursuant to the alleged draft of that lease, the Landlord knew that the Debtor owned all of the assets needed to run the operation and the transfer of those assets had to take place.  See paragraph 1(B) of Exhibit M.

43.     Upon information and belief, at some point in time, The Defendants decided to convert and fraudulently convey those assets for no consideration through the "Self-Help".

44.     All of this was in direct breach of Oren and Dearborn's fiduciary duty and the express conditions of the NDA and the Revised LOI.

45.     Upon information and belief, three Delaware LLC's were formed on November 15, 2023 by Michael Silberg, which include (collectively the "Innovo Entities"):

> INNOVO WORKS 55 BROADWAY LLC;
> INNOVO WORKS 92 THIRD STREET LLC; and
> INNOVO WORKS LLC.

46.     Upon information and belief, Oren has created the Innovo Entities with the same structure as Bond an entity for each leaseholder and a parent entity as managing member.

47.     During his tenure as CRO and interim CEO, Oren stopped paying rents to the Landlords.

48.     Upon information and belief, Oren ceased the rent payments as a strategic default to cause the Lease to be terminated so he could take over the Premises under the Innovo Entities.

## C.     The Stipulation of Settlement

49.     On or about March 24, 2022, the Landlord commenced an ejectment action in the Supreme Court of the State of New York, County of Kings.

50.     Then in May 2022, the Landlord and the Debtor entered into a stipulation of settlement (the "Stipulation"). A copy of the Stipulation is annexed hereto as **Exhibit "D"**.

51.     That Stipulation, which was "So Ordered" by the Court, purported to terminate the lease, the Judgment[1], and permitted the issuance of a warrant.

52.     The Stipulation also purportedly permitted "self-help" and included the right by the Landlord to seize the personal property of the Debtor and to discard it without liability.

53.     The terms of that self-help were materially different from the terms set forth in paragraph 17 of the Lease.

54.     Neither the Stipulation nor the Lease gave the Landlord to right to use the Debtor's equipment, employees, IP, networks, security system, nor to assume the Debtor's license agreements with its licensees.

55.     The Defendants unlawfully took possession of the Debtor's equipment, employees, IP, networks, security system, nor to assume the Debtor's license agreements with its licensees.

56.     Upon information and belief, the Debtor's employees are still on site and Oren is pressuring them to sign new employment agreements.

57.     The Stipulation includes several unenforceable *ipso facto* provisions related to Bankruptcy.

58.     That Stipulation permitted the Debtor to remain in the Premises until 2025 and set forth a repayment schedule for the arrears.

---

[1] Attached hereto as **Exhibit "E"**.

59.    The Debtor remained current under the Stipulation until Oren became the CRO with sole power to make payments.

60.    In September of 2023, Oren directed Bond employees to stop paying rent to the Landlord because he claimed that Bond had entered into a new lease with the Landlord and was now in a "rent free period", which is clearly indicated in **Exhibit "M"**.

61.    The Debtor later learned this was not true.

62.    Upon information and belief, this stop-rent order was the pretext utilized by the Landlord in cahoots with Oren and his new investors to move forward with an eviction of Bond and to enter into a new lease with the Innovo entities that was based upon the Lease negotiated on behalf of the Debtor.

63.    As a result of the foregoing, the Landlord's counsel sent default notices under the Stipulation, but never disclosed what is alleged to be a new lease with Oren's entity.

**D.    The Hostile Takeover of the Premises**

64.    On November 2, 2023, Oren resigned as Interim CEO of Bond effective immediately. His resignation e-mail is annexed hereto as **Exhibit "F"**.

65.    On the day Oren left, Bond was positioned with new investors to enter into a new lease with its Landlord.

66.    However, at that time Bond received indications from the Landlord that Oren was negotiating with them on behalf of someone other than Bond.

