# Exhibit "B"

NON-DISCLOSURE AGREEMENT

This Non-Disclosure Agreement (the "Agreement") is made as of the 22nd day of March, 2022 (the "Effective Date"), by and between Dearborn Capital Group LLC, a Deleware limited liability company (the "Disclosing Party"), and Coworkrs LLC DBA Bond Collective, a New York limited liability company (the "Receiving Party"), collectively referred to herein as the "Parties" and individually as a "Party".

1. **Purpose.** The Disclosing Party and the Receiving Party wish to explore a possible business opportunity of mutual interest regarding Bond Collective (the "Relationship") in connection with which the Disclosing Party has disclosed and may further disclose its Confidential Information (as defined below) to the other. This Agreement is intended to allow the Parties to discuss and evaluate the Relationship while protecting the Disclosing Party's Confidential Information (including Confidential Information previously disclosed to the other Party) against unauthorized use or disclosure.

2. **Definition of Confidential Information.** "Confidential Information" means any oral, written, visual, graphic or machine readable information disclosed or shared by the Disclosing Party to the Receiving Party, including, but not limited to, information which relates to patents, patent applications, research, product plans, products, developments, inventions, processes, designs, drawings, engineering, formulae, markets, business plans, agreements with third parties, services, customers, marketing or finances of the Disclosing Party. The Receiving Party's obligations only extend to Confidential Information that: (a) is marked in writing as confidential or proprietary at the time of disclosure, (b) is unmarked (e.g., disclosed orally or visually) but is identified as confidential at the time of disclosure and is confirmed in writing summarizing the information considered confidential within a reasonable time (not to exceed 14 days) after the oral or visual disclosure, or (c) due to the circumstances of disclosure or the nature of the information, should reasonably be considered Confidential Information. For additional guidance, see Confidentiality Agreements and Confidential Information Protections.

3. **Non-Disclosure of Confidential Information.**

    (a) The Receiving Party agrees not to use any Confidential Information disclosed to it by the Disclosing Party for its own use or for any purpose other than to carry out discussions concerning, and the undertaking of, the Relationship. The Receiving Party shall not disclose or permit disclosure of any Confidential Information to third parties or employees other than directors, officers, employees, consultants, contractors and agents who are required to have the information in order to carry out the discussions regarding the Relationship. The Receiving Party has had or will have its directors, officers, employees, consultants, contractors and agents who have access to Confidential Information of the Disclosing Party sign a non-disclosure agreement in content substantially similar to this Agreement. The Receiving Party is responsible for breaches of this Agreement by persons to whom it discloses Confidential Information received hereunder. The Receiving Party agrees that it shall take reasonable measures to protect the secrecy of and avoid disclosure or use of Confidential Information of the other Party in

1

order to prevent it from falling into the public domain or the possession of persons other than those persons authorized under this Agreement to have any such information. Such measures shall include, but not be limited to, the highest degree of care that the Receiving Party utilizes to protect its own Confidential Information of a similar nature, which shall be no less than reasonable care. The Receiving Party agrees to notify the Disclosing Party in writing of any actual or suspected misuse, misappropriation or unauthorized disclosure of Confidential Information of the Disclosing Party which may come to its attention.

(b) Exceptions. Notwithstanding the above, the Receiving party shall not have liability to the other with regard to any Confidential Information which the Receiving Party can prove:

(i) was in the public domain at the time it was disclosed or has entered the public domain through no fault of the Receiving Party;

(ii) was known to or in the possession of the Receiving Party, without restriction, at the time of disclosure, as demonstrated by files in existence, or other competent evidence, at the time of disclosure;

(iii) is disclosed with the prior written approval of the Disclosing Party;

(iv) was independently developed by the Receiving Party without any use of the Confidential Information of the Disclosing Party and by employees of the Receiving Party who have not had access to the Confidential Information, as demonstrated by files created at the time of such independent development or other competent evidence; or

(v) becomes known to the Receiving Party, without restriction, from a source other than the Disclosing Party without breach of this Agreement by the Receiving Party and otherwise not in violation of the Disclosing Party's rights.

