# Exhibit "L"

## 92 THIRD STREET:  MEMBERSHIP AGREEMENT

This membership agreement (this "**Agreement**"), dated as of the date this Agreement is fully executed below ("**Effective Date**"), is entered by and between _____, a _____ _____ ("**Member Company**") and INNOVO WORKS 92 THIRD STREET LLC, a Delaware limited liability company ("**Innovo Works**").

This Agreement, including the Membership Details Form attached hereto as **Schedule 1** (the "**Membership Details Form**") and the General Terms and Conditions attached hereto as **Schedule 2** (the "**Terms and Conditions**"), and any annexes attached hereto, will be effective as of the Effective Date.  To the extent there is any conflict between the Terms and Conditions and the Membership Details Form, the order of governance shall be (i) the Membership Details Form, then (ii) the Terms and Conditions.

Capitalized terms used but not defined in this Agreement have the respective meanings assigned to them in the Terms and Conditions.

By signing this Agreement, each party represents to the other party that the signatory hereto has the proper authority to execute this Agreement on behalf of Member Company or Innovo Works, as applicable, and incur the obligations described in this Agreement on behalf of Member Company or Innovo Works, as applicable. Unless otherwise indicated herein, this Agreement is made and executed in two (2) originals, one for each party.

**SIGNATURES:**

### MEMBER COMPANY SIGNATURE

Member Company Name: _____

Signature of Authorized Signatory: _____

Name of Authorized Signatory: _____

Title: _____

Date: _____

### INNOVO WORKS SIGNATURE

INNOVO WORKS 92 THIRD STREET LLC, a Delaware limited liability company

Signature: _____

Name: Michael Silberberg

Title: Authorized Signatory

Date: _____

## SCHEDULE 1

### MEMBERSHIP DETAILS FORM

| MEMBER COMPANY | |
|---|---|
| **Member Company Name (Legal Name):** | |
| **Industry:** | |
| **INNOVO WORKS** | |
| **Innovo Works Entity (Legal Name):** | INNOVO WORKS 92 THIRD STREET LLC |
| **CONTRACT TERM DETAILS** | |
| **Start Date:** | |
| **Initial Commitment Term (Start Date and end date):** | Term: _____ Year(s), _____ Month(s) <br> Start Date: <br> End Date: |
| **Extension Options (Start Date and end date):** | Extension Options: _____ <br> Start Date: <br> End Date: |
| **OFFICE SPACE DETAILS AND MEMBERSHIPS** | |
| **Address of Main Premises:** | 68-92 Third Street, Brooklyn, <br> New York 11231 |
| **Office Number(s):** <br> **(each individual office must be listed)** | |
| **Capacity and Individual Memberships:** | |
| **PRICING / FINANCIAL TERMS** | |
| **Membership Fee:** | $_____ |
| **Annual Membership Fee Increase (if applicable) (Sec. 4b)** | %_____ |
| **Service Retainer/Security Deposit:** | $ <br><br> To be paid the date hereof. You shall <u>not</u> be permitted to move into the Office Space until the Service Retainer has been fully paid. |
| **Set-Up Fee:** | [WAIVED]  [$_____] |
| **BILLING** | |
| **Payment Method:** | |
| **Net Payment Term (if applicable) (Sec. 4(e)):** | |

| Billing Notes: | |
|---|---|
| **PRINTING AND CONFERENCE ROOM CREDITS** | |
| **Conference Room Credits/Hours (per month):** | |
| **Print and Copy Credits (per month):** | |
| **OVERAGE FEES** | |
| **Conference Room (per credit/hour):** | |
| **Black & White printing (per sheet printed):** | |
| **Color printing (per sheet printed):** | |
| **Keycard Replacement Fee**: | |

Innovo Works reserves the right to increase the overage fees in a manner that applies to all members at the Premises subject to providing you with thirty (30) days' advanced notice.

| **CUSTOM WORK ("WORK") DETAILS (IF APPLICABLE)** | |
|---|---|
| **Work Description:** | |
| **Work Cost Allocation between the Parties:** | |
| **Work Fit Out Work Letter (if applicable):** | |
| **ADDITIONAL ITEMS (IF APPLICABLE)** | |
| **Overtime HVAC:** | |
| **IT Services:** | |
| **Security Access:** | |
| **Broker used in connection with the Agreement (if applicable):** | |
| **Annexes:** | |
| **Additional Notes (if applicable):** | |

| MEMBER CONTACT DETAILS | |
|---|---|
| **PRIMARY MEMBER** | |
| Primary Member Name: | |
| Phone Number: | |
| Email: | |
| Address: | |
| **AUTHORIZED SIGNATORY** _____ Please check here if Primary member is also Authorized Signatory | |
| Contact Name: | |
| Phone Number: | |
| Email: | |
| Address: | |
| **BILLING CONTACT** _____ Please check here if Primary member is also Billing Contact | |
| Contact Name: | |
| Phone Number: | |
| Email: | |
| Address: | |
| INNOVO WORKS CONTACT DETAILS | |
| **MAIN INNOVO WORKS CONTACT** | |
| Innovo Works Employee Name: | |
| Phone Number: | |
| Email: | |

## SCHEDULE 2

### TERMS & CONDITIONS

## 1. DEFINED TERMS

"**Agreement**" means, collectively, these Terms & Conditions (the "**Terms and Conditions**"), the attached Membership Details Form cover page(s) (the "**Membership Details Form**"), and any other attachments, exhibits, and/or supplements attached hereto.

"**Applicable Law**" means, for all federal, New York State and New York City: (i) laws (including common law), ordinances, regulations, codes statutes and rules, now or hereinafter enacted or promulgated; and (ii) all executive, administrative and judicial orders, requirements, directives, decrees, decisions, judgments, interpretive letters, guidance and other official releases of any Regulator that are applicable to Member Company, Innovo Works, the Services, the use of the Office Space or any other matters relating to the subject matter of this Agreement.  Without limiting the foregoing, Applicable Law includes (i) all Laws relating to the environment, health, safety or any substances or materials or wastes regulated by any governmental authority or deemed or defined as a hazardous substance or hazardous waste or words of similar import; (ii) the USA PATRIOT Act and the regulations promulgated thereunder; and (iii) laws relating to the environment, health, safety or any substances or materials or wastes regulated by any governmental authority or deemed or defined as a hazardous substance or hazardous waste or words of similar import.

"**Authorized Signatory**" means an individual authorized to legally bind Member Company.

"**Capacity**" means the maximum number of Memberships allotted to your Office Space as set forth in the Membership Details Form**.**

"**Member Company**" or "**you**" means the company or entity entering as Member Company into this Agreement as listed in the Membership Details Form.

"**Commitment Term**" means the period of time from the Start Date to the last day of the period set forth on the Membership Details Form under "Commitment Term" with respect to each Individual Office Number, and which may be extended upon mutual agreement of the parties.

"**Landlord**" means Innovo Work's landlord at the Main Premises, which is 92 Third Street LLC, a New York limited liability company.

"**Lease**" means our lease with our Landlord at the Main Premises.

"**Main Premises**" means the Premises in which the Office Space is located, as set forth in the Membership Details Form.

