UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
In re:                                                    Chapter 11

       COWORKRS 3RD STREET LLC                    Case No.: 23-44306-ess
       *dba* BOND GOWANUS,
                                  Debtor.
---------------------------------------------------------------X
COWORKRS 3RD STREET LLC
*dba* BOND BOWANUS

                              Plaintiff,        Adv. Pro. No.: 23-01113-ess
      - against –

92 THIRD STREET LLC,
OREN RICHLAND,
DEARBORN CAPITAL GROUP LLC,
INNOVO WORKS 92 THIRD STREET LLC,
and INNOVO WORKS LLC,

                              Defendants.
---------------------------------------------------------------X

---

## MEMORANDUM OF LAW IN SUPPORT OF THE ENTRY OF A
## (I) TEMPORARY RESTRAINING ORDER AND ORDER DIRECTING TURNOVER OF
## DOCUMENTS AND INFORMATION, AND (II) PRELIMINARY INJUNCTION

---

**Law Offices of Avrum J. Rosen, PLLC**
*Proposed Attorneys for the Plaintiff-Debtor and Debtor in Possession*
38 New Street
Huntington, NY 11743
Telephone: (631) 423-8527
Avrum J. Rosen, Esq.
Alex E. Tsionis, Esq.
Nico G. Pizzo, Esq.

CoWorkrs 3rd Street LLC *dba* Bond Gowanus the debtor and debtor in possession in the underlying bankruptcy case and plaintiff herein (the "Plaintiff"), by its proposed attorneys, the Law Offices of Avrum J. Rosen, PLLC, submits this Memorandum of Law in support of the application dated November 30, 2023 (the "Application")[1] seeking the entry of an order: (I) temporarily restraining defendants Oren Richland ("Oren"), Dearborn Capital Group, LLC ("Dearborn"), Innovo Works LLC ("Innovo Works"), Innovo Works 92 Third Street LLC ("Innovo 92" together with Oren, Dearborn, Innovo Works collectively the "Restrained Defendants") and 92 Third Street LLC (the "Landlord" with the Restrained Defendants collectively the "Defendants") from collecting, transferring, hypothecating, encumbering or otherwise disposing of certain rents and other assets identified herein and temporarily restraining the Restrained Defendants access to the Premises (defined below); and (II) scheduling a hearing on shortened notice to consider the Debtor's request for: (a) a preliminary injunction: (1) preventing the Restrained Defendants and the Landlord from transferring, hypothecating, encumbering or otherwise disposing of property of the Debtor's bankruptcy estate; (2) restraining the Restrained Defendants access to the Premises (defined below); and (3) preventing the Restrained Defendants from contacting the Debtor's licensees; and (b) an Order directing the Restrained Defendants and the Landlord to immediately turn over to the Debtor (1) access to the Premises and (2) all property of the estate including: (i) all funds collected in the form of rent; (ii) keys to the Premises; (iii) all licenses and agreements in the Restrained Defendants' possession entered into with the Landlord; and (iv) all other property of the Debtor's estate

---

[1] Defined terms not otherwise defined herein shall have the same meanings ascribed to them in the Application.

## PRELIMINARY STATEMENT

The Debtor seeks emergency relief for a myriad of reasons. First, the Debtor made demand on the Defendants for turnover of property of the estate and to vacate and turnover the lease space. The Defendants affirmatively denied the Debtor's demands despite the automatic stay. Second, The Defendants notified all the licensees to stop paying rent to the Debtor and instead send all rent payments to the Restrained Defendants. The Debtor notified the licensees of the bankruptcy filing and to continue to remit rent payments as previously scheduled to the Debtor, and a number of the licensees have voiced their frustration at the contradicting notice of rent. Third, a number of licensees have notified the Debtor that either they will be vacating their offices due to this conflict. Other licenses have notified the Debtor that they already paid the Defendants, due to their presence at the premises and are unsure of who is rightfully collecting rent.

There is no dispute that prepetition, Oren and Dearborn were hired by the Debtor's parent company, Coworkrs, LLC d/b/a Bond Collective ("Bond"), as Chief Restructuring Officer and then elevated to Chief Executive Officer. There is no dispute that Oren and Dearborn had complete control of Bond's employees, resources, bank accounts and revenue stream and that Oren became the face of Bond to all of its landlords, employees and members. There is no dispute that during that time, Oren began a rebranding process of Bond and used Bond's money and employees to work with a branding firm to create the name "Innovo Works". There is no dispute that Oren and Dearborn stopped paying the Landlord and upon the Landlord taking back the Premises began working as the face of Innovo Works and Innovo 92. There is no dispute that Oren on behalf of Dearborn entered in and executed a Letter of Intent ("LOI") and a Non-Disclosure Agreement ("NDA") with Bond and, there is no dispute, that Oren and Dearborn violated those agreements and breached their fiduciary duty.

The behavior of the Restrained Defendants is not only shocking, but reprehensible. The Debtor should be granted immediate relief to prevent the Restrained Defendants from continuing to manipulate the licenses and convert estate funds. But for this Court's intervention, and immediate relief, the Restrained Defendants will continue to engage in cunning behavior to the detriment and harm of the Debtor's estates, its licenses/members and its creditors.

