**BLANK ROME LLP**
1271 Avenue of the Americas
New York, NY 10020
Tel:    212-885-5000
Fax:    212-885-5001
Ira L. Herman
Evan J. Zucker
Mara B. Levin

**KAUFMAN FRIEDMAN  PLOTNICKI & GRUN, LLP**
Howard Grun, Esq.
300 East 42nd Street- 10th Floor
New York, New York 10017
Phone: (212) 973-3330
hgrun@kfpgllp.com

*Co-Counsel for 92 Third Street, LLC*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| COWORKRS 3RD STREET LLC d/b/a BOND GOWANUS, | Case No. 23-44306 (ESS) |
| Debtor. | Adv. Pro. No.: 23-01113-ESS |
| COWORKRS 3RD STREET LLC d/b/a BOND GOWANUS, | Hearing Date: December 5, 2023 2:00 p.m. |
| Plaintiff, | |
| -against- | |
| 92 THIRD STREET LLC, OREN RICHLAND, DEARBORN CAPITAL GROUP LLC, INNOVO WORKS 92 THIRD STREET LLC, and INNOVO WORKS LLC, | |
| Defendants. | |

1

AFFIRMATION ON BEHALF OF 92 THIRD STREET LLC IN OPPOSITION TO APPLICATION OF COWORKRS 3ʳᴰ STREET LLC D/B/A BOND GOWANUS SEEKING TRO, PRELIMINARY INJUNCTION, AND RELATED RELIEF WITH RESPECT TO ADVERSARY PROCEEDING

HOWARD GRUN, an attorney duly admitted to practice law before the Courts of the State of New York and before this Court, firms under penalty of perjury as follows:

1. I am a partner in Kaufman Friedman Plotnicki & Grun, LLP, attorneys for 92 3rd Street LLC, the owner of the building located at 68-80 Third Street, Brooklyn, New York 11231 ("Building"). I am fully familiar with the facts and circumstances set forth below. This affirmation is respectfully submitted on behalf of Owner in opposition to the application of Coworkrs 3rd Street LLC d/b/a Bond Gowanus ("Bond") which seeks the issuance by this Court of a TRO, preliminary injunctive relief, and related relief in conjunction with an adversary proceeding commenced by Bond in this Bankruptcy Proceeding.

2. The core claim which Bond raises, and which underlies both the Adversary Proceeding and its Bankruptcy filing, challenges Owner's right to have exercised it self-help remedy to retake possession of the premises previously leased by Bond from Owner ("Premises"). Bond claims that Owner had no such right, thereby rendering Bond's eviction from the Premises illegal. According to Bond, since its eviction was illegal, and because it allegedly maintained a leasehold or tenancy interest in the Premises when it filed its Bankruptcy Petition on November 27, 2023, the transfer of possession of the Premises by Owner to another party, in this case Innovo Works 92 Third Street LLC

("Innovo"), pursuant to a new lease with Innovo, constituted a violation of the automatic stay provisions of the Bankruptcy Code.

3. It is respectfully submitted that Bond is wrong in its legal analysis of applicable law. As a threshold matter, self-help has long been held to be an appropriate remedy exercisable by a landlord when a commercial tenant has failed to comply with its lease obligations to make payment of rent. Bozewicz v. Nash Metalware Co., Inc., 284 A.D. 2d 288, 725 N.Y.S. 2d 671 (2nd Dept. 2001); Martinez v. Ulloa, 50 Misc. 3d 45, 22 NY.S.3d 787 (App. Tm. 2nd, 11th and 13th Jud. Dists. 2015); Sol De Ibiza LLC v. Panjo Realty, Inc., 29 Misc. 3d 72, 911 N.Y.S. 2d 567 (App. Tm. 1st Dept. 2010). All that is required for a landlord to exercise its self-help right is that the lease reserve the right to re-enter and regain possession of the commercial premises upon a breach of a condition of the lease, that any notices of default and termination required to be served under the lease were served, and that possession is retaken by the landlord in a peaceable manner.

4. At bar, and as detailed in the Kershner Declaration, paragraph 17(2) of the Lease provides the very language which authorizes Owner's use of self-help. Indeed, in Panjo Realty, supra, the Court reviewed this very same lease provision and held that it authorized the use of self-help by a landlord. Panjo Realty, supra, was thereafter cited with approval by the Appellate Division, First Department in 1414 Holdings, LLC v. BMS-PSO, LLC, 116 A.D.3d 641985 N.Y.S.2d 13 (1st Dept. 2014) as authority for the use of self-help by a commercial landlord.

5. Here, as detailed in the Kershner Declaration, Owner served Bond with Lease Default Notice and Lease Termination Notice based on Bond's defaults under the

Lease in making payments of rent and additional rent to Owner. Having terminate Bond's Lease, Owner was entitled at that point to exercise self-help, even in the absence of a court order authorizing it to take possession of the Premises. However, as the Kershner Declaration details, Owner did commence an ejectment action in State Supreme Court seeking Bond's eviction, and that action was settled by the Stipulation, which resulted in issuance by the State Supreme Court of the Judgment against Bond entitling Owner to utilize self-help if Bond did not comply with its monetary obligations under the Stipulation with the same effect as if a marshal a sheriff had evicted Bond.

6. Nevertheless, as the Kershner Declaration details, when Bond defaulted in making payments required by the Stipulation, Owner again served Bond with a Stipulation Default Notice providing Bond with an opportunity to cure its default, and warning Bond that its failure to do so would result in the service of a Vacate Notice requiring that Bond vacate the Premises within five days or face eviction. When Bond failed to cure it default under the Stipulation, Owner served the Vacate Notice and exercised its legal right to evict Bond. Thus, not only does the long ago terminated Lease provide Owner with the express authority to utilize self-help to evict Bond, but that right was thereafter confirmed, reiterated and reduced to the Judgment and the so ordered Stipulation in the State Supreme Court Action, the notice provisions of which were further complied with by Owner.

