**BLANK ROME LLP**
1271 Avenue of the Americas
New York, NY 10020
Tel:    212-885-5000
Fax:    212-885-5001
Ira L. Herman
Mara B. Levin

**KAUFMAN FRIEDMAN PLOTNICKI & GRUN, LLP**
Howard Grun, Esq.
300 East 42nd Street- 10th Floor
New York, New York 10017
Phone: (212) 973-3330
hgrun@kfpgllp.com

*Co-Counsel for 92 Third Street, LLC*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| COWORKRS 3RD STREET LLC *dba* BOND GOWANUS, *et al.*, | Case No. 23-44306-ess |
| Debtors. | (Jointly Administered) |
| COWORKRS 3RD STREET LLC *dba* BOND GOWANUS | |
| Plaintiff, | |
| - against – | Adv. Pro. No.: 23-01113-ess |
| 92 THIRD STREET LLC, OREN RICHLAND, DEARBORN CAPITAL GROUP LLC, INNOVO WORKS 92 THIRD STREET LLC, and INNOVO WORKS LLC, | |
| Defendants. | |

**92 THIRD STREET, LLC'S OBJECTION TO**
**PLAINTIFF'S APPLICATION FOR THE ENTRY OF:**
**(I) A TEMPORARY RESTRAINING ORDER AND ORDER**
**SCHEDULING A HEARING ON SHORTENED NOTICE; AND (II) AN ORDER**
**GRANTING INJUNCTIVE RELIEF AND DIRECTING TURNOVER**

92 Third Street, LLC ("Landlord"), by and through its undersigned counsel, objects (this "Objection") to *Plaintiff's Application for the Entry of: (I) a Temporary Restraining Order and*

*Order Scheduling a Hearing on Shortened Notice; and (II) an Order Granting Injunctive Relief and Directing Turnover* [Adv. Docket No. 2] (the "Motion"), in support of which Landlord submits the concurrently filed declarations of David Kershner (the "Kershner Declaration") and Gregory Haye (the "Haye Declaration"), and affirmation of Howard Grun on behalf of Landlord (the "Grun Affirmation"), and respectfully states as follows:

**PRELIMINARY STATEMENT**

1. The relief sought in the Motion, styled as a request for a temporary restraining order, is in reality a disguised request for a mandatory injunction crafted to upset the *status quo ante* by placing a debtor back in possession of its former leasehold, after it has been lawfully evicted from such premises. In any event, the Debtor fails to satisfy its high burden for injunctive relief. Particularly, as demonstrated more fully below, the Debtor cannot demonstrate that (a) it will likely succeed on the merits of demonstrating that it had any interest in the Lease or the Stipulation of Settlement as of the Petition Date, (b) that it satisfies the irreparable harm standard, and (c) the harm to the Debtor outweighs the harm the Debtor's actions are causing the Landlord.

2. The evidence presented will show that more than a year prior to the petition date, CoWorkrs and the Landlord agreed in writing that the Lease (as herein defined) was terminated as of March 24, 2022. Thereafter, CoWorkrs occupied the Premises as a holdover tenant subject to strict compliance, time of the essence, with the terms of a Stipulation of Settlement. CoWorkrs failed to comply with such terms, failed prepetition to timely cure such defaults under the Stipulation of Settlement, and failed prepetition to seek to enjoin the eviction despite being given notice that it was about to be evicted. As a result, the Landlord terminated CoWorkrs' possessory interest in the Premises and terminated the Stipulation of Settlement. Thus, as of the petition date, CoWorkrs has no valid contractual interest in the Premises under either the Stipulation of Settlement or the terminated Lease that can be assumed.

**BACKGROUND**

  A. <u>**The Parties.**</u>

  3. Landlord is the owner of the building located at 68-80 Third Street, Brooklyn, New York 11231 (the "<u>Building</u>"), and is the landlord of the commercial space known as a Portion of Cellar, a Portion of First Floor, and a Portion of Second Floor in the Building (the "<u>Premises</u>").

  4. CoWorkrs was a tenant in the Premises pursuant to a certain lease dated October 16, 2014, between Landlord's predecessor, as landlord, and CoWorkrs, as tenant as thereafter modified by that certain First Lease Modification Agreement dated as of July 9, 2015, as assigned by Landlord's predecessor to Landlord by Assignment and Assumption of Leases dated July 8, 2015, for a term commencing as of June 1, 2015 and expiring on May 31 , 2025 (the "<u>Lease</u>").