67.    As a result, a Cease-and-Desist email was sent to Oren and his counsel Jonathan Newman ("Newman") on November 3, 2023 stating:

Mr. Richland:

    As you know we represent Bond Collective. On Thursday November 2, 2023 you resigned as Interim CEO of Bond Collective

effective immediately. As Interim CEO you gained intimate knowledge of Bond Collective's lease holdings, weaknesses and strengths. You also gained access to contact points with Bond Collective's various landlords for the purpose of negotiating on behalf of Bond Collective. Despite your resignation you still owe a fiduciary duty to Bond Collective to refrain from using the knowledge you gained as its Interim CEO as means to benefit yourself at the expense of Bond Collective.

Despite the foregoing, it has come to our attention that you are actively engaging with Bond Collective landlords and employees for the purposes of undermining Bond Collective. You are hereby warned to Cease and Desist from continued contact with Bond Collective landlords and employees. You are further warned to Cease and Desist from utilizing any knowledge gained as Interim CEO of Bond Collective's inner workings and trade secrets for any purpose other than to benefit Bond Collective. If you continue to breach the fiduciary duty you owe to Bond Collective and/or continue to utilize Bond Collective's trade secrets for your own gain Bond Collective will utilize all legal means at its disposal.

Be advised accordingly.

A copy of the cease and desist email is attached hereto as **Exhibit "G"**.

68.    On November 6, 2023, Newman responded with the following:

The only contact Mr. Richland had with the landlords was to advise the landlords of 92 Third Street, 55 Broadway, 60 Broad Street and L.A. that he had resigned from Bond Collective. He also responded to an inquiry from the landlord of 92 Third Street as to who was reaching out to them regarding the matter (i.e., the investors in Bond Collective) as that landlord had no prior dealings with those individuals. The claim and/or notion that Mr. Richland engaged in any conversations with any of the landlords regarding anything other than his resignation is completely without merit.

*See* **Exhibit "G"**.

69.    On November 21, 2023, strategically right before the Thanksgiving holiday, Oren**,** *not a representative of the Landlord*, appeared at the Premises with security guards and had the locks changed on the Debtor's doors.

70.    Upon information and belief, Oren represented to the Debtor's employees and the Debtor's licensees that he now represents the new entity, Innovo Works who is the alleged lease holder.

71.    Upon information and belief, he informed the Debtor's employees that Innovo Works will enter into new agreements with them.

72.    Upon information and belief, he informed the licensees that Innovo Works will enter into new agreements with them.

73.    All of Bond's furniture, fixtures, equipment and services remain in place at Premises but Oren and cohorts have essentially stolen it all.

74.    All of this collateral is covered by a recorded financing statement from the United States Small Business Administration ("SBA"), who was not a party to any of these agreements.

75.    Nothing in the Stipulation gave the Landlord any rights to the Debtor's contract rights with its licensees, the right to take over its employees or to advise licensees to re-direct rents to the new entity.

76.    The Debtor's employees have continued to work and the Debtor is still paying for Employees, Porter and cleaning services, Internet, Backend software – calendar booking systems, etc, Food services – coffee etc, Furniture, SEO, Marketing Materials, Electric bills Rubbish removal, Cleaning supplies, Virtual mailboxes.

77.    Upon information and belief, Oren together with other individuals appeared at the Premises as representatives of Innovo Works.

78.    Upon information and belief, Oren together with other individuals sat at the front desk of the Premises and gave instructions to the Debtor's employees, gave Licensees new keys and threatened them not to tender December's payments to the Debtor and instead to pay those

funds to them. Annexed hereto as **Exhibit "H"** is this firm's demand letter to the Landlord and Oren and his counsel notifying them as to the filing, the automatic stay and the need to turn over the premises to the Debtor.

79.    The Landlord did not respond.

80.    The Landlord blatantly violated the automatic stay by sending the Notice, annexed hereto as **Exhibit "I"** to all of the licensees.

81.    The Debtor's proposed counsel then sent the letter advising them of the consequences of their actions and requested that they stop until this Court could make a decision as to the validity of the alleged self-help. That letter is annexed hereto as **Exhibit "J"**.

82.    It has not been responded to in a timely manner, or at all.

83.    In the meantime, licensees are either terminating their licenses or voicing their frustrations as to which entity they should pay rent to. Annexed hereto as **Exhibit "K"** are emails that the Debtor has received from several licensees.