(c) Required Disclosures. If the Receiving Party is confronted with legal action to disclose Confidential Information received under this Agreement, unless prohibited by applicable law, the Receiving Party shall promptly notify the Disclosing Party, and reasonably assist the Disclosing Party in obtaining a protective order to prevent or limit the requested disclosure. In the event that the Disclosing Party is unable to obtain or does not seek a protective order, the Receiving Party shall furnish only that portion of the Confidential Information which is legally required to produce.

4. **Non-Circumvention.** The Receiving Party is prohibited from engaging in any of the following activities, either directly or indirectly through an affiliate, employee, third-party agent, or otherwise, without the Disclosing Party's prior written consent (which consent shall be at Disclosing Party's sole discretion) in each instance:

(a) Entering into any deal or other transaction with any business contact and/or relationship of the Disclosing Party (each a "Disclosing Party Contact") to whom the Receiving Party is introduced to pursuant to this Agreement that (1) is the same as, substantially similar to, or in competition with the potential transaction(s) contemplated by this Agreement and/or that is being discussed by the parties hereunder; or (2) is otherwise reasonably capable of

having the effect of preventing the Disclosing Party from deriving the full benefit of any such transaction(s) (each a "Prohibited Transaction");

(b) Soliciting or otherwise encouraging any Disclosing Party Contact to enter into a Prohibited Transaction;

(c) Soliciting, procuring, inducing, or otherwise encouraging any of its employees, affiliates, or agents, and/or any third party, to enter into any Prohibited Transaction or to respond to any solicitation to enter into any Prohibited Transaction; or

(d) Taking any action or engaging in any conduct interfering, directly or indirectly, with any relationship or transaction disclosed as a component or portion of Confidential Information pursuant to this agreement.

5. **Return of Materials.** Any materials or documents that have been furnished by the Disclosing Party to the Receiving Party in connection with the Relationship shall be promptly returned by the Receiving Party, accompanied by all copies of such documentation, within 10 days after (a) the Relationship has been rejected or concluded or (b) the written request of the Disclosing Party.

6. **No Rights Granted.** As between the Parties, all Confidential Information will remain the exclusive property of the Disclosing Party. Nothing in this Agreement shall be construed as granting any rights or licenses under any patent, copyright or other intellectual property right of either Party, nor shall this Agreement grant the Receiving Party any rights in or to the Disclosing Party's Confidential Information other than the limited right to review such Confidential Information solely for the purpose of determining whether to enter into the Relationship.

7. **Confidentiality Period.** The foregoing commitments of each Party shall survive any termination of the Relationship between the Parties, and shall continue for a period terminating on the later to occur of the date (a) 4 years following the date of this Agreement or (b) 3 years from the date on which Confidential Information is last disclosed under this Agreement.

8. **Successors and Assigns.** The terms and conditions of this Agreement shall inure to the benefit of and be binding upon the respective successors and assigns of the parties, provided that Confidential Information of the Disclosing Party may not be assigned without the prior written consent of the Disclosing Party, with the exception of an assignment carried out as part of a merger, restructuring, or reorganization, or as a sale or transfer of all or substantially all of a Party's assets. Any assignment made in violation of this provision shall be null and void. Nothing in this Agreement, express or implied, is intended to confer upon any party other than the Parties hereto or their respective successors and assigns any rights, remedies, obligations, or liabilities under or by reason of this Agreement, except as expressly provided in this Agreement.

9. **Severability.** If one or more provisions of this Agreement are held to be unenforceable under applicable law, the Parties agree to renegotiate such provision in good faith. In the event that the Parties cannot reach a mutually agreeable and enforceable replacement for such provision, then

(a) such provision shall be excluded from this Agreement, (b) the balance of the Agreement shall be interpreted as if such provision were so excluded and (c) the balance of the Agreement shall be enforceable in accordance with its terms.

10. **Independent Contractors; No Obligation.** The Parties are independent contractors, and nothing contained in this Agreement shall be construed to constitute the Parties as partners, joint venturers, co-owners or otherwise as participants in a joint or common undertaking. No Party shall incur any debts or make any commitments for the other under this Agreement. Nothing contained in this Agreement shall be construed as obligating either Party to enter into any agreement or transact any business with the other Party, or to purchase, transfer or otherwise dispose of any technology, services or products as a result of the execution of this Agreement.