"**Member**" means each individual person you authorize to receive the Services (defined below) (each Member granted a "**Membership**").

"**Office Space**" means the office number(s) and/or workspace location(s) specified in the Membership Details Form, provided that, if the symbol "Ø" is included on the Membership Details Form, we will provide the office number(s) and/or workspace location(s) prior to the Start Date, subject to your express approval.

"**Premises**" means a building or portion of a building in which Innovo Works offers offices, workstations, other workspaces, and/or other services to Innovo Works members.

"**Primary Member**" means the primary Member contact for Innovo Works located in the Main Premises and set out in the Member Contact Details of the Membership Details Form.

"**Regular Business Days**" are all weekdays, except local bank/government holidays.

"**Regular Business Hours**" are generally from 9:00 a.m. to 6:00 p.m. on Regular Business Days.

"**Regulator**" or "**Regulatory**" refers to any government authority, department or agency, or any judicial or regulatory (including self-regulatory) organization having authority, oversight jurisdiction or similar power over Innovo Works, Member Company, or the Services or any other matters relating to the subject matter of this Agreement in any federal, state or local jurisdiction.

"**Set-Up Fee**" means the fee, unless waived, you will be charged for each individual Membership included in the Capacity of your Office Space; you are obligated to pay the Set-Up Fee for each individual office that you occupy, including such Set-up Fees as may be due upon transfer, including upgrade or downgrade (i.e. transferring to an Office Space with a higher or lower Capacity), of Office Space.

"**Start Date**" means the date set forth in the Membership Details Form upon which the Services will begin being provided with respect to the Office Space.

"**Innovo Works**", "**we**" or "**us**" or "**our**" means the Innovo Works entity you are contracting with as set forth in the Membership Details Form.

"**Innovo Works Member Network**" means the Innovo Works members-only online community accessed through the internet or our mobile app.

## 2.  THE BENEFITS OF MEMBERSHIP

a.  **Services**. Subject to the terms and conditions of this Agreement, and any other policies which will apply hereunder which we make available to you with reasonable prior notice from time to time, during the Term (defined below), Innovo Works will use commercially reasonable efforts to provide you (and your Members, as applicable) with the services described below, as the same are applicable to the Premises. These services are referred to in this Agreement as the "**Services**."

   i.   Dedicated 24/7 access to and use of the Office Space, subject to our access rights as set forth in this Agreement, and provided that no other Innovo Works members shall have access to your Office Space unless authorized by you or one of your Members.

   ii.  Regular maintenance of the Office Space, including cleaning, provided at a commercially reasonable frequency and quality, and in accordance with customary cleaning standards for similar Innovo Works Premises (or, if there are no similar Innovo Works Premises, buildings in the city or location where the Office Space is located).

iii.    Furnishings for the Office Space of the quality and in the quantity typically provided to other member companies with similar office space, workstations, and/or other workspace, as applicable, in the Premises.

iv.    Access to and use of the Innovo Works Member Network in accordance with the terms of services for the Innovo Works Member Network available on our website (the "**Innovo Works Member Network ToS**").

v.    Access to and use of the shared Internet connection in accordance with the terms of services available on our website (the "**Innovo Works Data Connection & Internet Access ToS**").

vi.    Use of the printers, copiers and/or scanners available to our members and member companies, in accordance with the terms described herein at any Premises using printing credits.

In the event you have printers, copiers and/or scanners located within your Office Space (i.e., where your Office Space consists of a full floor or custom designed office space that is segregated from the co-working environment), you shall also have unlimited and dedicated complimentary use of the printers, copiers and/or scanners within such Office Space to the exclusion of all other Innovo Works members. You shall be permitted to install your own printers, copiers and/or scanners in the Office Space in coordination with the Innovo Works IT Team.

vii.    Use of the conference rooms in your Main Premises and use of other conference rooms made available in common to our members and member companies in the Main Premises during Regular Business Hours, in each case subject to availability and your prior reservation of such conference rooms using conference room credits, in accordance with the terms described herein.

In the event you have conference rooms located within your Office Space (i.e., where your Office Space consists of a full floor or custom designed office space that is segregated from the co-working environment), you shall also have unlimited and dedicated complimentary use of the conference rooms within such Office Space to the exclusion of all other Innovo Works members.

viii.    Electricity, at no extra charge, for reasonably acceptable office use in the Office Space.

ix.    Heat and air-conditioning ("**HVAC**") in the Office Space during Regular Business Hours, at no extra charge. Overtime HVAC charges, if any, shall be specified in the Membership Details Form.

x.    Use of common areas, kitchens and beverages, if any, made available in common to our members and member companies in the Main Premises (which are made available on first-come first serve basis for use of all members at the Main Premises at the discretion of Innovo Works).

xi.    Acceptance of mail and deliveries on behalf of your business during Regular Business Hours.

xii.    Opportunity to participate in members-only events, benefits and promotions.

The Services listed in this Section in paragraphs (i), (iii), (v), (vi), (vii), (viii), (ix) and (x) will be deemed "material" for the purpose of this Agreement (the "**Material Services**"). All other Services listed in this Section are deemed "non-material" for the purpose of this Agreement (the "**Non-Material**

Services"). Other services may be provided for an additional fee, such as phone service and IT services, subject to availability at the Main Premises and any additional terms and expenses applicable to those services.

b. **Our Reserved Rights.** We are entitled to access your Office Space, with or without notice, in connection with our provision of the Services, for safety and/or emergency purposes or for any other purposes but will do so in a manner to minimize interference with your business operations and if our access to such space is not in connection with an emergency or regular provision of the Services, we will endeavor to provide you with prior notice before entering, but please note that we may still enter your Office Space after giving such notice, even if we have not received a response from you. We may temporarily move furniture contained in your Office Space for health, safety, emergency, repair, and maintenance reasons or where necessary to comply with law; in any such event, we will return the furniture to its original location as soon as reasonably practicable. We reserve the right to non-materially alter your Office Space, provided that we will not do so in a manner that decreases the square footage of your assigned Office Space or related amenities (except to a de minimis extent), such changes will be done in a manner to minimize interference with your business operations and we shall endeavor to provide you with advance notice of any such changes. We may also modify or reduce the list of Non-Material Services provided for your Office Space at any time.  The Services may be provided by us, an affiliate or a third party.

c. **Office Space Not Timely Available.** If we are unable to make the Office Space available by the Start Date for any reason, including due to changes in construction plans, delays in obtaining permits, or any other obstacles in procuring space in any Premises, we will notify you of any such circumstances and we will not be subject to any liability related to such inability, nor will such failure affect the validity of this Agreement which shall remain in full force and effect. In this event, except as set forth in this Agreement, you will not be obligated to make payments of the Membership Fee until the Office Space is made available to you. If such Office Space is not made available within  thirty (30) days of the Start Date for an Office Space that does not have any custom work/Innovo Works Work (as defined below) you may terminate this Agreement without penalty, it being understood and agreed that your termination rights for any Office Space that does contain custom work/Innovo Works Work will be dictated by a separate agreement to be entered into by us and you. Notwithstanding the foregoing, if we are unable to make the Office Space available by the Start Date due to delays caused by your actions or inactions or due to changes in work or other customizations to the Office Space requested by you, we will not be subject to any liability related to such delay nor will such delay affect the validity of this Agreement, you shall not be entitled to terminate this Agreement and you shall be responsible for the payment of the Membership Fees from the Start Date.

d. **Access Prior to Start Date**. If we, in our sole discretion, provide you with access to your Office Space for any period of time prior to your Start Date (a "**Soft Open Period**"), during any such Soft Open Period you and your Members shall be fully subject to the terms of this Agreement, regardless of whether we choose to charge you the Membership Fee during any such Soft Open Period.