## JURISDICTION, VENUE AND NATURE OF THE PROCEEDING

This action arises under the Debtor's pending Chapter 11 bankruptcy case. The statutory predicates for the relief sought herein include 11 U.S.C. §§ 105(a), 502, 541, 542, 543, 548, 550 and 853 ("Bankruptcy Code"), 28 U.S.C. § 2201, Rules 6009, 7001 and 7065 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), New York Limited Liability Law and any common law, rule, regulation and/or any applicable law of any other jurisdiction in which assets that are property of the estate currently unknown to Plaintiff are located.

This action is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(1), (b)(2)(A), (b)(2)(B), and (b)(2)(E). This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. Plaintiff consents to the entry of final orders and judgments by the Bankruptcy Judge presiding over this adversary proceeding if it is determined that the Bankruptcy Judge, absent consent of the parties, cannot enter final orders or judgment consistent with Article III of the United States Constitution.

## BACKGROUND

The relevant procedural and factual background is set forth in the Application and Affidavit of David Goldwasser the Debtor's proposed Chief Restructuring Officer, which are incorporated by reference herein.

## <u>LEGAL STANDARD</u>

A preliminary injunction may be issued where a plaintiff demonstrates: (1) irreparable harm, "and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make fair ground for litigation," plus a tipping of the balance of equities in favor of the plaintiff. *Mony Grp., Inc. v. Highfields Capital Mgmt., L.P*., 368 F.3d 138, 143 (2d Cir. 2004) (citation omitted); *see Blum v. Schlegel*, 18 F.3d 1005, 1010 (2d Cir. 1994); *Citibank, N.A. v. Nyland, Ltd*., 839 F.2d 93, 97 (2d Cir. 1988); *Church of Scientology Int'l v. Elmira Mission of the Church of Scientology*, 794 F.2d 38, 41 (2d Cir. 1986); *Power Test Petro. Distribs. v. Calcu Gas, Inc*., 754 F.2d 91, 95 (2d Cir. 1985); FED. R. CIV. P. 65 (outlining requirements for issuance of preliminary injunctions); FED. R. BANKR. P. 7065 (applying Rule 65 in bankruptcy proceeding, but excepting requirement of posting of a bond).

The showing of irreparable injury is "the most important prerequisite for the issuance of a preliminary injunction." *NAACP v. Town of E. Haven*, 70 F.3d 219, 224 (2d Cir. 1995) (*citing Reuters, Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 907 (2d Cir. 1990)); *accord Citibank, N.A. v. Citytrust*, 756 F.2d 273, 275 (2d Cir. 1985). As a general rule, an irreparable injury is also one that cannot be redressed through a monetary award. *See*, *e.g.*, *Wisdom Imp. Sales Co. v. Labatt Brewing Co*., 339 F.3d 101 at 111-113 (2d Cir. 2003). Despite the redressability of an injury through a monetary award, a preliminary injunction may be issued where "there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied." *Brenntag Int'l Chems., Inc. v. Bank of India*, 175 F.3d 245, 249–50 (2d Cir. 1999) (citation omitted).

## **ARGUMENT**

I.   **Absent Injunctive Relief, The Debtor's Estate Will Suffer Irreparable Harm**

The Debtor has reason to believe that a large number of licensees will be vacating their locations, refuse to renew their licenses or will cease paying rents due to Restrained Defendants actions. The debtor continues to receive email inquiries that were received from licensees stating that they are receiving conflicting instructions from the Restrained Defendants as to which entity is the rightful licensor and where rent should be paid. See Exhibit "K" comprising of a number of licensees stating they will not renew or are vacating.

The Debtor asserts that without injunctive relief, the Restrained Defendants will continue their actions to irreparably harm the Debtor's estate. Upon the filing of the instant Bankruptcy Case, the Debtor notified the Restrained Defendant and the Landlord that the Debtor filed bankruptcy, the automatic stay was in effect and demanded turn over of the Premises to the Debtor. Instead of responding, the Landlord blatantly violated the automatic stay by sending the Notice (Exhibit "I") to all of the licensees.

In response, to the Defendants action, the Debtor, by and through its proposed counsel, sent a second letter advising the Defendants of the consequences of their actions and requested that cease all attempts to collect rent until this Court could make a decision as to the validity of the alleged self-help (Exhibit "J"). That letter has not been timely responded to. However, since that letter was sent, the Restrained Defendants have been circulating new licenses to the Debtor's Licensees and demanding that they enter into a new agreement. See Exhibit "L", which is a copy of the proposed license that the Restrained Defendants are soliciting to the Debtor's Licensees. In the meantime, Licensees are leaving in droves.

In addition to the lost revenue from the licensees, the Debtor will suffer irreparable harm to its reputation if the Restrained Defendants are permitted to continue its abhorrent conduct and behavior. The Debtor will also suffer from the unlawful conversion of property of the Debtor's estate (all of which is subject to a security interest of the SBA) and the Defendants interference with the orderly administration of the Debtor's estate.

Some of the Debtor's claims in this adversary proceeding may be mooted if the Defendants are permitted to collect the rent of the Debtor's Licensee's and take control of the Premises. As such, the estate will be irreparably harmed without a temporary restraining order and the injunctive relief requested in this Application.