7. With Owner having complied with its obligations both under the Lease and Stipulation and Judgment, there is no plausible argument to be made that Owner's actions in utilizing self-help in accordance with a duly issued Court mandate constituted an

illegal eviction under RPAPL §853, as Bond claims. Steinman v. 310 West 48th Street Realty Corp., 276 A.D. 2d 355, 715 N.Y.S. 2d 1 (1st Dept. 2000); Dinolfi v. Berkely Associates Co., 98 A.D.2d 644 469 N.Y.S.2d 398 (1st Dept. 1983).

8. Bond's reliance on In re Payam, Inc., 642 B.R. 365 (Bankr. S.D.N.Y. 2022) is very much misplaced. Payam concerns the application of RPAPL §749. RP APL §749 is contained in Article 7 of the RP APL which concerns *summary proceedings* commenced in the Civil Court of New York City. As amended in 2019, it now provides that in a proceeding commenced under Article 7, and where a judgment of possession and warrant of eviction has issued against a tenant, the tenant's interest in the leased premises is not terminated simply by the issuance of the judgment and the warrant, as was previously the case under the predecessor RPAPL §749. However, at bar, Owner did not commence and Article 7 summary proceeding against Bond seeking its eviction pursuant to a possessory judgment and warrant of eviction.

9. Instead, it commenced the State Supreme Court Action against Bond seeking a judgment in ejectment action based upon the conditional limitation language in the Lease which entitled Owner to terminate Bond's Lease based upon its defaults under the Lease as described in the Lease Default Notice. The Judgment ultimately issued by the State Supreme Court did not issue a warrant, which is the exclusive procedural eviction vehicle utilized in an Article 7 summary proceeding. Instead, the Judgment itself constituted the authority of Owner to evict Bond either through the office of the sheriff of marshal and their deputies, or by utilizing self-help with the same authority as if a marshal or sheriff had evicted Bond.

10. Thus, Payam is entirely inapplicable to the issues at bar. The legal analysis which is applicable, and which Bond has completely ignored, is provided by the landmark decision of the New York Court of Appeals in First National Stores, Inc. v. Yellowstone Shopping Center, Inc., 21 N.Y. 2d 630, 290 N.Y.S. 2d 721, 237 N.E. 2d 868 (1968). In that case, the Court made clear that when a commercial tenant is served with a default notice which threatens termination of the tenancy unless the default is cured within a particular period of time, the failure to cure that default, and the resulting termination of the lease, is a *fait accompli*, and the lease cannot be revived by the courts. The termination of the lease at that point is absolute, and tenant's interest in the lease and tenancy is forever forfeited unless, of course, the tenant prevails in any subsequent litigation in defending the claim that it is in default of the lease. Graubard Mollen Horowitz Pomeranz & Shapiro v. 600 Third Ave. Associates, 93 N.Y. 2d 508, 715 N.E. 2d 117, 693 N.Y.S. 2d 91 (1999); Garland & Garland v. Titan West Associates, 147 A.D. 2d 304, 543 N.Y.S. 2d 56 (1st Dept. 1989).

11. At bar, Bond did not seek what is commonly known as the Yellowstone injunction to toll the cure period set forth in Owner's Lease Default Notice so as to avoid forfeiture of its leasehold interest should the Lease be terminated. In fact, the opposite is true, as Bond consented to the termination of its Lease as provided in the Lease Termination Notice, and ultimately entered into the Stipulation and consented to the issuance of the Judgment. As such, the law is clear that Bond's Lease ended on March 24, 2022 pursuant to the Lease Termination Notice and the Stipulation, leaving this Court without authority to revive the Lease eighteen months after the fact.

12. In fact, although Payam is entirely inapplicable to the facts at bar, it is shocking that Bond, viewing it as applicable, even relies on it as authority for its requested relief. The Court in Payam ultimately rejected the tenant's argument opposing the landlord's motion to vacate the Automatic Bankruptcy Stay since the tenant could not establish that it could make the payments due to the landlord or otherwise provide adequate protection to the landlord in order to invoke the protections of the Automatic Stay. Here, Bond is in no better shape than was the tenant in Payam, as it has made absolutely no showing that (i) it can make payment of the millions of dollars in arrears due to Owner, (ii) it can provide Owner with adequate protection so that Owner will be paid all of the monies which are due to it, or (iii) that Owner will continue to receive all payments due from Bond going forward. Payam, therefore, offers no help to Bond on numerous levels.

13. In short, Bond cannot succeed on the merits in the adversary proceeding it has commenced, as it was not in possession of any interest whatsoever in the Premises or the Lease when it filed its Bankruptcy Petition six days after being legally evicted from the Premises. As such, and with the Lease not part of Bond's estate in Bankruptcy, the Automatic Stay is absolutely inapplicable to Owner or any party in connection with the Premises, leaving Bond without any basis to seek the relief it seeks in this adversary proceeding.

14. For the reasons set forth herein, in the accompanying Declarations of David Kershner and Gregory Haye, as well as the objections to Debtor's Cash Collateral

Motions and other First Day Motions filed by Owner's counsel, it is respectfully requested that this Court enter an order denying Bond's application in its entirety.

Dated: New York, New York
      December 4, 2023

 

/s/*Howard Grun*
Howard Grun