  B. <u>**The State Court Action.**</u>

  5. On February 8, 2022, Landlord served CoWorkrs with a Notice to Cure Default, advising CoWorkrs that it was in default under the Lease.

  6. On March 24, 2022, Landlord commenced an action (the "<u>State Court Action</u>") against CoWorkrs in the Supreme Court of New York (the "<u>State Court</u>") seeking, *inter alia*, a judgment in ejectment and a money judgment for arrears based on CoWorkrs' defaults.

  7. On May 16, 2022, Landlord and CoWorkrs agreed to settle the State Court Action. Pursuant to the *Stipulation of Settlement* [Docket No. 7-1] so-ordered on April 29, 2022 by Justice Carolyn E. Wade of the Supreme Court of the State of New York, County of Kings, and entered by the County clerk on May 13, 2022 (the "<u>Stipulation of Settlement</u>"), CoWorkrs expressly agreed that the Lease shall be deemed terminated as of March 24, 2022 and that, as of that date, CoWorkrs' status was solely that of a holdover tenant in occupancy of the Premises, the Lease having been terminated. The State Court entered an order (the "<u>Lease Termination Order</u>") approving the Stipulation of Settlement.

3

8.      Pursuant to the Stipulation of Settlement, CoWorkrs was obligated to peacefully vacate and surrender possession of the Premises within five (5) days after service by Landlord of a notice to vacate (the "Vacate Notice"). Service of the Vacate Notice would be stayed pending strict compliance by CoWorkrs with the terms of the Stipulation of Settlement, including, without limitation, the payment of use and occupancy schedules set forth in the Stipulation of Settlement. Moreover, pursuant to the Stipulation of Settlement and Lease Termination Order, Landlord was empowered and authorized by the Court to utilize self-help to retake possession of the Premises after service of the Vacate Notice. Additionally, in the Stipulation of Settlement, CoWorkrs expressly agreed that if Landlord served a Vacate Notice and exercised its rights to retake possession, any of CoWorkrs' personal belongings, property, furnishings, or installations remaining in the Premises would be abandoned to Landlord.

9.      By April 2023 CoWorkrs payments became erratic, and it began falling behind in the payments which it was required to make pursuant to the Stipulation of Settlement. Thereafter, pursuant to the terms of the Stipulation of Settlement, Landlord provided CoWorkrs ten (10) days' notice to cure the default. CoWorkrs failed to cure the default. In fact, CoWorkrs did nothing. On November 14, 2023, Landlord sent the Vacate Notice to CoWorkrs. Again, knowing that its rights may be terminated and that its property may be abandoned, as it agreed in the Stipulation of Settlement, CoWorkrs did nothing. Subsequently, on November 21, 2023, in compliance with and as fully authorized by the Court through the Stipulation of Settlement and Lease Termination Order, Landlord took back possession of the Premises and changed the locks.

C.      **The Bankruptcy Filing.**

10.     Six days later, on November 27, 2023 (the "Petition Date"), CoWorkrs (the "Debtor") filed a voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of New York (the "Court").

11. On November 28, 2023, and November 30, 2023, the Debtor filed the First Day Motions, the Utilities Motion, and the Cash Collateral Motion.

12. The Cash Collateral Motion seeks, *inter alia*, to authorize the Debtor to use Cash Collateral to continue its post-petition operation. Specifically, the Debtor seeks to use Cash Collateral to pay use and occupancy payments, as shown in the line item for "Rent Expense" in the budget attached to the Cash Collateral Motion.

13. The Utilities Motion seeks, *inter alia*, to enjoin the Utility Companies from altering, refusing, or discontinuing Utility Services at the Premises.

14. On November 30, 2023, the Debtor filed the *Complaint* [Adv. Docket No. 1] (the "Complaint") against Landlord and other parties wholly unrelated to Landlord (collectively, the "Defendants"), as well as the Motion.

15. The Motion seeks to restrain Landlord and Defendants' access to the Premises and incorrectly asserts that the Premises is property of the estate.