84.    Upon information and belief, the Defendants have presented the licensees with new license agreements, thus attempting to cancel the Debtor's existing executory contracts. A copy of a sample agreement is annexed hereto as **Exhibit "L"**.

85.    Upon information and belief, the employees are being pressured to resign from the Debtor and become Oren's employees.

86.    The Debtor asserts that the new arrangements with the Landlords are the Debtors' property as they were negotiated on their behalf by their CRO and Interim CEO.

87.    The Debtor's possession of its leasehold was not terminated by the Warrant of Eviction.

89.     To the extent the "Self-Help" was utilized under the Lease, it did not comport with the strict requirements of the Lease.

89.     To the extent it was done under the Stipulation, it did not comport with those requirements as that provision did not permit a takeover of the Debtor's assets, employees and licensees.

90.     "Self-Help" does not terminate a lease.

91.     "Self-Help" was not accomplished under the strict requirements of New York law.

92.     The "new" leases were procured by Oren in his capacity as CRO and are Estate property.

93.     The Restrained Defendants and the Landlord are liable for damages.

94.     The Landlord and Oren have converted the assets of the Debtor which are part of the Secured Creditors' collateral, in addition to the lease negotiated on the Debtor's behalf and the transfer of those assets are a fraudulent conveyance.

95.     Oren and the Landlord are mere custodians under the Bankruptcy Code and those assets must be returned.

96.     Lastly Oren, the Landlord and their respective counsel have willfully violated the automatic stay and are liable for damages.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF AGAINST DEFENDANT OREN
### (Breach of Fiduciary Duty)

97.     The Plaintiff repeats and re-alleges the allegations set forth in paragraphs "1" through "96" as if set forth fully herein.

98.     Oren was the Debtor's CRO and Interim CEO.

99.     As the CRO and Interim CEO of the Debtor, Oren owed fiduciary duties of care, loyalty and good faith to the Debtor.

100.    Oren's fiduciary duties include obligations to exercise good faith, loyalty, good business judgment, to act prudently in the operation of the Debtor's business, to discharge his actions in good faith, to act in the best interests of the Debtor, and to put the interests of the Debtor before his own.

101.    Oren breached his fiduciary duty of care by, among other things, mismanaging the Debtor when he conspired and schemed a hostile takeover the Debtor and its assets.

102.    Oren breached his duty of loyalty and good faith by, among other things, placing his own personal interests before that of the Debtor's when used his time as CRO and CEO to negotiate new leases on behalf of a new entity he created (through the branding firm paid for with Bond money) Innovo Works, LLC.

103.    The Debtor was damaged by Oren's breach of his fiduciary duties.

104.    Oren's conduct and breaches described above are expressly prohibited and actionable under section 409 of the NYLLCL.

105.    Oren's misconduct, as discussed in this Complaint, is the proximate cause of the injuries suffered by the Debtor.

106.    The Debtor has suffered actual injury as a direct, foreseeable, and proximate result of Oren's breaches of his fiduciary duty.

107.    By reason of the foregoing, the Plaintiff is entitled to recover compensatory damages for Oren's breaches of his fiduciary duty to the Debtor, and a judgment against Oren in an amount as yet undetermined, plus interest thereon at the maximum legal rate, or such other amount as may be determined by the Court.

108.    Additionally, because Oren's conduct was willful and involved a high degree of moral culpability, Oren should be ordered to pay to the Plaintiff punitive or exemplary damages, in an amount to be determined at trial.

### SECOND CLAIM FOR RELIEF AGAINST DEFENDANTS OREN DEARBORN
### (Breach of Non-Disclosure Agreement)

109.    The Plaintiff repeats and re-alleges the allegations set forth in paragraphs "1" through "108" as if set forth fully herein.

110.    The Debtor and Dearborn entered into the NDA.

111.    Oren executed the NDA on behalf of Dearbon as its "Manager".

112.    Oren is the sole member and manager of Dearborn and Dearborn is essentially an alter ego of Oren.

113.    Oren and Dearborn breached the NDA by using the Plaintiff's trade secrets for their own personal gain and engaging in Prohibited Transactions under the NDA, and the terms of the NDA were still in effect at this time.