11. **Governing Law; Jurisdiction.** This Agreement and all acts and transactions pursuant hereto and the rights and obligations of the parties hereto shall be governed, construed and interpreted in accordance with the laws of the State of New York, without giving effect to principles of conflicts of law. The Parties hereby agree that any action arising out of this Agreement will be brought solely in any state or federal court located in New York, New York County. Each of the Parties hereto consents to the exclusive jurisdiction and venue of the courts of New York.

12. **Remedies; Indemnification.** Each Party agrees that its obligations set forth in this Agreement are necessary and reasonable in order to protect the Disclosing Party and its business. The Parties each expressly agree that due to the unique nature of the Disclosing Party's Confidential Information, monetary damages may be inadequate to compensate the Disclosing Party for any breach by the Receiving Party of its covenants and agreements set forth in this Agreement. Accordingly, the Parties each agree and acknowledge that any such violation or threatened violation may cause irreparable injury to the Disclosing Party and that, in addition to any other remedies that may be available, in law, in equity or otherwise, the Disclosing Party shall be entitled (a) to seek injunctive relief against the threatened breach of this Agreement or the continuation of any such breach by the Receiving Party, without the necessity of proving actual damages, and (b) to be indemnified by the Receiving Party from any loss or harm, including but not limited to attorney's fees, arising out of or in connection with any breach or enforcement of the Receiving Party's obligations under this Agreement or the unauthorized use or disclosure of the Disclosing Party's Confidential Information.

13. **Export Laws.** The Parties acknowledge that applicable United States law restricts or prohibits the provision or export of certain goods, technical data and information outside of the United States or to persons or entities who are not United States persons and each Party shall comply with any such applicable U.S. export laws.

14. **Warranty.** The Disclosing Party warrants that it has the right to make the disclosures under this Agreement. No other warranties, including warranties of merchantability, fitness for a particular purpose or noninfringement, are made by either party under this agreement. Any information

exchanged under this agreement is provided "AS IS." The Disclosing Party shall have no liability to the Receiving Party whatsoever relating to or arising from the Receiving Party's use of the Confidential Information or from any errors or omissions in, or any business decisions made by the Receiving Party in reliance on, any Confidential Information. Nor shall the Disclosing Party be liable for any expenses, losses, damages, or action incurred or undertaken by the Receiving Party as a result of its receipt of the Confidential Information."

15. **Amendment and Waiver.** The terms of this Agreement may only be amended in writing signed by authorized representatives of both Parties. Any amendment or waiver effected in accordance with this Section shall be binding upon the Parties and their respective successors and assigns. The waiver by a Party of a breach of any provision of this Agreement by the other Party will not operate or be interpreted as a waiver of any other or subsequent breach. All waivers must be in writing and signed by the waiving Party.

16. **Counterparts.** This Agreement may be executed via facsimile or digital signatures, and in two or more counterparts, each of which shall be deemed an original and all of which together shall constitute one instrument.

17. **No Publicity.** The Receiving Party shall not, without the prior consent of the Disclosing Party, disclose to any other person the fact that Confidential Information of the Disclosing Party has been and/or may be disclosed under this Agreement, that discussions or negotiations are taking place between the Parties, or any of the terms, conditions, status or other facts with respect thereto, except as required by law and then only with prior notice, unless prohibited by applicable law, as soon as possible to the other Party.

18. **Entire Agreement.** This Agreement is the product of both of the Parties hereto, and constitutes the entire Agreement between such Parties pertaining to the subject matter hereof, and merges all prior negotiations and drafts of the Parties with regard to the transactions contemplated herein. Any and all other written or oral agreements existing between the Parties hereto regarding such transactions are expressly canceled.

The Parties have executed this Non-Disclosure Agreement as of the date first written above.