## 3.  YOUR MEMBERS

a. **Member List.** You are responsible for maintaining the accuracy of your list of Members on the Innovo Works Member Network (your "**Member List**"). Only those individuals included on the Member List will be deemed to be "Members" and entitled to receive the Services described in this Agreement. To the extent permitted by Applicable Law, all of your Members shall be required to provide valid government issued identification in order to be issued an activated key card to access the Premises. We

reserve the right in our discretion to limit at any time the number of memberships permitted under this Agreement to a number equal to the Capacity set forth in the Membership Details Form.

b. **Innovo Works Member Network.** A profile on the Innovo Works Member Network must be created for each individual member added to the Member List. If you elect to retain the "default" settings of your "Member Network Account," such profiles will be viewable by us, our employees and agents, and other Innovo Works members. The created profile will include only the Member's name and Member Company; any additional information, including a photograph, shall be added solely as determined by you or your Members.

At any time, you may choose, at your sole election, to set your company and Members' accounts to 'private.' If you elect to utilize the 'private' setting, your company and Member accounts will be viewable only by us, our employees and agents for the purposes of providing the Office Space and the Services, and will not be viewable by any other members who have access to the Innovo Works Member Network. In the 'private' setting, your Members have the ability to use utility features (such as booking conference rooms and registering guests) on the Innovo Works Member Network, and the use of such utility features by your Members on the Innovo Works Member Network will be viewable only by us, our employees and agents for the purposes specified, and will be anonymous to any other members who have access to the Innovo Works Member Network. If you elect to utilize the 'private' setting, all individuals registered as your Members will be set as 'private' and prevented from conducting any social activity on the Innovo Works Member Network.

c. **Changes to or Removal of Primary Member or Authorized Signatory.** An Authorized Signatory generally has the sole authority to make changes to or terminate this Agreement. A Primary Member will generally serve as Innovo Works' primary contact regarding matters that involve your Members, the physical Office Space or the Premises. If no Authorized Signatory other than the Primary Member is designated by you on the Membership Details Form, the Primary Member will serve as the Authorized Signatory. We will be entitled to rely on communications to or from the Authorized Signatory or Primary Member as notice to or from the applicable Member Company. However, an executive officer of the applicable Member Company ("**Executive Officer**") will have the authority to override the request of an Authorized Signatory or Primary Member, as applicable, provided that we receive such a request within 24 hours following such Authorized Signatory's or Primary Member's request. We will be entitled to request reasonable documentation to confirm that an individual claiming to be an Executive Officer truly is one and to exercise our discretion in determining whether a particular position constitutes an "Executive Officer." An Executive Officer will also have the authority to remove or replace the individual serving as the Authorized Signatory and/or Primary Member. Unless we receive instructions from the Authorized Signatory or Executive Officer, if the individual designated as the Primary Member ceases to provide services to Member Company or ceases using the Office Space regularly, you shall promptly designate a replacement Primary Member; however, if you fail to do so within three (3) Regular Business Days after we provide notice to you concerning the absentee Primary Member, Innovo Works shall designate an interim Primary Member until we receive direction from you. We will use our reasonable judgment in designating an interim Primary Member.

## 4. MEMBERSHIP FEES; PAYMENTS

a. **Payments Due Upon Signing.** Upon submitting a signed and completed Agreement, you will be obligated to deliver to us, in the amount(s) set forth on your Membership Details Form, (i) the Service Retainer, if any, (ii) the Set-Up Fee, if any and (iii) for the initial Commencement Term, first month's Membership Fee. Where desks are added to your membership after the Start Date, the related Set-Up

Fee shall be paid on the invoice subsequent to such addition. The Set-Up Fee is set forth in the Membership Details Form.

b.  **Membership Fee.** During the Term of this Agreement, your monthly Membership Fee will be due monthly and in advance as of the first (1st) day of each month or in accordance with the Net Payment Term period set forth in the Membership Details Form, if applicable. You are obligated to make payment of all Membership Fees owed throughout the Commitment Term unless this Agreement is early terminated by you in accordance the terms hereof ("**Membership Fee Obligations**"). You agree to pay promptly: (i) all applicable sales, use, excise, value added, and any other taxes which you are required to pay to any other governmental authority (and, at our request, will provide to us evidence of such payment) and (ii) all applicable sales, use, excise, value added and any other taxes attributable to your Membership as shown on your invoice. On each annual anniversary of the Start Date (including during any Term) the Membership Fee may be subject to an automatic increase of the previous year's Membership Fee and will either be a fixed percentage or a varying generally accepted measure of inflation as set forth in the Membership Details Form.  If a Commitment Term is extended by mutual agreement of the parties, the parties may agree on an increased or decreased Membership Fee which shall be reflected in a revised Membership Details Form or by other appropriate amendment to this Agreement. Following any Commitment Term (which shall include any extensions of the Commitment Term), we reserve the right to further increase or decrease the Membership Fee at our sole discretion upon thirty (30) days' prior notice in addition to the notice period required in the Termination Notice Period below in Section 5(d).

c.  **Invoices.**  Innovo Works will send or otherwise provide invoices and other billing-related documents, information and notices to the Primary Member or, if a Billing Contact is indicated on the Membership Details Form, the Billing Contact.  Change of the Billing Contact will require notice from the Authorized Signatory in accordance with this Agreement.

d.  **Credits; Overage Fees.** Each month, you will receive the number of credits for conference room use and a certain number of credits for color and black and white copies and printouts, as specified on the Membership Details Form. These allowances may not be rolled over from month to month.  If these allocated amounts are exceeded, you will be responsible for paying fees for such overages. The current overage fee schedule is listed on our website. All overage fees are subject to reasonable increase from time to time at our sole discretion.

e.  **Late Fees.** If payment of the Membership Fee or any other accrued and outstanding fee is not made by the tenth (10th) of the month in which such payment is due or within the amount of days set forth in the Net Payment Terms section of the Membership Details Form after issuance of the invoice relating to such payment, if applicable, you will be responsible for paying a late fee of five percent (5%) of the outstanding invoice for the first late payment during the Term, and seven percent (7%) of the outstanding invoice for any late payments thereafter.

f.  **Method of Payment.** We accept payment of all amounts specified in this Agreement solely by the methods we communicate to you during the membership sign up process or from time to time during the Term, which method shall include wire transfers. You are required to inform us promptly of any changes to your payment information. Changing your payment method may result in a change in the amount required under this Agreement to be held as the Service Retainer.