## II.    <u>The Debtor Has A Likelihood Of Success On The Merits Of His Claims</u>

In seeking a preliminary injunction, the Debtor must demonstrate either "a likelihood of success on the merits" or "sufficiently serious questions going to the merits to make them a fair grounds for litigation." *Mony Grp., Inc*., 368 F.3d at 143. Here, the Debtor has a likelihood of success on the merits.

Section 541 of the Bankruptcy Code provides that the commencement of a bankruptcy case creates an estate, to be comprised of "all legal and equitable interests" of a debtor, "wherever located and by whomever held." *See* 11 U.S.C. § 541.

Whether a debtor has a legal or equitable interest in property such that it becomes "property of the estate" under section 541 is determined by applicable state law. *Butner v. United States*, 440 U.S. 48, 54 (1979). Any property of a debtor upon which a judgment creditor might obtain a lien under state law flows to the bankruptcy estate. *See id*.; 11 U.S.C. § 544(a)(1).

At the outset, it must be pointed out that Kaufman Friedman Plotnicki & Grun LLP, Landlord's counsel that orchestrated the seizure of all of the assets of the Debtor, and especially

the partner in charge of this matter, Mr. Grun, should have known better.  They were sanctioned

by this Court in 2004 for similar behavior in *In re Ambotiene*, 316 B.R. 25 (Bankr. E.D.N.Y. 2004)

*aff'd, Grand St. Realty, LLC v. McCord, No. 04-CV-4738 (CBA), 2005 U.S. Dist. LEXIS 45314

(E.D.N.Y. Sep. 30, 2005)* In that case, they repeatedly interfered with the administration of a

chapter 7 trustee's administration of an estate by refusing access to the trustee to evaluate property

in a restaurant that has been listed on the petition of the owner of the tenant corporation.  They

actually admitted that they had denied access (again they appeared to have used "Self-Help" to

gain possession of the premises) because they wanted their client, the landlord to obtain the title

to the personal property for re-sale purposes:

> The record shows that the Landlord's reason for refusing access to the Trustee was
> its position that the Landlord, not the Debtor's bankruptcy estate, was entitled to
> keep any value in the Equipment for itself. *See* Affirmation in Opposition to the
> Trustee's Motion Compelling Access to Property of the Estate dated March 25,
> 2004 ("Landlord Aff."), P 6; Trustee Aff., P 10. The Landlord asserted that Krezo
> Two owed it back rent from October 2003 forward, that under New York law, title
> to any fixtures remaining in the leased premises vested in the Landlord, and that
> Krezo Two's assets were not property of the Debtor's bankruptcy estate. Landlord
> Aff., PP 6, 9. In effect, the Landlord and Landlord's Counsel determined that there
> were no circumstances under which the Trustee would be entitled to claim the value
> of the Equipment for the Debtor's bankruptcy estate, and attempted to impose that
> result upon the Trustee by denying him access to the Premises to inspect the
> Equipment to determine whether he should proceed to litigate those issues.

*Id.* at 32.

That is almost identical to the current situation where they have colluded with a former

CRO of the Debtor to obtain custody and control over all of the Debtor's assets and also appear to

have colluded in causing the default that let the resort to "Self-Help".  It would appear they learned

nothing from having been sanctioned by this Court and excoriated in the appeal decision.  In the

Demand letter annexed to the Affirmation as Exhibit "H", (written before the undersigned was

aware of the *Ambotine* case) the Landlord, Oren and their counsel were expressly warned that they

violated the stay at their peril and were advised to seek a determination of their claims from this

Court before exposing themselves and their clients to tremendous damages.  The fact is that they could have avoided this result had they heeded Debtor's counsel's warnings and sought relief from the automatic stay in this Court. "[I]t is not the debtor's responsibility to take action that ensures that she received protection of the automatic stay; rather the creditor bears the burden of seeking relief from the automatic stay before taking post-petition collection actions." *In re Braught,* 307 B.R. 399, 402 (Bankr. S.D.N.Y. 2004). "A motion for stay relief is not a mere formality that may be ignored in a party's discretion." *In re Dominguez,* 312 B.R. at 505.

For that reason, sanctions are again sought against them and their clients, and this injunctive relief is needed.

As Chief Judge Morris stater in *In re Salov*, 510 B.R. 720, 726 (Bankr. S.D.N.Y. 2014):

> The filing of a bankruptcy petition invokes the powerful protection of the automatic stay under 11 U.S.C. § 362. The automatic stay is "one of the fundamental debtor protections provided by the bankruptcy code." *Eastern Refractories Co. Inc v. Forty Eight Insulations Inc.*, 157 F3d 169, 172 (2d Cir. 1998). It is effective immediately upon the filing of a bankruptcy petition without further action. *Rexnord Holdings v. Bidermann*, 21 F.3d 522, 527 (2d Cir. 1994). The filing also creates an estate consisting of "all legal or equitable interests of the debtor in property" at the time of filing as well as other property that may be recaptured during the bankruptcy. 11 U.S.C. § 541(a)(1); *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 522 F. Supp. 2d 569, 576 (S.D.N.Y. 2007). The scope of the stay is broad, encompassing "almost any type of formal or informal action  taken against the debtor or the property of the [bankruptcy] estate." 3 Collier on Bankruptcy ¶ 362.03 (16th ed. 2014).