## ARGUMENT

**I. THE DEBTOR FAILS TO MEET THE BURDEN FOR INJUNCTIVE RELIEF.**

16. "[E]ven more so than a preliminary injunction, [a TRO] is an 'extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Free Country Ltd. v. Drennen*, 235 F. Supp. 3d 559, 565 (S.D.N.Y. 2016) (quoting *JBR, Inc. v. Keurig Green Mt., Inc.*, 618 F. App'x 31, 33 (2d Cir. 2015)). To obtain such relief, the Debtor must satisfy four elements: "(1) a likelihood of success on the ultimate merits of the lawsuit; (2) a likelihood that the moving party will suffer irreparable harm if a TRO is not granted; (3) that the balance of hardships tips in the moving party's favor; and (4) that the public interest is not disserved by the relief granted." *Id*. Moreover, the Debtor's request for injunctive relief has all of the characteristics of a mandatory injunction, as such request seeks to undo acts

completed before the automatic stay was implicated by the chapter 11 filing. Therefore, it must meet a heightened standard for relief by showing "a clear or substantial likelihood of success on the merits." *JTH Tax, LLC v. Agnant*, 62 F.4th 658, 667 (2d Cir. 2023).

17.     The Debtor cannot satisfy any of these elements.

### A. The Debtor Has Not Demonstrated a Likelihood of Success on the Merits of its Claims Against the Landlord.

18.     The Debtor's Motion is tainted by factual inaccuracies and omissions designed to create false exigency and controversy that conceal the weakness of its legal position vis-à-vis the clear termination of its interest in the Premises under the Lease and as a holdover tenant under the Stipulation of Settlement, as well as its entitlement to treble damages. The Debtor cannot genuinely dispute that its interest in the Premises was lawfully terminated prepetition. Accordingly, its Motion should be denied.

### i. *The Debtor's Arguments Are Based on Factual Inaccuracies and Omissions and the Debtor Cannot Establish a Likelihood of Success on the Merits.*

19.     In its Motion, and accompanying *Memorandum of Law* [Adv. Docket No. 2-1] (the "MOL"), the Debtor failed to demonstrate that it has, as of the Petition Date, an interest in Premises under the Lease or the Stipulation of Settlement. Thus, to create an interest in the Premises, and fabricate exigent circumstances intended to capture the Court's attention and satisfy the standard for emergency relief, the Debtor alleges and relies on a false narrative rife with misstatements of the relevant facts and critical omissions, the most egregious of which are as follows:

- *No Interference with Licensees*. The Debtor argues that the Landlord is using the Debtor's equipment, employees, IP, networks, security system, assuming the Debtor's license agreements with its licensees, and presented the Debtor's licensee's with new license agreements Mot. ¶¶ 24, 29, 33. That is simply not true. In fact, if anything, the Landlord has advised licensees that there is an existing dispute between Innovo and the Debtor and that the Bankruptcy Court would determine whether the Debtor had an interest in the Premises. It has not advised Debtor's licensees to stop paying

the Debtor. Moreover, the Debtor broadly proclaims that the Landlord was not entitled to take any of these purported actions, but only alleges such actions were actually taken by Oren or Innovo. Thus, the Debtor appears to be trying to obfuscate the record.

- *No Interference with Rents.* Contrary to the Debtor's assertion, the Notice (in Exhibit I to the Motion), although prepared by the Landlord, was not sent by the Landlord and the Landlord had no knowledge of the substantive of Innovo's email in Exhibit I. As set forth in that Notice, (a) the Landlord clearly indicated the notice was for informational purposes only and was not an attempt to collect any monies owed to the Debtor or to exercise control over the Debtor's property, nor was it an attempt to provide legal advice, and (b) the Landlord indicated that there was an apparent dispute as to the appropriate tenant, as alleged by the Debtor, and that the Landlord would seek an order of the Bankruptcy Court confirming the rights of the parties (*e.g.*, "To resolve any confusion that the bankruptcy filing may have caused, we intend to seek an order from the Bankruptcy Court"). Kershner Decl. ¶ 28.

- *Negotiations for Dearborn's Potential Acquisition of the Debtor.* The Debtor attempts to portray the Landlord's efforts to re-let the Premises to Innovo promptly upon evicting the Debtor as some kind of conspiracy to defraud the Debtor. Mot. ¶ 26; MOL, at 17. However, the Debtor failed to clearly explain that Oren and Dearborn were in negotiations with the Debtor's parent to acquire the Debtor, and enter into a new lease for the Premises with the Landlord. Kershner Decl. ¶¶ 18-21, 24-25. The Landlord was preparing for more than six months for the acquisition to close and in anticipation of closing had negotiated the terms of a new lease. *Id.* When it became clear that the parties would not be able to reach an agreement, the Landlord merely attempted to salvage the situation by leasing the Premises to Innovo. *Id.*

20. Accordingly, the Debtor's allegations of a conspiracy serve only to misdirect the Court from the relevant facts and create a self-serving narrative. As a result, the facts alleged by the Debtor do not come close to satisfying the requirement of the likelihood of success on the merits.