114    As a result of Oren's and Dearborn's breach of the NDA, the Plaintiff was damaged in an amount to be determined at trial.

115.    By reason of the foregoing, the Plaintiff is entitled to a judgment against Oren and Dearborn in an amount as yet undetermined, together with interest at the maximum legal rate, or such other amount as may be determined by the Court.

### THIRD CLAIM FOR RELIEF AGAINST DEFENDANTS OREN AND DEARBORN
### (Fraud)

116.    The Plaintiff repeats and re-alleges the allegations set forth in paragraphs "1" through "115" as if set forth fully herein.

117.    Oren and Dearborn were engaged by the Plaintiff for the purposes of learning the intricacies of the Plaintiff and setting up an investment into the Debtor's parent company.

118.    Oren and Dearborn led the Plaintiff to believe that they were going to do what they were engaged to do. Secretly, however, Oren and Dearborn were scheming a hostile takeover of the Plaintiff and its parent company.

119.    Oren – with the knowledge and help of certain landlords and investors – was working the entire time as CRO and Interim CEO of Bond, not for the benefit of Bond as was his fiduciary duty, but for the destruction of Bond and to undertake a hostile takeover of all of Bond's leases and assets.

120.    In fact, as it turned out Oren, used his time as CRO and CEO to negotiate new leases on behalf of  the Debtor but then transferred those leases to a new entity he created (through the branding firm paid for with Bond money) Innovo Works, LLC.

121.    The Plaintiff (and its parent) reasonably relied on Oren's and Dearborn's actions and statements.

122.    As a result of the fraud perpetrated by Orden and Dearborn, the Debtor was damaged.

123.    By reason of the foregoing, the Plaintiff is entitled to a judgment against Oren and Dearborn in an amount as yet undetermined, together with interest at the maximum legal rate, or such other amount as may be determined by the Court

124.    In addition, the Plaintiff is entitled to recover punitive or exemplary damages from Oren and Dearborn, in an amount to be determined by the Court, as the actions by Oren and Dearborn were willful and dishonest.

**FOURTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS**
**(Property and Turn Over of Property of the Estate under 11 U.S.C. §§ 541. 542, 543)**

125.     The Plaintiff repeats and re-alleges the allegations set forth in paragraphs "1" through "124" as if set forth fully herein.

126.     The Debtor has a legal and equitable interest in the transferred assets.

127.     The Debtor's legal and equitable interest in the transferred assets is property of the Debtor's estate.

128.     The Defendants had no right or entitlement to the transferred assets or the benefit thereof.

129.     By reason of the foregoing, and in accordance with sections 541, 542 and 543 of the Bankruptcy Code, the Plaintiff is entitled to the entry of an order and judgment directing the Defendants to turn over the Debtor's assets, together with interest at the maximum legal rate, or such other amount as may be determined by the Court, including possession of the Premises.

**FIFTH CLAIM FOR RELIEF AGAINST DEFENDANTS**
**OREN, DEARBORN INNOVO WORKS AND INNOVO 92**
**<u>(Avoidance and Recovery of Fraudulent Transfer Under 11 U.S.C. §§ 544 and 550)</u>**

130.     The Plaintiff repeats and re-alleges the allegations set forth in paragraphs "1" through "129" as if set forth fully herein.

131.     The transfer of the Debtor's assets, including the new lease, was made within two (2) years of the Petition Date.

132.     The Debtor did not receive reasonably equivalent value in exchange for the transfers.

133.     Upon information and belief, the Debtor: (a) was insolvent on the date of the transfers or became insolvent as a result of the transfers; (b) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining

with it was an unreasonably small capital; or (c) intended to incur or believed that it would incur debts beyond its ability to pay as they matured.

134.    At the time of the transfers, the Debtor was insolvent, or had incurred, or was intending to incur, debts beyond its ability to pay them as they became due.