Dearborn Capital Group, LLC

By: _____
Name:    Oren Richland
Title:    Manager

CoWorkrs LLC, DBA Bond Collective

By: _____
Name: Elie Deitsch
Title: Manager

NON-DISCLOSURE AGREEMENT

This Non-Disclosure Agreement (the "Agreement") is made as of the 22nd day of March, 2022 (the "Effective Date"), by and between Coworkrs LLC DBA Bond Collective, a New York limited liability company (the "Disclosing Party"), and Dearborn Capital Group LLC, a delaware New York limited liability company (the "Receiving Party"), collectively referred to herein as the "Parties" and individually as a "Party".

1. **Purpose.** The Disclosing Party and the Receiving Party wish to explore a possible business opportunity of mutual interest regarding Bond Collective (the "Relationship") in connection with which the Disclosing Party has disclosed and may further disclose its Confidential Information (as defined below) to the other. This Agreement is intended to allow the Parties to discuss and evaluate the Relationship while protecting the Disclosing Party's Confidential Information (including Confidential Information previously disclosed to the other Party) against unauthorized use or disclosure.

2. **Definition of Confidential Information. "Confidential Information"** means any oral, written, visual, graphic or machine readable information disclosed or shared by the Disclosing Party to the Receiving Party, including, but not limited to, information which relates to patents, patent applications, research, product plans, products, developments, inventions, processes, designs, drawings, engineering, formulae, markets, business plans, agreements with third parties, services, customers, marketing or finances of the Disclosing Party. The Receiving Party's obligations only extend to Confidential Information that: (a) is marked in writing as confidential or proprietary at the time of disclosure, (b) is unmarked (e.g., disclosed orally or visually) but is identified as confidential at the time of disclosure and is confirmed in writing summarizing the information considered confidential within a reasonable time (not to exceed 14 days) after the oral or visual disclosure, or (c) due to the circumstances of disclosure or the nature of the information, should reasonably be considered Confidential Information. For additional guidance, see Confidentiality Agreements and Confidential Information Protections.

3. **Non-Disclosure of Confidential Information.**

    (a) The Receiving Party agrees not to use any Confidential Information disclosed to it by the Disclosing Party for its own use or for any purpose other than to carry out discussions concerning, and the undertaking of, the Relationship. The Receiving Party shall not disclose or permit disclosure of any Confidential Information to third parties or employees other than directors, officers, employees, consultants, contractors and agents who are required to have the information in order to carry out the discussions regarding the Relationship. The Receiving Party has had or will have its directors, officers, employees, consultants, contractors and agents who have access to Confidential Information of the Disclosing Party sign a non-disclosure agreement in content substantially similar to this Agreement. The Receiving Party is responsible for breaches of this Agreement by persons to whom it discloses Confidential Information received hereunder. The Receiving Party agrees that it shall take reasonable measures to protect the secrecy of and avoid disclosure or use of Confidential Information of the other Party in

1

order to prevent it from falling into the public domain or the possession of persons other than those persons authorized under this Agreement to have any such information. Such measures shall include, but not be limited to, the highest degree of care that the Receiving Party utilizes to protect its own Confidential Information of a similar nature, which shall be no less than reasonable care. The Receiving Party agrees to notify the Disclosing Party in writing of any actual or suspected misuse, misappropriation or unauthorized disclosure of Confidential Information of the Disclosing Party which may come to its attention.

(b) Exceptions. Notwithstanding the above, the Receiving party shall not have liability to the other with regard to any Confidential Information which the Receiving Party can prove:

(i) was in the public domain at the time it was disclosed or has entered the public domain through no fault of the Receiving Party;

(ii) was known to or in the possession of the Receiving Party, without restriction, at the time of disclosure, as demonstrated by files in existence, or other competent evidence, at the time of disclosure;

(iii) is disclosed with the prior written approval of the Disclosing Party;

(iv) was independently developed by the Receiving Party without any use of the Confidential Information of the Disclosing Party and by employees of the Receiving Party who have not had access to the Confidential Information, as demonstrated by files created at the time of such independent development or other competent evidence; or

(v) becomes known to the Receiving Party, without restriction, from a source other than the Disclosing Party without breach of this Agreement by the Receiving Party and otherwise not in violation of the Disclosing Party's rights.