To the extent Member Company's payment method is by ACH/direct debit, Member Company authorizes Innovo Works to initiate ACH transactions on a recurring basis for amounts owed pursuant to this Agreement. Such authorization will remain in full force and effect until Member Company either

(i) changes their form of payment method or (ii) notifies Innovo Works in writing that Member Company revokes this authorization with seven (7) regular business days' prior notice. Member Company is required to provide an appropriate form of payment at all times during the Term.

g. **Outstanding Fees.** Any outstanding fees will be charged in arrears on a monthly basis. When we receive funds from you, we will first apply funds to any balances which are in arrears (including any outstanding late fees) and to the earliest month due first. Once past balances are satisfied, any remaining portion of the funds will be applied to current fees due. If any payments remain outstanding after we provide notice to you, we may, subject to the notice and cure periods set forth in Section 5(e), in our sole discretion, withhold Services or terminate this Agreement in accordance with Section 5(e).

h. **Office Space Work.** In the event that we have agreed to customize office space for you ("**Customized Office Space**"), the details, and if applicable, the amount and terms of payment for the customization, shall be set forth on the Membership Details Form. If set forth on the Membership Details Form, or otherwise mutually agreed to by the parties in writing, you agree to pay to us the work fees and any other costs or expenses related to the Customized Office Space actually and reasonably incurred by us (collectively, the "**Work Expenses**"), in accordance with the terms set forth on the Membership Details Form or other applicable written agreement. Unless we otherwise agree in writing, all Work Expenses are due notwithstanding any termination or expiration of this Agreement, and are immediately due and payable from you to us if you fail to move into the Office Space or terminate this Agreement prior to moving into the Office Space, unless this Agreement is terminated by you due to our default hereunder or due to loss of our rights to the Main Premises. Unless the parties agree otherwise in writing, you shall be fully responsible for all costs and expenses related to restoring the Office Space substantially to its original condition prior to the work to prepare the Customized Office Space (the "**Work Restoration Expenses**"). All Work Restoration Expenses shall be paid on or before your final day of access to and use of the Office Space.

i. **No Refunds.** Unless otherwise set forth in this Agreement, or in the case of overpayment by you beyond any fees actually owed pursuant to this Agreement, there are no refunds of any fees or other amounts paid by you or your Members in connection with the Services.

## 5. TERM, OFFICE SPACE AND TERMINATION

a. **Term.** This Agreement will be effective when signed by both parties ("**Effective Date**"); provided that we have no obligations to provide you with the Services until the later of (i) the date on which payment of your Service Retainer, Set-Up Fee and first month's Membership Fee has been received by us or (ii) the Start Date.

Unless otherwise set forth on the Membership Details Form, following the Commitment Term, this Agreement shall continue on a month-to-month basis (any term after the Commitment Term, a "**Renewal Term**"), subject to Sections 5(d) and 5(e). The Commitment Term and all subsequent Renewal Terms shall constitute the "**Term**." This Agreement will continue until terminated in accordance with this Agreement. If no Commitment Term is indicated on your Membership Details Form, the default Commitment Term shall commence on the Start Date and end one (1) full calendar month after the Start Date.

b. **Use of Office Space.** During the Term, the Office Space shall be used solely by you for the purpose of executive and general business offices, and all related administrative office uses only (the "**Permitted Use**"), and for no other purposes whatsoever. Any attempt by Member Company or its Members to use the Office Space for any purpose other than the Permitted Use shall be deemed a breach

by you under this Agreement. You shall not be permitted to broadcast telephonic, music, radio or other media through external speakers, except within your Office Space or a conference room used by you pursuant to the terms of this Agreement.

c.   **Move In/ Move Out.** If the Start Date is a Regular Business Day, you will be entitled to move into the Office Space no earlier than 11:00 a.m. on the Start Date, provided you have complied with the payment obligations described in Section 5(a). If the Start Date is not a Regular Business Day, you will be entitled to move into the Office Space no earlier than 11:00 a.m. on the first Regular Business Day after the Start Date.  On the last Regular Business Day of the Termination Effective Month (defined below), you must vacate the Office Space by no later than 4:00 p.m.

d.   **Termination by You**. You may terminate this Agreement by providing written notice to us prior to the month   in   which   you   intend   to   terminate   this   Agreement   ("**Termination   Effective   Month**")   in accordance with the notice periods set forth in the chart below (the "**Termination Notice Period(s)**"). The applicable Termination Notice Period shall be determined by the Commitment Term and Capacity for the relevant office number(s), as depicted in the chart below, and as displayed on the Membership Details Form. The Termination Notice Periods shall apply to any termination by you during the Term, which termination date shall not occur prior to the expiration of the Term. After receiving such termination notice, we will deliver to you the Innovo Works Exit Form ("**Exit Form**"), which you must complete and submit to us. The termination will be effective on the later of the last Regular Business Day of the Termination Effective Month and the expiration of the Term. No termination by you shall be effective during the Term, and termination by you during the Term is a breach of this Agreement. Downgrade of the Office Space (i.e., transferring to an office space with a lower Capacity) is also not permitted during the Commitment Term. If you terminate this Agreement prior to the end of the Term, your Membership Fee Obligations shall become immediately due. In addition to any rights, claims and remedies we choose to pursue in our discretion, your Service Retainer shall be forfeited immediately as a result of your breach. Notice must be provided during Regular Business Hours.  The Exit Form needs to be completely filled out and signed by the Authorized Signatory; however, please note that the termination of your Agreement on the last Regular Business Day of the Termination Effective Month will be triggered upon your provision of written notice of termination to us, regardless of when you complete and submit the Exit Form. You will not be entitled to pro ration with respect to the last month's Membership Fee.  For instance, if you vacate your Office Space before the last Regular Business Day of April, you will still owe us the full Membership Fee for the full month of April.

**Member Company Termination Notice Periods Required:**

| Commitment Term | Capacity | | |
|---|---|---|---|
| | 0 - 24 | 25 - 74 | 75 + |
| 1 - 11 months | 1 month notice | 2 months' notice | 3 months' notice |
| 12 - 23 months | 2 months' notice | 3 months' notice | 6 months' notice |

| 24 + months | 3 months' notice | 6 months' notice | 6 months' notice |

- **Example**: If the Capacity for the Office Space is between twenty-five (25) and seventy-four (74) Members, and the Commitment Term is between one (1) and eleven (11) months, the applicable Termination Notice Period would be two (2) months, and to terminate this Agreement effective the last Regular Business Day of April (provided that the Commitment Term shall have expired by such date), the last opportunity to provide notice to us of termination would be during Regular Business Hours on the last Regular Business Day of February.

e. **Termination or Suspension by Us.** We may withhold Services under or immediately terminate this Agreement:

(i) upon breach of this Agreement by you or any Member, including, without limitation, any failure to satisfy your payment obligations, which remains uncured five (5) Regular Business Days after we provide written notice to you, provided that if such breach is not capable of being cured within such time period, you shall be entitled to extend such cure period if you promptly commence the cure of such breach within the initial cure period and diligently prosecute such cure thereafter, although we may in any event terminate such cure period (x) if it extends for longer than 30 days, (y) if such termination is required for safety or emergency purposes, or (z) if such termination is necessary to prevent Innovo Works from defaulting under its Lease at the Main Premises beyond applicable notice and cure periods;

(ii) upon termination, expiration, or material loss of our rights in the Main Premises;

(iii) if any outstanding fees are still due after we provide notice to you which have not been paid within five (5) Regular Business Days of your receipt of a notice from us;

(iv) if you or any of your Members fail to comply with the terms and conditions of the Innovo Works Member Network ToS, the Innovo Works Data Connection & Internet Access ToS, the Innovo Works Privacy Policy, or any other reasonable policies or instructions provided by us or applicable to you and where such failure remains uncured fifteen (15) Regular Business Days after we provide notice to you, provided that if such breach is not capable of being cured within such time period, you shall be entitled to extend such cure period if you promptly commence the cure of such breach within the initial cure period and diligently prosecute such cure thereafter, although we may in any event terminate such cure period (x) if it extends for longer than 60 days, (y) if such termination is required for safety or emergency purposes, or (z) if such termination is necessary to prevent Innovo Works from defaulting beyond applicable notice and cure periods under its lease at the Main Premises.