Specifically, "Section 362(a)(3) provides that "any act to obtain possession of property of the estate or of property from the estate" is a violation of the automatic stay. 11 U.S.C. § 362(a)(3). According to § 541, the estate includes "all legal and equitable interests of the debtor in property at the commencement of the case." 11 U.S.C. § 541(a)(1)." *Id.* at 727.  The Landlord has labored under the mistaken position that because it allegedly took over dominion and control of the Premises, that all of the Debtor's rights were extinguished. That is not the law in this Circuit.  Even

if the "Self-Help" eviction was properly effectuated, it is uncontested that the Debtor's employees

and licensees remained in the Premises. Thus, the Debtor retained a possessory interest that was

protected by the automatic stay.

"Property of the estate encompasses all rights and interests that a Debtor may have in a

property. The right to own is a separate right from the right to possess or the right to occupy and

yet, all are property of the estate. When a debtor is attempting to redeem a piece of real property

or is attempting to prevent the transfer of a deed, it is the debtor's ownership interest that is in

question—not the possessory interest." *Id.* at 728.

> It is well settled that a debtor's mere possessory interest in premises, even absent
> any legal interest, is protected by the automatic stay." *In re Dominguez*, 312 B.R.
> 499, 506 (Bankr. S.D.N.Y. 2004) (citing *In re 48th Street Steakhouse*, 835 F.2d
> 427, 430 (2d Cir. 1987) ("A mere possessory interest in real property, without any
> accompanying legal interest, is sufficient to trigger the protection of the automatic
> stay.")). Courts in all ten circuits have found that the automatic stay protects a
> possessory interest in property. *See I.C.C. v Holmes Transp., Inc.,* 931 F.2d 984
> (1st Cir. 1991); *Cuffee v. Atlantic Bus. & Cmty. Dev. Corp. (In re Atlantic Bus. &
> Cmty. Corp.)*, 901 F.2d 325 (3d Cir. 1990); *Conn. Pizza, Inc. v. Bell Atlantic-
> Washington, D.C., Inc. (In re Conn. Pizza, Inc.)*, 193 B.R. 217 (Bankr. D. Md.
> 1996); *Boydstun v. Reed* 218 B.R. 840 (N.D. Miss. 1998); *Convenient Food Mart
> No. 144 v. Convenient Indus. America, Inc. (In re Convenient Food Mart No. 144,
> Inc.)*, 968 F.2d 592 (6th Cir. 1992); *In re Wright*, 183 B.R. 541 (Bankr. C.D. Ill.
> 1995); *Lankford v. Advanced Equities (In re Lankford),* 305 B.R. 297 (Bankr. N.D.
> Iowa 2004); *Galam v. Carmel (In re Larry's Apartment, L.L.C.),* 249 F3d 832 (9th
> Cir. 2001); *In re Gagliardi*, 290 B.R. 808 (Bankr. D. Colo. 2003*); Addon Corp. v.
> Gaslowitz (In re Addon Corp.)*, 231 B.R. 385 (Bankr. N.D. Ga. 1999). "[A]
> possessory interest in real property is within the ambit of the estate in bankruptcy
> under Section 541, and thus the protection of the automatic stay of Section 362."
> *Atlantic Bus. & Cmty. Dev. Corp.*, 901 F2d 325 at 328.

*Id*. at 729. So, at the very least, there was, and continues to be a violation as to the Debtor's

possessory rights in the Premises.

The next issue is whether or not the Landlord and Oren were correct in claiming that their

"Self-Help" eviction cut off the Debtor's rights in the Premises.

It is also of paramount importance to note that the Oren and the Landlord have taken over and converted the Debtor's license agreements which are at the core of its business. Nothing in the Stipulation or the Judgment gave them the right to do that. They have directed the licensees not to pay the Debtor and are presenting them with new agreements. A copy of same are annexed as **Exhibit "L"**. The case at bar is similar to the facts in *Colonial Realty Co. v. River Bank Am. (In re Colonial Realty Co.*), 122 B.R. 1, 2 (Bankr. D. Conn. 1990). In that case, a receiver took control of estate property of a related entity that was managed by the Debtor on the same day the case was filed and refused to turn it back to the Debtor. In ruling on the motion for a stay violation the court held that:

> Discussion of the first issue noted -- whether the management agreement is property of the debtor's estate -- can be short. The defendants' briefs acknowledge that Code § 541(a)(1) 2 encompasses the management agreement as property of the debtor's estate. *See In re Carroll*, 903 F.2d 1266, 1270-71 (9th Cir. 1990) ("Since we find the [management] agreement to be   property of the estate, it was protected by the automatic stay . . . ."). "The legislative history of § 541(a) makes clear that the definition of property 'will bring anything of value that the debtors have into the estate,' including 'tangible and intangible property . . . . whether or not transferrable by the debtor.'" *In re Prudential Lines, Inc.*, 119 Bankr. 430, 432 (S.D.N.Y. 1990) (citations omitted). I conclude that the management agreement was property of the estate on the date of the filing of the involuntary petition against the debtor.