      **ii.** ***The Lease Terminated Prepetition and the Debtor Does Not Have Any Interest to Protect.***

21. Section 362(b)(10) provides that the commencement of a bankruptcy case does not operate as a stay "of any act by a lessor to the debtor under a lease of nonresidential real property

7

that has terminated by the expiration of the stated term of the lease before the commencement of or during a case under this title to obtain possession of such property." The Court's analysis of the Debtor's claims that the Landlord violated the automatic stay should start and end here.

22.     Courts have interpreted section 362(b)(10) to apply to leases that were terminated by the landlord due to nonpayment prior to the end of the term set forth in the lease. *See, e.g.*, *In re Policy Realty Corp.*, 242 B.R. 121, 127-29 (S.D.N.Y. 1999) ("Although the Bankruptcy Code does not define the terms "terminated" and "stated term," the phrase "stated term" - which is not limited in any way - and the legislative history of § 362 support the conclusion that [the landlord]'s accelerated termination . . . is covered by §§ 541(b)(2) and 362(b)(10)."), *aff'd*, No. 99-5062, 2000 U.S. App. LEXIS 8846 (2d Cir. May 2, 2000).

23.     The outcome that 11 U.S.C. § 362(b)(10) was intended to produce is entirely fair and makes sense. That is because "[o]nce a lease has been terminated, the Bankruptcy Court does not have the power to revive it even through its equitable powers." *In re Neville*, 118 B.R. 14, 18 (Bankr. E.D.N.Y. 1990). A debtor's naked possessory interest in a property – where the lease has already expired – does not give the debtor rights in the property.  Under such a circumstance, it is entirely equitable that a landlord be permitted to take actions to evict the debtor.

24.     Here, it cannot be disputed that the Lease was terminated, with the Debtor's consent, over twenty months ago pursuant to the Stipulation of Settlement and Lease Termination Order. The Stipulation of Settlement gave the Debtor no power to resurrect the Lease by paying the outstanding amount of the pre-termination rent. After the Debtor stipulated to the surrender of its interest in the Lease, the Debtor was a mere holdover tenant. The "automatic stay does not extend to the Debtor a property right which [the Debtor] does not already have . . . [and bankruptcy] does not create longer leases or leases with different rent terms than agreed to between the parties

prior to bankruptcy however much a debtor would be benefitted." *In re de Kleinman*, 136 B.R. 69, 72 (Bankr. S.D.N.Y. 1991). As Judge Beatty noted in *Kleinman*: "[I]t would help the Debtor's reorganization if she owned a McDonald's franchise. But she does not, and the court cannot create one for her simply because it would be beneficial to her efforts to reorganize." *Id.* The same is true here. The Lease was terminated on March 24, 2022.

25. The Debtor argues that the "[c]ourt has ruled in *In re Payam, Inc.*, 642 B.R. 365 (Bankr. S.D.N.Y. 2022) that the issuance of a judgment and warrant of eviction no longer terminates a debtor's interest in a lease and that lease remained subject to assumption and cure pursuant to section 365 of the Bankruptcy Code." MOL, at 12. The Debtor, however, mischaracterizes the law and *Payam* is easily distinguishable.

26. *First*, in *Payam*, the parties never terminated the lease, but merely agreed to stay the issuance of a judgment and warrant by stipulation. 642 B.R. at 368. Here, the parties expressly agreed that the Lease was terminated and the Debtor no longer had any rights under the Lease. Mot., Ex. D, ¶ 2. Instead, the Debtor was merely a holdover tenant under the Settlement. *Id.* ¶¶ 3-4. Moreover, even its rights as a holdover tenant were terminated pursuant to the express terms of the Stipulation of Settlement. *Id.* ¶¶ 3, 11.

27. *Second*, and importantly, the court in *Payam* found simply that the effect of the statutory change to the New York Real Property Actions & Proceedings Law ("RPAPL") was that New York no longer prevents a bankruptcy court from permitting the debtor to assume an unexpired lease after a warrant of eviction is merely entered. 642 B.R. at 371. Necessarily, therefore, *Payam*'s finding is only relevant prior to the *actual* execution of eviction (*i.e.*, while the tenant still has some legal interest in the property). After the eviction is effectuated, a tenant no longer has a legal or possessory interest in the property which can be assumed.