135.    At the time of the transfers, the Debtor knew, or should have known, its creditors held claims against it.

136.    The transfer of the Plaintiff's assets, including the new lease, constitutes a fraudulent transfer under section 544 of the Bankruptcy Code.

137.    By reason of the foregoing, the Plaintiff is entitled to an order avoiding the transfers pursuant to sections 544 and 550 of the Bankruptcy Code and a judgment against the Restrained Defendants in an amount as yet undetermined, together with interest at the maximum legal rate, or such other amount as may be determined by the Court.

## SIXTH CLAIM FOR RELIEF AGAINST DEFENDANTS
## OREN, DEARBORN INNOVO WORKS AND INNOVO 92
**(Avoidance and Recovery of Fraudulent Transfer Under 11 U.S.C. §§ 548(a)(1)(B) and 550)**

138.    The Plaintiff repeats and re-alleges the allegations set forth in paragraphs "1" through "137" as if set forth fully herein.

139.    The transfer of the Plaintiff's assets was made within two (2) years of the Petition Date.

140.    The Debtor did not receive reasonably equivalent value in exchange for the transfers.

141.    Upon information and belief, the Debtor: (a) was insolvent on the date of the transfers or became insolvent as a result of the transfers; (b) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining

with it was an unreasonably small capital; or (c) intended to incur or believed that it would incur debts beyond its ability to pay as they matured.

142.    At the time of the transfers, the Debtor was insolvent, or had incurred, or was intending to incur, debts beyond its ability to pay them as they became due.

143.    At the time of the transfers, including the new lease, the Debtor knew, or should have known, its creditors held claims against it.

144.    The transfer of the Debtor's assets constitutes a fraudulent transfer under section 548(a)(1)(B) of the Bankruptcy Code.

145.    By reason of the foregoing, the Plaintiff is entitled to an order avoiding the transfers pursuant to sections 548(a)(1)(B) and 550 of the Bankruptcy Code and a judgment against the Restrained Defendants in an amount as yet undetermined, together with interest at the maximum legal rate, or such other amount as may be determined by the Court.

**SEVENTH CLAIM FOR RELIEF AGAINST DEFENDANTS
OREN, DEARBORN INNOVO WORKS AND INNOVO 92
<u>(Recovery of Fraudulent Transfer under § 11 U.S.C. § 550)</u>**

146.    The Plaintiff repeats and re-alleges the allegations set forth in paragraphs "1" through "145" as if set forth fully herein.

147.    Section 550(a) of the Bankruptcy Code provides in relevant part:

> [T]o the extent that a transfer is avoided under section 544, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from . . . the initial transferee of such transfer or the entity for whose benefit such transfer was made; or . . . any immediate or mediate transferee of such initial transferee.

11 U.S.C. § 550(a).

148.    Under section 550(a) of the Bankruptcy Code, the Plaintiff may recover the transfer(s) of the Debtor's assets or the value thereof.

149.    By reason of the foregoing, the Plaintiff is entitled to an order recovering the transfers, or the value thereof, pursuant to section 550 of the Bankruptcy Code and a judgment against the Restrained Defendants in an amount as yet undetermined, together with interest at the maximum legal rate, or such other amount as may be determined by the Court.

### EIGHTH CLAIM FOR RELIEF AGAINST DEFENDANTS
### OREN, DEARBORN INNOVO WORKS AND INNOVO 92
### (Conversion)

150.    The Plaintiff repeats and re-alleges the allegations set forth in paragraphs "1" through "149" as if set forth fully herein.

151     The Plaintiff had a right to possess its assets, which included, among other things, furniture, fixtures and equipment, and its new lease, at the 68 3rd Street location including the Premises.

152.    The Restrained Defendants actually assumed control over the property and the Premises that the Plaintiff had a right to control and possess, and thereby interfered with the Plaintiff's property in a manner that infringed on the Plaintiff's rights.

153.    By reason of the foregoing, the Plaintiff is entitled to a judgment against the Restrained Defendants in an amount as yet undetermined, together with interest at the maximum legal rate, or such other amount as may be determined by the Court.