(c) Required Disclosures. If the Receiving Party is confronted with legal action to disclose Confidential Information received under this Agreement, unless prohibited by applicable law, the Receiving Party shall promptly notify the Disclosing Party, and reasonably assist the Disclosing Party in obtaining a protective order to prevent or limit the requested disclosure. In the event that the Disclosing Party is unable to obtain or does not seek a protective order, the Receiving Party shall furnish only that portion of the Confidential Information which is legally required to produce.

4. **Non-Circumvention.** The Receiving Party is prohibited from engaging in any of the following activities, either directly or indirectly through an affiliate, employee, third-party agent, or otherwise, without the Disclosing Party's prior written consent (which consent shall be at Disclosing Party's sole discretion) in each instance:

(a) Entering into any deal or other transaction with any business contact and/or relationship of the Disclosing Party (each a "Disclosing Party Contact") to whom the Receiving Party is introduced to pursuant to this Agreement that (1) is the same as, substantially similar to, or in competition with the potential transaction(s) contemplated by this Agreement and/or that is being discussed by the parties hereunder; or (2) is otherwise reasonably capable of

having the effect of preventing the Disclosing Party from deriving the full benefit of any such transaction(s) (each a "Prohibited Transaction");

(b) Soliciting or otherwise encouraging any Disclosing Party Contact to enter into a Prohibited Transaction;

(c) Soliciting, procuring, inducing, or otherwise encouraging any of its employees, affiliates, or agents, and/or any third party, to enter into any Prohibited Transaction or to respond to any solicitation to enter into any Prohibited Transaction; or

(d) Taking any action or engaging in any conduct interfering, directly or indirectly, with any relationship or transaction disclosed as a component or portion of Confidential Information pursuant to this agreement.

5. **Return of Materials.** Any materials or documents that have been furnished by the Disclosing Party to the Receiving Party in connection with the Relationship shall be promptly returned by the Receiving Party, accompanied by all copies of such documentation, within 10 days after (a) the Relationship has been rejected or concluded or (b) the written request of the Disclosing Party.

6. **No Rights Granted.** As between the Parties, all Confidential Information will remain the exclusive property of the Disclosing Party. Nothing in this Agreement shall be construed as granting any rights or licenses under any patent, copyright or other intellectual property right of either Party, nor shall this Agreement grant the Receiving Party any rights in or to the Disclosing Party's Confidential Information other than the limited right to review such Confidential Information solely for the purpose of determining whether to enter into the Relationship.

7. **Confidentiality Period.** The foregoing commitments of each Party shall survive any termination of the Relationship between the Parties, and shall continue for a period terminating on the later to occur of the date (a) 4 years following the date of this Agreement or (b) 3 years from the date on which Confidential Information is last disclosed under this Agreement.

8. **Successors and Assigns.** The terms and conditions of this Agreement shall inure to the benefit of and be binding upon the respective successors and assigns of the parties, provided that Confidential Information of the Disclosing Party may not be assigned without the prior written consent of the Disclosing Party, with the exception of an assignment carried out as part of a merger, restructuring, or reorganization, or as a sale or transfer of all or substantially all of a Party's assets. Any assignment made in violation of this provision shall be null and void. Nothing in this Agreement, express or implied, is intended to confer upon any party other than the Parties hereto or their respective successors and assigns any rights, remedies, obligations, or liabilities under or by reason of this Agreement, except as expressly provided in this Agreement.

9. **Severability.** If one or more provisions of this Agreement are held to be unenforceable under applicable law, the Parties agree to renegotiate such provision in good faith. In the event that the Parties cannot reach a mutually agreeable and enforceable replacement for such provision, then

(a) such provision shall be excluded from this Agreement, (b) the balance of the Agreement shall be interpreted as if such provision were so excluded and (c) the balance of the Agreement shall be enforceable in accordance with its terms.

10. **Independent Contractors; No Obligation.** The Parties are independent contractors, and nothing contained in this Agreement shall be construed to constitute the Parties as partners, joint venturers, co-owners or otherwise as participants in a joint or common undertaking. No Party shall incur any debts or make any commitments for the other under this Agreement. Nothing contained in this Agreement shall be construed as obligating either Party to enter into any agreement or transact any business with the other Party, or to purchase, transfer or otherwise dispose of any technology, services or products as a result of the execution of this Agreement.