After the Commitment Term, which may be extended by mutual agreement of the parties or as otherwise provided for in this Agreement, we may terminate this Agreement at any other time, upon notice consistent with the Termination Notice Period. Notwithstanding the foregoing, we may terminate this Agreement if a breach by you hereunder has directly and solely caused us to materially default under our Lease beyond applicable notice and cure periods.

An individual Member will no longer receive the Services and is no longer authorized to access the Main Premises upon the earlier of (x) the termination or expiration of this Agreement; (y) your removal of such Member from the Member List or (z) our notice to you that such Member materially or repeatedly violated this Agreement and is no longer permitted to utilize the Services. We may withhold or terminate Services of individual Members for any of the foregoing reasons; in such circumstances, this Agreement will continue in full force and effect to the exclusion of the relevant Member.

f.  **Service Retainer.** The Service Retainer, if any, will be held as a retainer for performance of all your obligations under this Agreement, including the Membership Fee Obligations, and is not intended to be a reserve from which fees may be paid. In the event you owe us other fees, you may not rely on deducting them from the Service Retainer, but must pay them separately. We will return the Service Retainer, or any balance after deducting outstanding fees and other actual costs due to us, including any unsatisfied Membership Fee Obligations, to you by bank transfer or other method that we communicate to you within thirty (30) days (or earlier if required by applicable law) after the later of (i) the termination or expiration of this Agreement and (ii) the date on which you provide to us all account information necessary for us to make such payment. Return of the Service Retainer is also subject to your complete performance of all your obligations under this Agreement, including full satisfaction of your Membership Fee Obligations and any additional obligations applicable following termination or expiration of this Agreement.

g.  **Removal of Property Upon Termination.** Prior to the termination or expiration of this Agreement, you will remove all of your, your Members', and your or their guests' property from the Office Space and Premises. After providing you with reasonable notice, we will be entitled to dispose of any property remaining in or on the Office Space or Premises after the termination or expiration of this Agreement and will not have any obligation to store such property, and you waive any claims or demands regarding such property or our handling or disposal of such property. You will be responsible for paying any fees reasonably and actually incurred by us regarding such removal. We shall have no implied obligations as a bailee or custodian, and you hereby indemnify us and agree to keep us indemnified in respect of any claims of any third parties in respect of such property except in cases where we are responsible or such claims due to our gross negligence or willful misconduct. Following the termination or expiration of this Agreement, we will not forward or hold mail or other packages for you that are delivered to us.

## 6.  HOUSE RULES

In addition to any rules, policies and/or procedures that are specific to the Main Premises used by you which we communicate to you in advance, in writing and upon reasonable notice of not less than ten (10) days, unless ten (10) days' notice is not feasible, in which case the notice shall be as soon as reasonably practicable:

a.  **You acknowledge and agree that:**

   i.   keys, key cards and other such items used to gain physical access to the Premises, or the Office Space remain our property. You will cause your Members to safeguard our property and you shall promptly notify us and be liable for replacement fees should any such property be lost, stolen or destroyed;

   ii.  you shall promptly notify us of any change to your contact and/or payment information;

iii.    we will promptly provide notice to you of any changes to Services, fees, or other updates via email. It is your responsibility to read such emails and to ensure your Members are aware of any changes, regardless of whether we notify such Members directly;

iv.    carts, dollies and other freight items which may be made available may not be used in the passenger elevator except at our discretion;

v.    for security reasons, we may, but have no obligation to, regularly record certain areas in the Premises via video;

vi.    all of your Members are at least 18 years of age;

vii.    you shall be responsible for ensuring that no alcohol is consumed by any of your Members or guests who is younger than the legal age for consuming alcohol in the applicable jurisdiction and that alcohol is consumed responsibly by your Members and guests;

viii.    common spaces are to be enjoyed by all our Member Companies, members and guests unless otherwise instructed by us, and are for temporary use and not as a place for continuous, everyday work;

ix.    you will provide us with reasonable notice of and complete all required paperwork prior to hosting any event at the Premises;

x.    you will be responsible for any damage to your Office Space other than normal wear and tear and damage caused by us;

xi.    you will be responsible for replacement fees for any item(s) provided to you by the Innovo Works community team for temporary use should any such property be lost, stolen or destroyed;

xii.    we are not liable for any mail or packages received without a Innovo Works employee's signature indicating acceptance;

xiii.    you may not make any structural or nonstructural alterations or installations (including, but not limited to, wall attachments, furniture, IT equipment, and/or glass paneling) in the Office Space or elsewhere in the Premises without prior approval by us. In the event that any alterations or installations are made, you shall be responsible for the full cost and expense of the alteration or installation and, prior to the termination of this Agreement, the removal of such items and the restoration necessitated by any such alterations, and we may deduct any such costs not otherwise paid by you from the Service Retainer. In no event are you permitted to perform any of these actions. Only a member of our facilities staff is entitled to perform an alteration, installation, removal or restoration. Reach out to a member of your community team for more information; and

xiv.    you shall use commercially reasonable efforts to ensure that you and your Members' computers, tablets, mobile devices and other electronic equipment must be (a) kept up-to-date with the latest software updates provided by the software vendor and (b) kept clean of any malware, viruses, spyware, worms, Trojans, or anything that is designed to perform malicious, hostile and/or intrusive operations.  We reserve the right to remove any device from our networks that actually poses a risk to the network or the use of the network by the other members until the risk is remediated or mitigated.