"Where a non-debtor's interest in property is intertwined . . . . with that of a bankrupt debtor [and] if action taken against the non-bankrupt party would inevitably have an adverse impact on property of the bankrupt[cy] estate, then such action should be barred by the automatic stay.*" In re 48th Street Steakhouse, Inc.*, 835 F.2d 427, 431 (2nd Cir. 1987) *cert. denied* 485 U.S. 1035, 99 L. Ed. 2d 910, 108 S. Ct. 1596 HN10 (Landlord's notice of termination of prime lease violated automatic stay where if prime lease terminated, debtor's subtenancy would be destroyed.). Code § 362(a)(3) stays "any action, whether against the debtor or third-parties, to obtain possession r to

exercise control over property of the debtor." *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 1001 (4th Cir. 1986) (emphasis in original) *cert. denied* 479 U.S. 876, 93 L. Ed. 2d 177, 107 S. Ct. 251.

These cases make it crystal clear that the automatic stay protected the Debtor's license agreements and that the ongoing attempts by the Landlord and Oren to take over these licensees is a blatant stay violation which is irreparably harming the Debtor (and the licensees).

To the extent that the Landlord is asserting that the Lease was terminated by the issuance of the Judgment and Warrant, that is no longer the law in New York. Chief Judge Martin Glenn has ruled in *In re Payam, Inc.*, 642 B.R. 365 (Bankr. S.D.N.Y. 2022) that the issuance of a judgment and warrant of eviction no longer terminates a debtor's interest in a lease and that lease remained subject to assumption and cure pursuant to section 365 of the Bankruptcy Code, because the New York law that terminated the leasehold interest was abrogated in 2019. This landlord tenant case was commenced after the effective date of the new statute and is governed by same. So, to the extent that the Stipulation of Settlement relied upon that Warrant and Judgment as the predicate to terminating the Lease, it fails as a matter of law.

The standard for using Self-Help under New York is as follows:

> Although eviction through legal process is undoubtly the most secure method," it is well established that a landlord may, under certain circumstances, utilize self-help to regain possession of demised commercial premises (*Zendani v Morrina Realty Corp.,* NYLJ, Mar. 11, 1999, at 28, col 3 [App Term, 1st Dept]; *see Liberty Indus. Park Corp. v Protective Packaging Corp*., 43 AD2d 1020, 351 NYS2d 944 [1974], affg 71 Misc 2d 116, 335 NYS2d 333 [1972]). In particular, a commercial landlord may utilize self-help where (1) the subject lease specifically reserves the landlord's right to reenter and regain the premises upon tenant's breach of its obligation to pay rent, (2) prior to reentry, landlord serves upon tenant a valid rent demand, (3) reentry was effected peaceably, and (4) tenant is in fact in default in its obligation to pay rent (*see Bozewicz v Nash Metalware Co*., 284 AD2d 288, 725 NYS2d 671 [2001]; *Matter of 110-45 Queens Blvd. Garage v Park Briar Owners*, 265 AD2d 415, 696 NYS2d 490 [1999]; *Matter of Jovana Spaghetti House v Heritage Co. of Massena,* 189 AD2d 1041, 592 NYS2d 879 [1993]; *see also Matter of Ga Young Lee v Charl-Ho Park*, 16 AD3d 986, 793 NYS2d 214 [2005]; *North*

*Main St. Bagel Corp. v Duncan*, 6 AD3d 590, 775 NYS2d 362 [2004]; 2 Dolan, Rasch's Landlord and Tenant Summary Proceedings §§ 29:1, 29:11 [4th ed]).

These elements raise multiple issues. In the first instance, there is nothing in New York law that states that the use of Self-Help terminates the tenant's lease as a matter of law so that it cannot be treated as estate property, subject to assumption in a bankruptcy case. The law from other states points out and highlights the issues that arise, and that have arisen in this case when Self-Help is permitted.[2]  The law in New York only states that it can be used to gain possession. That possession can be and is restored all the time by New York Courts and as discussed herein, there is a specific statute that sets forth the standard and sets damages. *In re Chavez,* 381 B.R. 582 (Bankr. E.D.N.Y. 2008).  Indeed, in *Cooper v. Monterey* 96 St. LLC, 2023 NY Slip Op 31423(U) (Sup. Ct.), the court found that there was an illegal eviction where a tenant had been locked out of his apartment, even though he asserted he had a sublease.  Because the defendants in the action had not obtained a judicial determination as to the validity of the sub-lease before resorting to Self-Help, summary judgment was granted on liability for an illegal eviction.

The consequences of a wrongful eviction are severe. Where the "Self-Help" is found to have not complied with the statue, treble damages can be awarded.   NY CLS RPAPL Section § 853. Action for forcible or unlawful entry or detainer; treble damages: "If a person is disseized, ejected, or put out of real property in a forcible or unlawful manner, or, after he has been put out, is held and kept out by force or by putting him in fear of personal violence or by unlawful means, he is entitled to recover treble damages in an action therefor against the wrong-doer." *See Rocke*

---

[2] "Oppressive, self-help remedies inflicted upon others by parties to a dispute cannot be tolerated by courts of law. *Cf. In re B. Cohen & Sons Caterers, Inc.,* 97 B.R. 808, 814-16 (Bankr. E.D.Pa. 1989*); In re Aponte*, 82 B.R. 738, 742-47 (Bankr. E.D.Pa. 1988); and *In re Adams*, 65 B.R. 646, 649-50 (Bankr. E.D.Pa. 1986). Such actions usually, as here, serve to inflame disputes, which courts, as agents of conflict-resolution, seek to counteract. Therefore, we conclude that the Defendant's removal of the fuses and keys was a significant wrongful act and that the Defendant is liable to the Debtor for the full consequences of this action*". In re 222 Liberty Assocs.,* 101 B.R. 856 (Bankr. E.D. Pa. 1989).