28. Here, the Landlord executed its valid, enforceable, court sanctioned and agreed upon right to execute the eviction by self-help which the parties explicitly agreed was tantamount to a Marshal executing a warrant of eviction. *See* Mot. Ex. D, ¶ 3 (consenting to issuance of the Lease Termination Order "empowering and authorizing [the Landlord] to utilize self-help . . . with the utilization of such self-help remedy having the same force and effect as if the New York City Marshal or the New York City Sherriff had placed [the Landlord] into possession"). As a matter of law, the Debtor no longer has a legal or possessory right in the Premises which can be assumed, and the Debtor has no entitlement to occupy the Premises.

29. *Third*, the parties did not proceed under the RPAPL provisions that were at issue in *Payam*. *Payam* concerned the application of RPAPL section 749, which relates to summary proceedings under Article 7 in the Civil Court of New York City for a warrant of eviction. *See generally* 642 B.R. 365. Here, in contrast, the Landlord commenced an action in the New York Supreme Court for a judgment in ejectment. Kershner Decl. ¶ 2(iii). The Landlord's action did not result in a warrant, but in the Lease Termination Order, which itself authorized the Landlord to evict CoWorkrs, including by self-help. Mot., Ex. E, at 2–3.

30. Thus, *Payam* is entirely inapplicable to the issues at bar. The relevant legal analysis is provided by *First National Stores, Inc. v. Yellowstone Shopping Center, Inc.*, 237 N.E. 2d 868 (N.Y. 1968), which clarifies that when a commercial tenant fails to comply with a default notice threatening termination of its tenancy unless the default is cured by a specified deadline, the resulting termination is a *fait accompli* and the lease cannot be revived by the courts. Moreover, *Payam* ultimately found cause to lift the automatic stay since the tenant could not show it could cure its prepetition arrearages, provide adequate protection, or even pay its post-petition rent. 642 B.R. at 370-71. Likewise, CoWorkrs has no prospect in this case of curing its prepetition

arrearages, which total in the millions.

### iii. *The Debtor's Interest in the Stipulation of Settlement Terminated and the Stipulation of Settlement Cannot be Assumed.*

31. The Stipulation of Settlement provides, in relevant part, that (a) the Debtor would have the status of a holdover tenant, subject to "strict compliance" with the Stipulation of Settlement, and (b) the Debtor's status as a holdover tenant under the Stipulation of Settlement could be terminated by eviction – either judicially or by self-help. Mot., Ex. D, ¶¶ 3-4, 11. Because the Debtor failed to comply with its obligations under the Stipulation of Settlement and the Landlord properly evicted the Debtor before this bankruptcy case was filed, the Debtor's rights as a holdover tenant, and any de facto lease[1] thereunder, terminated prepetition and cannot be assumed. The Debtor's arguments to the contrary fail.

32. *First*, the Debtor contends that that self-help does not terminate a lease as a matter of law. MOL, at 13. Here, *the Lease* was terminated by contract (i.e., the Stipulation of Settlement), not self-help, as discussed above. While the Debtor's interest as a *holdover tenant* under the Stipulation of Settlement was terminated by self-help, it was terminated in accordance with the agreed terms in such Stipulation of Settlement. Grun Affirmation ¶ 6. Such termination was effective to cut off the Debtor's right to possession. *See, e.g.*, *Drapaniotis v. 36-08 33rd St. Corp.*, 853 N.Y.S.2d 356, 357 (App. Div. 2008) (holding landlord did not interfere with any right of tenant to continued possession, where tenant had failed to pay its rent and the lease provided that landlord could re-enter and regain possession following tenant's breach of its obligation to pay

---

[1] The Debtor's argument that the Stipulation of Settlement was not a lease and instead an executory contract is a red herring because a debtor has no interest in either a lease or contract that terminates by its own terms prepetition. Additionally, the Debtor's reliance on *McCants* for the proposition that a stipulation does not create a lease is misplaced. *In re McCants*, No. 12 B 14406 ALG, 2012 WL 6093496, at *2 (Bankr. S.D.N.Y. Dec. 7, 2012). In *McCants* the stipulation obligated the landlord to make a payment to the tenant in connection with its voluntary agreement to vacate. There "was no payment of rent, which in the lease agreement context is defined as 'the compensation to be paid by a tenant for the use and occupation of land, or for the right thereto.'"

such rent, by "locking" tenant's "electric box" so as to cut-off power).