### NINTH CLAIM FOR RELIEF AGAINST DEFENDENTS
### OREN, DEARBORN INNOVO WORKS AND INNOVO 92
### (Unjust Enrichment Under New York Law)

154.    The Plaintiff repeats and re-alleges the allegations set forth in paragraphs "1" through "153" as if set forth fully herein.

155     The Restrained Defendants were enriched as a result of the transfer of the Plaintiff's assets.

156.    The enrichment of the Restrained Defendants was at the expense of the Plaintiff.

157.    The circumstances relating to the transfer of the Debtor's assets are such that equity and good conscience require the Restrained Defendants to compensate the Debtor's estate.

158.    By reason of the foregoing, the Plaintiff is entitled to an order and judgment against the Restrained Defendants in an amount as yet undetermined, together with interest at the maximum legal rate, or such other amount as may be determined by the Court.

### TENTH CLAIM FOR RELIEF AGAINST ALL DEFENDENTS
### (Action for Forcible or Unlawful Entry or Detainer Under RPAPL § 853)

159.    The Plaintiff repeats and re-alleges the allegations set forth in paragraphs "1" through "158" as if set forth fully herein.

160.    The Plaintiff was in actual possession of the Premises.

161.    The Defendants entered the Premises without permission, legal right or justification with the intent to evict the Plaintiff and convert its Property.

162.    The Defendants disseized, ejected and/or put out the Plaintiff during the term of the Plaintiff's Lease by entering the Premises, removing the Debtor, locking the Plaintiff out, changing the locks and/or passcodes/key entries to which the Defendants knew that the Plaintiff did not have keys or access of the Premises and refusing to restore possession to the Plaintiff despite repeated demands by the Plaintiff.

163.    By reason of the foregoing, the Plaintiff is entitled to an order and judgment against the Defendants in an amount as yet undetermined, together with interest at the maximum legal rate, or such other amount as may be determined by the Court.

164.    In addition, and as a direct and proximate result of the wrongful eviction, the Plaintiff is entitled to treble damages under NY CLS RPAPL § 853.

### THIRTEENTH CLAIM FOR RELIEF AGAINST ALL DEFENDENTS

**(Preliminary and Permanent Injunction)**

165.    The Plaintiff repeats and re-alleges the allegations set forth in paragraphs "1" through "164" as if set forth fully herein.

166.    The Plaintiff seeks both a preliminary and permanent injunction against the Defendants causing them to cease and desist from their current actions, which are interfering with the orderly administration of the Plaintiff's bankruptcy estate and preventing any future interference of same.

167.    By reason of the foregoing, the Plaintiff is entitled to a preliminary and permanent injunction against the Defendants.

## RESERVATION OF RIGHTS

168.    During the course of this adversary proceeding, the Plaintiff may learn (through discovery or otherwise) of additional causes of action. Accordingly, the Plaintiff reserves his right to amend this Complaint to include: (i) further information regarding the allegations herein; (ii) revisions to the Defendants' names; (iii) additional defendants; (iv) additional causes of action; and/or (v) to seek recovery of such additional transfers (the "Amendments"), that may become known to the Plaintiff at any time during this adversary proceeding, through formal discovery or otherwise, and for the Amendments to relate back to the Complaint.

**WHEREFORE**, the Plaintiff respectfully demands: (i) judgment against the Defendants consistent with the allegations set forth in the Complaint; together with (ii) such other, further and different relief that this Court deems just, proper and equitable under the facts and circumstances herein.

Dated: November 30, 2023
      Huntington, New York

Respectfully submitted,

**Law Offices of Avrum J. Rosen, PLLC**

By:    <u>*/s/ Avrum J. Rosen*</u>
        Avrum J. Rosen, Esq.
        Alex E. Tsionis, Esq.
        Nico G. Pizzo, Esq.
        38 New Street
        Huntington, NY 11743
        (631) 423-8527
        arosen@ajrlawny.com
        atsionis@ajrlawny.com
        npizzo@ajrlawny.com

*Proposed Counsel to the Debtors*
*and Debtors in Possession*