11. **Governing Law; Jurisdiction.** This Agreement and all acts and transactions pursuant hereto and the rights and obligations of the parties hereto shall be governed, construed and interpreted in accordance with the laws of the State of New York, without giving effect to principles of conflicts of law. The Parties hereby agree that any action arising out of this Agreement will be brought solely in any state or federal court located in New York, New York County. Each of the Parties hereto consents to the exclusive jurisdiction and venue of the courts of New York.

12. **Remedies; Indemnification.** Each Party agrees that its obligations set forth in this Agreement are necessary and reasonable in order to protect the Disclosing Party and its business. The Parties each expressly agree that due to the unique nature of the Disclosing Party's Confidential Information, monetary damages may be inadequate to compensate the Disclosing Party for any breach by the Receiving Party of its covenants and agreements set forth in this Agreement. Accordingly, the Parties each agree and acknowledge that any such violation or threatened violation may cause irreparable injury to the Disclosing Party and that, in addition to any other remedies that may be available, in law, in equity or otherwise, the Disclosing Party shall be entitled (a) to seek injunctive relief against the threatened breach of this Agreement or the continuation of any such breach by the Receiving Party, without the necessity of proving actual damages, and (b) to be indemnified by the Receiving Party from any loss or harm, including but not limited to attorney's fees, arising out of or in connection with any breach or enforcement of the Receiving Party's obligations under this Agreement or the unauthorized use or disclosure of the Disclosing Party's Confidential Information.

13. **Export Laws.** The Parties acknowledge that applicable United States law restricts or prohibits the provision or export of certain goods, technical data and information outside of the United States or to persons or entities who are not United States persons and each Party shall comply with any such applicable U.S. export laws.

14. **Warranty.** The Disclosing Party warrants that it has the right to make the disclosures under this Agreement. No other warranties, including warranties of merchantability, fitness for a particular purpose or noninfringement, are made by either party under this agreement. Any information

4

exchanged under this agreement is provided "AS IS." The Disclosing Party shall have no liability to the Receiving Party whatsoever relating to or arising from the Receiving Party's use of the Confidential Information or from any errors or omissions in, or any business decisions made by the Receiving Party in reliance on, any Confidential Information. Nor shall the Disclosing Party be liable for any expenses, losses, damages, or action incurred or undertaken by the Receiving Party as a result of its receipt of the Confidential Information."

15. **Amendment and Waiver.** The terms of this Agreement may only be amended in writing signed by authorized representatives of both Parties. Any amendment or waiver effected in accordance with this Section shall be binding upon the Parties and their respective successors and assigns. The waiver by a Party of a breach of any provision of this Agreement by the other Party will not operate or be interpreted as a waiver of any other or subsequent breach. All waivers must be in writing and signed by the waiving Party.

16. **Counterparts.** This Agreement may be executed via facsimile or digital signatures, and in two or more counterparts, each of which shall be deemed an original and all of which together shall constitute one instrument.

17. **No Publicity.** The Receiving Party shall not, without the prior consent of the Disclosing Party, disclose to any other person the fact that Confidential Information of the Disclosing Party has been and/or may be disclosed under this Agreement, that discussions or negotiations are taking place between the Parties, or any of the terms, conditions, status or other facts with respect thereto, except as required by law and then only with prior notice, unless prohibited by applicable law, as soon as possible to the other Party.

18. **Entire Agreement.** This Agreement is the product of both of the Parties hereto, and constitutes the entire Agreement between such Parties pertaining to the subject matter hereof, and merges all prior negotiations and drafts of the Parties with regard to the transactions contemplated herein. Any and all other written or oral agreements existing between the Parties hereto regarding such transactions are expressly canceled.

The Parties have executed this Non-Disclosure Agreement as of the date first written above.

Dearborn Capital Group LLC

By: _____
Name:   Oren Richland
Title:    Manager

CoWorkrs LLC, DBA Bond Collective

By: _____
Name: Elie Deitsch
Title: Manager