b.  **No Member will:**

i.   perform any activity or cause or permit anything that is reasonably likely to be disruptive (other than to a de minimis extent) or dangerous to us or any other Member Companies, or our or their employees, guests or property, including without limitation in the Office Space or the Premises;

ii.  use the Services, the Premises or the Office Space to conduct or pursue any illegal or offensive activities or comport themselves to the community in a similar manner, or bring, release, discharge, generate or dispose of any hazardous substances or materials on or from the Premises;

iii. materially misrepresent himself or herself to the Innovo Works community, either in person or on the Innovo Works Member Network;

iv.  take, copy or use any information or intellectual property belonging to other Member Companies or their Members or guests, including without limitation any confidential or proprietary information, personal names, likenesses, voices, business names, trademarks, service marks, logos, trade dress, other identifiers or other intellectual property, or modified or altered versions of the same, and this provision will survive termination of this Agreement;

v.   take, copy or use for any purpose (a) the name "Innovo Works" or any of our other business names, trademarks, service marks, logos, designs, copyrights, patents, trade secrets, trade dress, marketing material, other identifiers or other intellectual property ("Intellectual Property"); (b) any derivations, modifications or similar versions of the same; or (c) any photographs or illustrations of any portion of a Premises, for any purpose, including competitive purposes, without our prior consent, provided that during the term of this Agreement you will be able to use "Innovo Works" to accurately identify an address or office location.  You acknowledge that Innovo Works owns all right, title and interest in and to its Intellectual Property.  You may not file for ownership rights of any of our Intellectual Property with any governmental authority or use our Intellectual Property in any advertising, including domain names, social media handles, or any form of media invented in the future.  You may not, directly or indirectly, interfere with or object to, in any manner, our ownership rights or the use of our Intellectual Property or engage in any conduct that is likely to cause confusion between Innovo Works and yourself, without our prior consent, and this provision will survive termination of this Agreement;

vi.  film within any Premises, including within the Office Space, without completing all required paperwork and receiving express written consent from Innovo Works, it being understood that such restriction shall not apply to video-conference calls, virtual meetings and the like;

vii. use the Office Space in a retail, medical, or other capacity involving frequent visits by members of the public, as a residential or living space, or for any exclusively non-business purpose;

viii. sell, manufacture or distribute for sale any controlled substance, including alcoholic beverages, from the Office Space, or obtain a license for such sale, manufacture, importation, or distribution using the Office Space or the address of the Main Premises;

ix.  use our mail and deliveries services for fraudulent or unlawful purposes, and we shall not be liable for any such use;

x.      store significant amounts of currency or other valuable goods or commodities in the Office Space that are not commonly kept in commercial offices; in the event that you do so, we will not be liable for any such loss;

xi.     make any copies of any keys, keycards or other means of entry to the Office Space or the Premises or lend, share or transfer any keys or keycards to any third party, unless authorized by us in advance;

xii.    install any locks or other security devices to access the Office Space or anywhere within the Premises or install surveillance devices within the Office Space or anywhere within the Premises, unless authorized by us in advance;

xiii.   allow any guest(s) to enter the building without registering such guest(s) and performing any additional required steps according to our policies;

xiv.    operate any equipment within the Premises that has a higher heat output or electrical consumption than in a typical office environment, or places excessive strain on our electrical, IT, HVAC or structural systems, with such determination to be made in our discretion, without our prior approval; or

xv.     bring any weapons of any kind, or any other offensive, dangerous, hazardous, inflammable or explosive materials (other than customary office cleaning supplies) into the Office Space or the Premises.

You are responsible for ensuring your Members comply with all House Rules and with all rules, policies and/or procedures that are specific to a Premises used by you, and agree that in the event of any penalty or fine imposed by a third party (e.g., a governmental entity) resulting from the breach of any such rules, policies and/or procedures, you will be responsible for paying such penalty or fine.

## 7.  ADDITIONAL AGREEMENTS

a.  **Information Technology.** In order to utilize all the functionalities offered by us, it may be necessary to install software onto a Member's computer, tablet, mobile device or other electronic equipment. In addition, a Member may request that we troubleshoot problems a Member may have with respect to printing, accessing the network connection or other issues. If we provide such services, we will not be responsible for any unintentional damage to your equipment.

b.  **Network Connection.** Innovo Works provides shared Internet access to Members via a wireless or wired network connection. For those Members wishing to implement a private wired network, Innovo Works may allow you to install a firewall device for your exclusive access and use, subject to Innovo Works IT approval, which shall not be unreasonably withheld, conditioned or delayed, and you will be responsible for removal of the same. Prior to any such installation or removal, you shall coordinate with the Innovo Works IT team to discuss the actual setup, appropriate time, manner and means for such installation or removal and any additional reasonable fees that may result from the request, which fees shall be set out in the Membership Details Form. To the extent that we incur any reasonable and actual costs in connection with such installation or removal, which are not otherwise paid by you, we shall deduct such costs from the Service Retainer. You shall also be responsible for any monthly fees incurred relating to your private, secured wired network and any additional IT services.

c.  **Waiver of Claims.** To the extent permitted by Applicable Law, you, on your own behalf and on behalf of your Members, employees, agents, guests and invitees (collectively, the "**Member Parties**"), waive any and all claims and rights against us and our affiliates, parents, and successors and each of our and their employees, assignees, officers, agents and directors (collectively, the "**Innovo Works Parties**") and our landlords at the Premises resulting from injury or damage to, or destruction, theft, or loss of, any property, person or pet, except to the extent caused by the gross negligence, willful misconduct or fraud of the Innovo Works Parties.

To the extent permitted by Applicable Law, both Innovo Works, on behalf of the Innovo Works Parties, and Member Company, on behalf of the Member Parties, each waive any and all claims and rights to recover against the other and each of the Innovo Works Parties and Member Parties (and Member Company waives its rights against Innovo Works' landlord at any Premises) for any loss of, or damage to, property belonging to such waiving party (including deductible amounts) and located at any Premises, from any cause covered by any property insurance carried (or that should have been carried) by such party pursuant to this Agreement. These waivers shall be enforceable notwithstanding the negligence or fault of the other party. Each party shall look solely to the proceeds of its respective insurance policy (and to its own funds to the extent it is self-insured) to compensate it for any such loss, damage or destruction.

d.  **Limitation of Liability.** To the extent permitted by Applicable Law, the aggregate monetary liability of any of the Innovo Works Parties to you or your Members, employees, agents, guests or invitees for any reason and for all causes of action, will not exceed the Membership Fee at the time the claim arises, unless due to the gross negligence, willful misconduct or fraud of any Innovo Works Parties or to the extent such liability is covered by insurance policies which we are required to maintain pursuant to the terms hereof. Neither party hereto will be liable under any cause of action, for any indirect, special, incidental, consequential, reliance or punitive damages, or any loss of profits or business interruption. You acknowledge and agree that, except with respect to claims for which we are obligated to indemnify you (or your affiliates, partners, officers, directors, shareholders or principals) hereunder, you may not commence any action or proceeding against any of the Innovo Works Parties, whether in contract, tort, or otherwise, unless the action, suit, or proceeding is commenced within one (1) year from the date you have knowledge of the basis for the cause of action. We acknowledge and agree that, except with respect to claims for which you are obligated to indemnify the Innovo Works Parties hereunder, we may not commence any action or proceeding against you (or your affiliates, partners, officers, directors, shareholders or principals), whether in contract, tort, or otherwise, unless the action, suit, or proceeding is commenced within one (1) year from the date the we have knowledge of the basis for the cause of action. Notwithstanding anything contained in this Agreement to the contrary, you acknowledge and agree that you shall not commence any action or proceeding against any of the Innovo Works Parties other than the Innovo Works Party you are directly contracting with hereunder and the assets of such person for any amounts due or for the performance of any obligations in connection with this Agreement. Notwithstanding anything contained in this Agreement to the contrary, Innovo Works shall look solely to you for satisfaction of Innovo Works' remedies under this Agreement and no assets of your affiliates, partners, officers, directors, shareholders or principals, disclosed or undisclosed, shall be subject to levy, execution, or other enforcement procedure for the satisfaction of Innovo Works' remedies under this Agreement.