*v. 1041 Bushwick Ave. Assoc., Inc.,* 169 A.D.2d 525, 564 N.Y.S.2d 379 (1st Dep't 1991); *Sam & Mary Housing v. Jo/Sal Market Corp.,* 100 A.D.2d 901, 901, 474 N.Y.S.2d 786, 787 (2d Dept 1984), *aff'd,* 64 N.Y.2d 1107, 490 N.Y.S.2d 185, 479 N.E.2d 821 (1985); *Williams v. Llorente,* 115 Misc. 2d 171, 171-73, 454 N.Y.S.2d 930, 931-32 (1st Dep't 1982). Furthermore, an award of treble damages pursuant to RPAPL § 853 does not preclude an additional award of punitive damages *see, e.g., Williams v. Llorente,* 115 Misc. 2d at 172, 454 N.Y.S.2d at 931; *Bianchi v. Hood,* 128 A.D.2d 1007, 513 N.Y.S.2d 541 (3d Dep't 1987), which may be awarded "in the extreme case where the landlord is shown to have been motivated by actual malice or to have acted in such a reckless, wanton or criminal manner so as to indicate a conscious disregard of the rights of others." *Lyke v. Anderson,* 147 A.D.2d 18, 31, 541 N.Y.S.2d 817, 826 (2d Dep't 1989). Similarly, where the defendant's conduct evinces malice or reckless disregard for a plaintiff's rights, punitive damages are available for such torts as trespass and conversion.  *See, e.g., Kubin v. Miller,* 801 F. Supp. 1101, 1122 (S.D.N.Y. 1992); *Malerba v. Warren,* 96 A.D.2d 529, 464 N.Y.S.2d 835, 837 (2d Dep't 1983). *H & P Research v. Liza Realty Corp.*, 943 F. Supp. 328, 330 (S.D.N.Y. 1996); *H & P Research v. Liza Realty Corp.*, 943 F. Supp. 328 (S.D.N.Y. 1996). In *Sol De Ibiza, LLC v. Panjo Realty, Inc.*, 2010 NY Slip Op 20386, 29 Misc. 3d 72, 911 N.Y.S.2d 567 (App. Term).

The next issue is what is the operative document that the Landlord is relying upon.  Evey case in New York appears to look to the lease for the language on self-help.  In this lease, annexed to the Motion as **Exhibit "A"**, the operative language is found in Par. 17 of the pre-printed lease. That provision was modified to require seven (7) days notice instead of five (5) days and twenty (20) days notice to cure instead of fifteen (15) days notice to cure.  Moreover, the right to use force required the landlord to "remove their effects and hold the demised premises as if this lease had

not been made." This did not happen. All of the Debtor's possessions were converted by the Landlord and Oren and all of the licensees were permitted to remain. The notice provisions were not complied with either.

Under the Stipulation of Settlement, and the Judgment, the notice provisions were shortened and Self-Help was authorized *according to New York law*. The provision as to the Debtor's personal property stated:

> 12.    Upon Coworkrs' peaceful surrender of possession of the Premises, or its eviction therefrom by any means as provided herein, any and all personal belongings, property, furnishings or installations remaining in the Premises after such surrender or eviction shall be deemed abandoned by Coworkrs, and may be discarded by Plaintiff at Coworkrs' expense and without liability to Coworkrs.

Needless to say, that provision, given the value of the Debtor's Property would constitute a fraudulent conveyance, or a preference recoverable in this case. 11 U.S.C. Sections 541, 542, 543, 547 and 548.  Moreover, nothing therein permitted the Landlord or Oren to convert the Debtor's IP, license agreements executory contracts with a myriad of service providers, or to use that Property.

It is clear that that not all of the Debtor's employees or licensees were evicted through the "Self-Help" and that the Landlord and/or Oren were selective in their "Self-Help".  This is an important reason why "Self-Help" cannot terminate a lease for bankruptcy purposes.  It lacks the clear line and finality of the execution of a Warrant and creates lingering liability for sub-tenants, licensees, personal property of the debtor and the host of services provided by the Debtor.  The provisions of the Lease made it clear that the Landlord was to remove and store all property of the tenant.  The Stipulation was not so clear, but abandonment of personal property cannot be read to mean conversion of all of the assets of the Debtor. But to complete a "self-help" eviction, the persons occupying the premises needed to be actually evicted and it had to be done so without the

threat of physical force. None of that happened.  As counsel to the Debtor, we have counselled our client not to try to assert control over the property to avoid any physical confrontations, but the potential for such actions have been created by the questionable overreaching of the Landlord, Oren and their respective counsel.