33.     *Second,* the Landlord's self-help was lawful. Specifically, (a) the Stipulation of Settlement reserved the Landlord's right to reenter and regain the premises upon tenant's breach of its obligation to pay rent under the Stipulation of Settlement; (b) prior to reentry, the Landlord served upon the Debtor a rent demand, (c) the reentry was effected peaceably, and (d) as conceded by the Debtor, it is in default. Kershner Decl. ¶¶ 12-13, 21; Haye Decl. ¶¶ 2-4; Mot. ¶ 21. Thus, it cannot be disputed that the Landlord lawfully exercised its self-help rights under the Stipulation of Settlement. *E.g.*, *Sol De Ibiza, LLC v. Panjo Realty, Inc.*, 911 N.Y.S.2d 567 (App. Term 2010); *Bozewicz v Nash Metalware Co.*, 725 N.Y.S.2d 671 (App. Div. 2001); *110-45 Queens Blvd. Garage v Park Briar Owners*, 696 N.Y.S.2d 490 (App. Div. 1999); *Jovana Spaghetti House v Heritage Co. of Massena*, 592 N.Y.S.2d 879 (App. Div. 1993); *see also Lee v Park*, 793 N.Y.S.2d 214 (App. Div. 2005); *N. Main St. Bagel Corp. v Duncan*, 775 N.Y.S.2d 362 (App. Div. 2004).

34.     *Third*, the Debtor incorrectly contends that operative self-help provisions are those in the Lease, rather than the Stipulation of Settlement. MOL, at 14-15. Again, the Debtor negotiated in a signed writing – the Stipulation of Settlement – the operative self-help provisions to govern its rights as a holdover tenant, and agreed that its rights as a tenant, under the Lease, were terminated without the ability to cure and revive the Lease. Mot., Ex. D, ¶¶ 2-3, 11.

35.     *Fourth*, the Debtor falsely alleges the Landlord impermissibly exercised its self-help rights through Oren. Mot ¶ 29. In fact, the Landlord properly effectuated its self-help rights by having its property manager change the locks and cancel the Debtor's access. Hayes Decl. ¶¶ 1-3. Thus, contrary to the Debtor's assertion, it was not Oren, it was the Landlord that effectuated its rights under the Stipulation of Settlement. *Id.* Having clearly evicted the Debtor, Innovo was granted access to the Premises. *Id.* ¶ 4. Innovo's subsequent access to the premises after completion

of the eviction, is another red herring, and has no bearing on whether the Landlord properly effectuated its rights.

36. Accordingly, the Debtor cannot assume the Stipulation of Settlement, if it is any of an executory contract, an unexpired lease or neither within the meaning of section 365 of the Bankruptcy Code. Simply put, five days after the Landlord gave the Vacate Notice, the eviction was lawfully completed.

### iv. *The Presence of Any Licensees Does Not Give the Debtor a Possessory Interest.*

37. The Debtor contends that the fact that the third-party licensees have access to the Premises creates a possessory interest in the property in favor of the Debtor. MOL, at 9-10. That is not true. A third-party contract between the Debtor's licensees and the Debtor, to which the Landlord is not a party, does not, and cannot, create a right or interest in the Premises, particularly a Premises in which the Debtor has no other purported interest. Instead, a licensee can only have the rights for which the licensor, i.e., the Debtor, has the ability to grant.  Here, the Debtor's terms and conditions explicitly provided that (a) "[t]he License conveyed herein does not constitute an interest or right in real property, and is further fully subordinated to the Lease," (b) "Licensee acknowledges that it maintains no interest in real property through this Agreement," and (c) its ability to access the Premises is dependent on the Debtor's right and access to the Premises.[2] Thus, the mere physical presence of any individual Licensee does not create an interest for the Debtor in the Premises.

38. Likewise, the presence of any of individuals who were employees of the Debtor on the Premises does not give the Debtor a possessory interest. MOL, at 9-10. Any such persons are not admitted to or working at the Premises as employees of the Debtor, carrying on the Debtor's

---

[2] https://www.bondcollective.com/resources/

13

business, but as guests or employees of Innovo.

### v. *The Debtor Fails to State a Plausible Claim under RPAPL 853.*

39. Consistent with the Debtor's false narrative of this case, it wrongly argues that it is entitled to treble damages under RPAPL. MOL, at 13-14. Section 853 of RPAPL provides:

> If a person is disseized, ejected, or put out of real property in a forcible or unlawful manner, or, after he has been put out, is held and kept out by force or by putting him in fear of personal violence or by unlawful means, he is entitled to recover treble damages in an action therefor against the wrong-doer.