e.  **Indemnification.** You will indemnify the Innovo Works Parties from and against any and all third party claims, liabilities, and expenses including reasonable attorneys' fees, resulting from any breach of this Agreement (beyond applicable notice and cure periods) by you or your Members or your or their guests, invitees or pets or any of your or their actions or omissions, except to the extent a claim results from the gross negligence, willful misconduct or fraud of the Innovo Works Parties. You are

responsible for the actions of and all damages caused by all persons and pets that you, your Members or your or their guests invite to enter any of the Premises, including but not limited to any vendors hired by you that enter the Premises. For any claim of indemnification under this Agreement, the indemnified party shall provide prompt written notice of the claim for indemnification and reasonable cooperation, information, and assistance in connection with the claim, and the indemnifying party shall have sole control and authority to defend, settle or compromise such claim. The indemnifying party shall not make any settlement that requires a materially adverse act or admission by the indemnified party or imposes any obligation upon the indemnified party unless they have first obtained the indemnified party's written consent (such consent not to be unreasonably delayed, conditioned or withheld). Additionally, for any claim for indemnification pursuant to this Agreement, the indemnifying party shall not be liable for any obligations arising out of a settlement entered into by the indemnified party without the indemnifying party's prior written consent.

f. **Insurance.** You are responsible for maintaining, at your own expense and at all times during the Term personal property insurance and commercial general liability insurance covering you and your Members for property loss and damage, injury to your Members and your Members' guests or pets and prevention of or denial of use of or access to, all or part of the Premises, in form and amount appropriate to your business. In addition, you are responsible for maintaining, at your own expense and at all times during the Term, workers' compensation insurance providing statutory benefits in accordance with the law and employer's liability in an amount appropriate to your business. You will ensure that Innovo Works and the Landlord shall each be named as additional insureds on your commercial general liability policy and that all insurance policies shall include a clause stating that the insurer waives all rights of recovery, under subrogation or otherwise you may have against Innovo Works and the Landlord. You shall provide proof of insurance upon our reasonable request. We hereby waive any rights of subrogation we may have against you.

g. **Pets.** If the Office Space is in Premises designated by us to be one in which pets are permitted, and if any Member plans on regularly bringing a pet into the Office Space or otherwise into the Premises, we may require this Member to produce proof of vaccination for such pet and evidence of compliance with applicable local regulations, House Rules and any other rules and regulations affecting the Main Premises. If any of your Members brings a pet into the Premises, you will be responsible for any injury or damage caused by this pet to other members or guests or other occupants of the Premises or to the property of (i) Innovo Works or any employees, members or guests or (ii) the owner(s) or other occupants of the Premises. None of the Innovo Works Parties will be responsible for any injury to such pets. We reserve the right to restrict any Member's right to bring a pet into the Premises in our sole discretion.

h. **Other Members.** We do not control and are not responsible for the actions of other Member Companies, Members, or any other third parties. If a dispute arises between Member Companies, members or their invitees or guests, we shall have no responsibility or obligation to participate, mediate or indemnify any party. Notwithstanding the foregoing, Innovo Works will appropriately enforce its rights under any membership agreements against other members in its reasonable discretion to ensure that other members adhere to their obligations under membership agreements or other applicable policies or rules.

i. **Confidentiality.** All terms and conditions of this Agreement (including, without limitation, pricing related information) as well as any other information disclosed by one party to the other but not generally known to the public, or if provided and clearly marked "confidential" or "proprietary," will be deemed confidential information, except as otherwise provided herein or unless required to do so by law or an official authority. The obligations of confidentiality assumed hereunder shall also not apply

to the extent the recipient of the information can demonstrate that such information: (a) was in their possession before the time of disclosure by the other party and was not acquired, directly or indirectly, from such other party; (b) is or becomes public knowledge through no fault or breach of this Agreement by the recipient; and (c) is rightfully received by the recipient from a third party on a non-confidential basis, provided that the source of such information is not bound by a confidentiality agreement or other contractual, legal or fiduciary obligation of confidentiality with respect to such information, and provided further that such disclosure does not otherwise breach this Agreement. Each party agrees to hold all confidential information of the other party in strict confidence and to take all reasonable precautions to protect such confidential information (including, without limitation, all precautions the receiving party employs with respect to its most confidential materials). Each party shall, to the extent legally permissible, cooperate with the other party's efforts to resist disclosure, upon reasonable request and at the other party's expense. Each party acknowledges that any unauthorized disclosure or unauthorized use of confidential information will constitute a material breach of this Agreement and cause substantial harm to the other party for which damages would not be a fully adequate remedy.  In the event of any such breach, in addition to other available remedies, the disclosing party shall have the right to obtain injunctive relief (without being required to post any bond or other security).

## 8.  ARBITRATION AND CLASS ACTION WAIVER

a.  **Governing Law.** This Agreement and the transactions contemplated hereby shall be governed by and construed under the law of the State of New York and the United States without regard to conflicts of laws provisions thereof.

b.  **Venue**. Except that either party may seek equitable or similar relief from any court of competent jurisdiction, any dispute, controversy or claim arising out of or in relation to this Agreement, or at law, or the breach, termination or invalidity of this Agreement, that cannot be settled amicably by agreement of the parties to this Agreement shall be finally settled in accordance with the arbitration rules of JAMS then in force, by one or more arbitrators appointed in accordance with said rules.  The place of arbitration shall be New York, New York.

c.  **Proceedings; Judgment.** The proceedings shall be confidential and the award rendered shall be final and binding on both parties. Judgment on the award may be entered in any court of competent jurisdiction.  Subject to Section 8(b) hereof, in any action, suit or proceeding to enforce rights under this Agreement, the prevailing party shall be entitled to recover, in addition to any other relief awarded, the prevailing party's reasonable attorneys' fees and other fees, costs and expenses of every kind in connection with the action, suit or proceeding, any appeal or petition for review, the collection of any award or the enforcement of any order, as determined by the arbitrator(s) or court, as applicable.

d.  **Class Action Waiver.** Any proceeding to resolve or litigate any dispute in any forum will be conducted solely on an individual basis.  Neither you nor we will seek to have any dispute heard as a class action or in any other proceeding in which either party acts or proposes to act in a representative capacity. No proceeding will be combined with another without the prior written consent of all parties to all affected proceedings. You and we also agree not to participate in claims brought in a private attorney general or representative capacity, or any consolidated claims involving another person's account, if we are a party to the proceeding.   YOU ARE GIVING UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.

e.  **Escalation**.  Notwithstanding the foregoing, the parties will attempt to resolve any dispute arising out of or relating to the performance of Services through negotiations between senior representatives of the parties who have authority to negotiate and settle the dispute.  Nothing in this Section 8(e) (including a party invoking this Section 8(e) or party's delay or failure to invoke this Section) is to be construed as a waiver of either party's exercise or partial exercise of any right or remedy under this Agreement.