As  noted above, it is crystal clear that the possessory right of the Debtor is covered by the stay, and it is uncontroverted that none of the Debtor's employees were ejected or even asked to leave. So, the Debtor remains in legal possession of the Premises.

A liklihood of success on the merits is further evidenced by an analysis of the applicable bankruptcy law on these issues. In an unpublished opinion from this District, in *In re Brandon D. McCants*, 12-14406 (ALG) (Bkrtcy, S.D.N.Y. 2012) Judge Gropper addressed the scope of different sub-sections of § 362.  In evaluating the scope of the statute and Section 362(b)(22), added by Congress in the 2005 Amendments to the Bankruptcy Code,  that court held that Section, "confirms that the automatic stay is applicable notwithstanding the issuance of a warrant of eviction under State law; if it were not, Congress would not have added another exception to those already enumerated in § 362(b) providing that the stay would be in effect after a filing only under certain limited conditions.

That court went on to hold that a stipulation of settlement was the agreement at issue (as is the case at bar), was neither a lease nor a rental agreement and sub-section (22) was not applicable. In so ruling that court stated:

> Although § 362(b)(22) together with § 362(l) would ordinarily cover the field in a residential case, the further issue here is whether it applies at all. Section 362(b)(22) gives rights to a "lessor" and provides that the debtor must reside in the premises under a "lease" or a "rental agreement." *See In re McCray*, 342 B.R. 668, 669 (Bankr. D.D.C. 2006) (noting, in the context of a foreclosure, that the movant had not alleged that it was the debtor's lessor or that it had a lease or rental agreement with her; therefore, § 362(b)(22) did not apply); *see also In re Ashlock*, No. 11-1162, 2012 WL 171591, *3 (Bankr. E.D. Tenn. 2012) (concluding that a

debtor was not residing in property "under a lease or rental agreement" when she remained in possession of real property after a foreclosure sale); see also W. Homer Drake, Paul W. Bonafel & Adam M. Goodman, CHAPTER 13 PRACTICE AND PROCEDURE § 5B:18 (November 2012). Id. at 7.

Thus, the Stipulation of Settlement is the operative agreement and it is an executory contract which is assumable by the Debtor. As such, it was not terminated by the execution of a Warrant of Eviction, which is the *only* way a leasehold can be terminated for bankruptcy purposes under New York law.

The next element in a Self-Help eviction is that there must have actually been a default. Here, as adequately alleged int the Affirmation together with the documentary evidence, Oren was in sole control of the Operations of the Debtor when he told the members of the Debtor that he had reached a "deal" with the Landlord for a new lease. A copy of the draft of that lease from when he was still CRO is annexed to the Affirmation as Exhibit "M". A close look at Par. 1.B will prove exactly what the Debtor has been alleging. This entire scheme was orchestrated to steal the Debtor's assets. Oren then made the unilateral decision, as he had sole control over the Debtor under the CRO agreement, to stop paying the Landlord, except for some additional space that was part of a short-term rental. That act sparked the default. Unbeknownst to the Debtor's principals, Oren had breached his fiduciary duty to the Debtor, as well as the terms of the earlier NDA and taken the lease in a newly formed Delaware Corporation.

Indeed, it was not the Landlord that effectuated the Self-Help, it was Oren along with hired security guards that invaded the Premises. It is clear that the Landlord colluded in this scheme and that the Debtor has a clear defense as to whether there was a default. Moreover, since the Stipulation of Settlement has never been terminated for bankruptcy purposes, it remains as an executory contract pursuant to cure under section 365. Based upon the above cited cases, the Landlord's intent on resorting to "Self-Help" and was not in accordance with applicable law and

violated the Stipulation and the Judgment in this case.  It is equally clear that the only way they could pull off this scheme was by self help as a Marshall would have never permitted what took place.

The last element in Self-Help is that the eviction had to actually take place.  As noted above, the Licensees were not evicted. They were part of the Debtors business as their license agreements (a sample is annexed to the Affirmation as Exhibit "M" was with the Debtor.  In addition, the Debtor's employees were not asked to leave. All of the Debtor's Property was converted or was given to Oren for no consideration.  This was not an eviction; it was a coup.

In *Sensenich v. Ledyard Nat'l Bank (In re Campbell)*, 398 B.R. 799 (Bankr. D. Vt. 2008) the court held that destroying personal property after a sale of the property in a bankruptcy sale by a secured creditor was a stay violation and it was determined to be so.  In this case, the Landlord has effectively destroyed all of the personal property of the Debtor by converting it. Damages resulting from lost profits and damage to an ongoing business are recoverable in a wrongful eviction. While lost profits may be an element of recovery in a wrongful eviction action, they must be proven with sufficient certainty and not be speculative. *Randall-Smith, Inc. v. 43rd St. Estates Corp.,* 17 N.Y.2d 99, 105-06, 268 N.Y.S.2d 306, 311-13, 215 N.E.2d 494 (1966); *Sam & Mary Housing v. Jo/Sal Market Corp.*, 121 Misc. 2d 434, 445, 468 N.Y.S.2d 294, 301 (Sup. Ct. Queens Co.), *modified on other grounds,* 100 A.D.2d 901, 474 N.Y.S.2d 786 (2d Dep't 1984), aff'd, 64 N.Y.2d 1107, 490 N.Y.S.2d 185, 479 N.E.2d 821 (1985).