RPAPL § 853. The Debtor's argument fails in consideration of the law, the facts, and equity.

40. *First*, the Debtor has not, and cannot, establish that the Landlord's self-help was unlawful. It is dispositive that, as set forth above, the Landlord complied with the law and acted in accordance with its agreed upon, express, and court-approved rights. *See, e.g.*, *Steinman v. 319 W. 48th St. Realty Corp.*, 715 N.Y.S.2d 1, 1 (App. Div. 2000) ("Plaintiff's wrongful eviction claim was properly dismissed in view of the parties' stipulation settling a prior summary nonpayment proceeding."); *Dinolfi v. Berkeley Assocs. Co.*, 98 A.D.2d 644, 644, 469 N.Y.S.2d 398 (1983) ("The Civil Court judgment awarding possession to the landlord is a complete defense to the tenant's action for wrongful eviction.").

41. *Second*, is effectively undisputed that no force was involved in the self-help eviction. The Debtor alleged there was a "threat of physical force." MOL, at 15-16. But not only did the Debtor provide no support for this allegation, it did not even attempt to describe what force was threatened. Indeed, as the Landlord's property manager attests, while an employee of the Debtor appeared on the day of, that employee ultimately "left without incident." Haye Decl. ¶ 4.

42. *Finally*, an award of treble damages is in the discretion of the Court and not mandatory. *See, e.g.*, *Cathedral Props. Corp. v. Cathedral Ct. Assocs., L.P.*, 113 N.Y.S.3d 156, 161 (App. Div. 2019) ("[T]he court providently exercised its discretion in determining that the co-

op was not entitled to treble damages pursuant to RPAPL 853 under the circumstances of this case."). Here, assuming the Debtor was entitled to possession of the Premises (which it is not), the method of its ouster was not unlawful, in that the Landlord resorted to its bargained for, court approved, rights after notifying the Debtor of its intent to do so and reserving *no* response from the Debtor until after it exercised its rights. Accordingly, there is no basis for treble damages.

### B. The Debtor Cannot Demonstrate Irreparable Harm Addressable by a TRO or Preliminary Injunction.

43. Even if the Debtor could show some likelihood of success on its claims (it cannot), it still would not be entitled to a TRO because it does not, and cannot, satisfy the all-important irreparable harm requirement. Irreparable harm exists where there is a continuing wrong which cannot adequately be redressed by final relief on the merits. Such harm is often found where money damages cannot provide adequate compensation. *JSG Trading Corp. v. Tray–Wrap, Inc.*, 917 F.2d 75, 79 (2d Cir. 1990).

44. Additionally, "[t]he critical question is whether there exists an adequate remedy at law, not whether the moving party prefers one remedy to another." *In re Gedda*, No. 6:13-BK-02238-KSJ, 2015 WL 1406905, at *1 (Bankr. M.D. Fla. Mar. 24, 2015) (quoting *SME Racks, Inc. v. Sistemas Mecanicos Para, Electronica, S.A.*, 243 Fed. App'x. 502, 503-04 (11th Cir. 2007)). "Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Id.*

45. Here, the Debtor has repeatedly conceded that monetary damages is the appropriate redress. *See, e.g.*, Mot. ¶ 38 ("Oren, his accomplices, and the Landlord are liable for damages."); MOL, at 13 ("That possession can be and is restored all the time by New York Courts and as

discussed herein, there is a specific statute that sets forth the standard and sets damages."); *id.* ("Where the "Self-Help" is found to have not complied with the statue, treble damages can be awarded."); *id.* at 18 ("Damages resulting from lost profits and damage to an ongoing business are recoverable in a wrongful eviction."). As such, the Debtor fails to meet the irreparable harm requirement.

46.  Additionally, the Debtor's delay in filing for bankruptcy (*i.e.*, after the Notice of Default, Vacate Notice, and eviction) clearly undermines its claim of irreparable harm and "demonstrates a lack of need for speedy action" that would justify the issuance of a preliminary injunction. *Gianni Cereda Fabrics, Inc. v. Bazaar Fabrics, Inc.*, 335 F. Supp. 278, 280 (S.D.N.Y. 1971). Indeed:

> [A]ny such presumption of irreparable harm is inoperative if the plaintiff has delayed either in bringing suit or in moving for preliminary injunctive relief. Though such delay may not warrant the denial of ultimate relief, it may, standing alone, preclude the granting of preliminary injunctive relief because *the failure to act sooner undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief* and suggests that there is, in fact, no irreparable injury."