## 9. MISCELLANEOUS

a.  **Nature of the Agreement; Relationship of the Parties**. The whole of the Premises and Office Space remains in our possession and control. Your Agreement with us is a contract for the provision of services and we are giving you the right to share with us the use of the Office Space so that we can provide the Services to you.  Notwithstanding anything in this Agreement to the contrary, you and we agree that our relationship is not that of landlord-tenant or lessor-lessee but rather that of licensor/licensee and this Agreement in no way shall be construed as to grant you or any Member any title, easement, lien, possession or related rights in our business, the Premises, the Office Space or anything contained in or on the Premises or Office Space. This Agreement creates no tenancy interest, leasehold estate, or other real property interest. The parties hereto shall each be independent contractors in the performance of their obligations under this Agreement, and this Agreement shall not be deemed to create a fiduciary or agency relationship, or partnership or joint venture, for any purpose.  You acknowledge and agree that you are entering into this Agreement for the purposes of and in the course of your trade, business and/or profession, and not as a consumer. Neither party will in any way misrepresent our relationship.

b.  **Updates to the Agreement.** Changes to membership and overage fees, will be governed by Section 4(b) and 4(d) of this Agreement, respectively. We may otherwise update this Agreement by mutual agreement of the parties.

c.  **Waiver**. Neither party shall be deemed by any act or omission to have waived any of its rights or remedies hereunder unless such waiver is in writing and signed by the waiving party.

d.  **Subordination**. This Agreement is subject and subordinate to our Lease and to any supplemental documentation and to any other agreements to which our Lease is subject to or subordinate.  However, the foregoing does not imply any sublease or other similar relationship involving an interest in real property.

e.  **Extraordinary Events.** Neither party is liable for, and will not be considered in default or breach of this Agreement on account of, any delay or failure to perform as required by this Agreement (with the exception of any obligations to pay any sum of money due to us under this Agreement, as a result of any causes or conditions that are beyond such party's reasonable control and which such party is unable to overcome by the exercise of reasonable diligence, including without limitation (i) any delays or changes in construction of, or Innovo Works' ability to procure any space in, any Premises, and (ii) any delays or failure to perform caused by conditions under the control of our landlord at the applicable Premises, provided that the affected party will use commercially reasonable efforts to resume normal performance.

f.  **Severable Provisions.** Each provision of this Agreement shall be considered severable. To the extent that any provision of this Agreement is prohibited or otherwise limited, this Agreement shall be considered amended to the smallest degree possible in order to make the Agreement effective under Applicable Law.

g.  **Survival**. Sections 1, 2(b), 4 (to the extent any payments remain outstanding), 5(e), 5(f), 5(g), 6(b), 7(a) through 7(f), 7(h) through 7(j), 7(l), 8, and 9 and all other provisions of this Agreement reasonably expected to survive the termination or expiration of this Agreement will do so.

h.  **Notices**. Any and all notices under this Agreement will be given via email, and will be effective on the first business day after being sent. All notices will be sent via email to the email addresses specified on the Membership Details Form, except as otherwise provided in this Agreement. Innovo Works may send notices to either (or both) the Primary Member or the Authorized Signatory, as Innovo Works determines in its reasonable discretion. Notices related to the physical Office Space, Premises, Members, other Member Companies or other issues in the Premises should be sent by the Primary Member. Notices related to this Agreement or the business relationship between you and Innovo Works should be sent by your Authorized Signatory.  In the event that we receive multiple notices from different individuals within your company containing inconsistent instructions, the Authorized Signatory's notice will control unless we decide otherwise in our reasonable discretion.

i.  **Headings; Interpretation.** The headings in this Agreement are for convenience only and are not to be used to interpret or construe any provision of this Agreement.  Any use of "including," "for example" or "such as" in this Agreement shall be read as being followed by "without limitation" where appropriate. References to any times of day in this Agreement refer to the time of day in the Office Space's time zone.

j.  **No Assignment.** You may not transfer, sublicense or otherwise assign any of your rights or obligations under this Agreement (including by operation of law) without our prior written consent, which consent may be withheld in our sole and absolute discretion. If for any reason we consent in writing to an assignment by you, if payment of a Service Retainer has been waived pursuant to this Agreement, upon any assignment of this Agreement, we may require, in our sole discretion, that a reasonable Service Retainer be paid prior to such assignment becoming effective. We may assign this Agreement without your consent, and will use commercially reasonable efforts to provide you with reasonable prior advanced notice.

k.  **Brokers**.  Except as may be provided for through the Innovo Works broker referral program or as indicated on the Membership Details Form, you hereby represent and warrant that you have not used a broker or realtor in connection with the membership transaction covered by this Agreement.   If this Agreement is terminated due to a default by you beyond applicable notice and cure periods (an "**Early Exit**"), then, within thirty (30) days of such termination, you shall reimburse Innovo Works for any fees previously paid by Innovo Works to a broker or realtor used by you corresponding to the period following such Early Exit. Each party hereby indemnifies and holds the other harmless against any claims arising from the breach of any warranty or representation of this paragraph by the indemnifying party.

l.  **Counterparts and Electronic Signature**. This Agreement may be executed in any number of counterparts by either handwritten or electronic signature, each of which when executed shall constitute a duplicate original, but all the counterparts shall together constitute the one agreement, and each of which counterparts may be delivered by emailing the other party to this Agreement signed scanned document or electronically signed portable document format (pdf) version of the contract (as applicable). Each party agrees to the execution of this Agreement in this manner, and the parties acknowledge that execution in this manner creates a binding contract between the parties on the Effective Date.

m.  **Compliance with Laws.** You, and the Innovo Works Parties, each as to itself, will use commercially reasonable efforts to (i) comply with the requirements of Applicable Law in performing its obligations under this Agreement, to the extent applicable, and (ii) rectify any material non-compliance that it becomes aware of during the duration of this Agreement.

n.  **Entire Agreement.** This Agreement, including the Membership Details Form, constitutes the entire agreement between the parties relating to the subject matter hereof and shall not be changed in any manner except by a writing executed by both parties or as otherwise permitted herein.  All prior agreements and understandings between the parties regarding the matters described herein have merged into this Agreement**.**

o.  **No Modifications.**  This Agreement may not be modified, amended or terminated, nor any of its provisions waived, except by an agreement in writing signed by the parties hereto, or pursuant to the terms described herein.

p.  **Authority.**  Each of Member Company and Innovo Works does hereby warrant as to itself that it (i) is a duly authorized and existing entity, (ii) is qualified to do business in the jurisdiction where the Main Premises are located to the extent required by Applicable Law, and (iii) has full right and authority to enter into this Agreement, and that any person signing on behalf of such party is authorized to do so. Each party hereby represents that no third-party's consent is required with respect to its execution and delivery of this Agreement and the effectiveness hereof.

q.  **No Third-Party Beneficiaries**.  This Agreement and nothing express or implied herein is intended to confer, nor shall anything herein confer, upon any person other than the parties and their respective successors any rights, remedies, obligations or liabilities whatsoever.

*[No Further Text; End of Agreement]*