Under New York law, "in order to recover lost profits, a business must have been established and in operation for a definite period of time and calculations based on other similar businesses are too speculative and will not satisfy the [requirement that a] reasonable means of calculating [the amount be provided]." *Mehta v. New York City Dep't of Consumer Affairs,* 162

A.D.2d 236, 237, 556 N.Y.S.2d 601, 602 (1st Dep't 1990). *See Suffolk Sports Center, Inc. v. Belli Constr. Corp.*, 212 A.D.2d 241, 248, 628 N.Y.S.2d 952, 957 (2d Dep't 1995); *Nineteen New York Properties Ltd. Partnership v. 535 5th Operating Inc.,* 211 A.D.2d 411, 412, 621 N.Y.S.2d 42, 43 (1st Dep't 1995); *Sam & Mary Housing v. Jo/Sal Market Corp*., 121 Misc. 2d at 445, 468 N.Y.S.2d at 301. Given the difficulty of proving these damages, the Debtor is entitled to injunctive relief.

## III.    The Balance of Hardships Tips in Favor of The Estate

The balance of hardships tips decidedly in favor of the Debtor. The Complaint seeks a declaration from this Court that any and all assets comprising property of the Debtor's Bankruptcy estate being held by the Restrained Defendants, as well as any and all other property purchased, preserved and/or enhanced therefrom by the Restrained Defendants is property of the Debtor's bankruptcy estate. Without a preliminary injunction, the Restrained Defendants may transfer, hypothecate, encumber or otherwise dispose of property of the Debtor. In fact, the Defendants have already started to sign up the Debtor's licensees, try to hire their employees, stolen their IP , software and equipment and done incalculable damage to their brand.

In contracts, the Restrained Defendants suffer little to no harm by the issuance of a preliminary injunction because any such property will be held by the Debtor pending the outcome of this adversary proceeding. The Restrained Defendants do not require these assets to live or maintain their life. The possession of the Premises was unlawfully obtained and should be returned to the Debtor for the benefit of its creditors. Indeed, the Court is not being asked to determine now definitively whether such property is property of the Debtor's estate -- a preliminary injunction would simply maintain the *status quo* pending a trial and decision on the merits by this Court.[3] Accordingly, the balance of hardships tips in favor of the Debtor.

---

[3] The Debtor is willing move forward with expedited discovery and trial.

For these reasons, the Debtor is entitled to the relief requested herein.

**IV.     The Debtor Should Not Be Required To Post a Bond**

Rule 7065 of the Federal Rules of Bankruptcy Procedure, which makes Rule 65 of the Federal Rules of Civil Procedure applicable to this adversary proceeding, excepts a debtor, trustee or debtor in possession from the requirement of that security be posted under Rule 65(c). FED. R. BANKR. P. 7065. As a result, it is respectfully submitted that no bond is required of the Debtor in connection with his request for a temporary restraining order or a preliminary injunction.

**V.     Turnover Of Property Of The Debtor's Estate**

The Debtor also seeks entry of an Order directing the turnover of all property of the Debtor's estate including, but not limited to, any and all non-exempt funds or other property.

Section 542(a) of the Bankruptcy Code provides that " . . . an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title [11 USCS § 363] . . . shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate." 11 U.S.C. § 542(a).

Section 543 governs the actions of a custodian who had been appointed prior to the filing of the bankruptcy petition. The term "custodian" is defined under section 101(11) of the Bankruptcy Code as "(B) assignee under a general assignment for the benefit of the debtor's creditors; or (C) trustee, receiver, or agent under applicable law, or under a contract, that is appointed or authorized to take charge of property of the debtor for the purpose of enforcing a lien against such property, or for the purpose of general administration of such property for the benefit of the debtor's creditors." 11 U.S.C. § 101(11)(B-C).

The defendants, Oren and Dearborn are custodians of the Debtor due to the LOI and NDA agreements, and through their seizure of the Debtor's assets. The Debtor seeks demand for turnover under section 543 of the Bankruptcy Code. The defendants, Innovo Works, Innovo 92 and 92 Third Street LLC are not custodians and the Debtor seeks turnover of property of the estate under section 542 of the Bankruptcy Code. The Debtor submits that the relief requested herein is not only necessary but required in order for the Debtor to reorganize under Chapter 11 of the Bankruptcy Code.

**WHEREFORE,** the Debtor respectfully requests entry of the proposed Temporary Restraining Order and Order Scheduling a Hearing on Shortened Notice and an Order granting the balance of the relief requested in this Application.

Dated: November 30, 2023
      Huntington, New York

Respectfully submitted,

**Law Offices of Avrum J. Rosen, PLLC**

By:    */s/ Avrum J. Rosen*
      Avrum J. Rosen, Esq.
      Alex E. Tsionis, Esq.
      Nico G. Pizzo, Esq.
      38 New Street
      Huntington, NY 11743
      (631) 423-8527
      arosen@ajrlawny.com
      atsionis@ajrlawny.com
      npizzo@ajrlawny.com

*Proposed Counsel to the Plaintiff-Debtor and Debtor in Possession*