*Tough Traveler, Ltd. v. Outbound Prods.*, 60 F.3d 964, 968 (2d Cir. 1995) (emphasis added). If the Debtor was clearly concerned about its right of access or its property, the Debtor had ample notice to communicate with the Landlord, seek a Yellowstone Injunction under New York law and/or file a petition for relief under the Bankruptcy Code. It did none of these in a timely fashion.

### C.  **The Balance of Equities Tips in the Landlord's Favor.**

47.  As to the balance of equities, "a court 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding the requested relief.'" *Main Street Baseball, LLC v. Binghamton Mets Baseball Club, Inc.*, 103 F. Supp. 3d 244, 262 (N.D.N.Y. 2015) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)). The party moving for preliminary injunctive relief "must establish that the 'balance of hardships tips in their

favor regardless of the likelihood of success.'" *Main Street Baseball*, 103 F. Supp. 3d at 262 (quoting *Salinger v. Colting*, 607 F.3d 68, 79-80 (2d Cir. 2010)).

48. In this context, "[t]he relevant harm is the harm that . . . occurs to the parties' legal interests" and "cannot be remedied after a final adjudication, whether by damages or a permanent injunction." *Salinger*, 607 F.3d at 81. Here, the balance of equities plainly weighs in favor of the Landlord and against the Debtor, which is improperly using the automatic stay as a sword, rather than a shield, to regain possession of the Premises after being in default of its obligations under the Lease and Stipulation of Settlement for years and then properly evicted.

49. *First*, contrary to the Debtor's assertion, the relief requested by the Debtor does not "maintain the *status quo* pending trial," *see* MOL, at 19, as the Debtor seeks the restoration of its tenancy, a tenancy that has been terminated prepetition. Thus, putting the Debtor in physical possession of the Premises now, would confer a different status upon the Debtor then it had right before it filed for bankruptcy.

50. *Second*, this is not the case of an aggrieved debtor trying to restructure its business. Instead, this is a case where the debtor, prepetition, agreed to a lease termination, agreed to Oren acting as its agent to negotiate with the Landlord, failed to timely pay rent, failed to timely cure the outstanding arrears in rent, and when a Vacate Notice was sent, failed to respond. Kershner Decl. ¶¶ 10-16, 21-22. Because the Debtor slept on its rights and failed to respond to any of the Landlord's notices or communications, the Landlord exercised its agreed upon right to evict the Debtor. *Id.* ¶¶ 23, 26. If the Debtor believes that Oren acted outside the scope of his authority, the Debtor's recourse is against Oren, or against the Debtor's principals for failing to exercise their duties of oversight, but that recourse is not against the Landlord. As a matter of law, the Debtor is bound by the conduct of its agents as against third parties, such as the Landlord.

51. *Third*, the Debtor's actions continue to impair and prejudice the Landlord's right to commercialize its interest in the Premises, including its ability to sell the building and rent the Premises. *Id.* ¶¶ 29-30. The Landlord's lease with Innovo is contingent on the Landlord having possession of the Premises. *Id.* Because of this confusion, Landlord is now in a position where it has not yet released from escrow the Innovo Lease, and has not been paid by a Innovo the monies which is due under the Innovo Lease at this time. *Id.* Indeed, Owner's rights under the Innovo Lease are now threatened because it may not be able to provide Innovo with possession of the Premises by the January 31, 2024 possession date. *Id.*

WHEREFORE, the Landlord respectfully requests the Motion be denied and grant the Landlord such other and further relief as is just and proper.

| | |
|---|---|
| Dated: December 4, 2023<br>New York, New York | **BLANK ROME LLP**<br><br>By: /s/ Ira L. Herman<br>Ira L. Herman<br>Mara B. Levin<br>1271 Avenue of the Americas<br>New York, New York 10020<br>Telephone: (212) 885-5000<br>ira.herman@blankrome.com<br>mara.levin@blankrome.com<br><br>**KAUFMAN FRIEDMAN PLOTNICKI & GRUN, LLP**<br>Howard Grun, Esq.<br>300 East 42nd Street- 10th Floor<br>New York, New York 10017<br>Phone: (212) 973-3330<br>hgrun@kfpgllp.com<br><br>*Counsel for 92 Third Street, LLC* |