**Law Offices of Avrum J. Rosen, PLLC**          **Hearing Date: May 30,2024**
38 New Street                                    **Hearing Time: 10:30 a.m.**
Huntington, New York 11743                       **Objection Deadline: May 23, 2024**
(631) 423-8527
Avrum J. Rosen, Esq.
Alex E. Tsionis, Esq.
Nico G. Pizzo, Esq.

*Attorneys for CoWorkrs 3rd Street LLC dba Bond Gowanus*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
In re:                                           Chapter 11

      COWORKRS 3RD STREET LLC          Case No.: 23-44306-ess
      *dba* BOND GOWANUS,
                                  Debtor.
--------------------------------------------------------------X
COWORKRS 3RD STREET LLC
*dba* BOND GOWANUS

                            Plaintiff,          Adv. Pro. No.: 23-01113-ess

      - against -

92 THIRD STREET LLC,
OREN RICHLAND,
DEARBORN CAPITAL GROUP LLC,
INNOVO WORKS 92 THIRD STREET LLC,
and INNOVO WORKS LLC,

                            Defendants.
--------------------------------------------------------------X

**DEBTOR'S MOTION FOR THE ENTRY OF AN
ORDER AUTHORIZING DEBTOR TO ENTER INTO
PROPOSED SETTLEMENT PURSUANT TO RULE 9019
OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**

**TO:   THE HONORABLE ELIZABETH S. STONG
       UNITED STATES BANKRUPTCY JUDGE**

      CoWorkrs 3rd Street LLC *dba* Bond Gowanus, the above-captioned plaintiff and debtor

and debtor in possession (the "Debtor"), by and through its counsel, the Law Offices of Avrum J.

Rosen, PLLC, respectfully submits this as and for its motion (the "Motion") seeking the entry of

an order pursuant to section 105(a) of Title 11 of the United States Code (the "Bankruptcy Code")

1

and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), approving the proposed settlement agreement (the "<u>Settlement Agreement</u>") entered into by and between the Debtor, CoWorkrs LLC *d/b/a* Bond Collective *a/k/a* Bond Collective LLC ("<u>Bond Collective</u>"), 92 Third Street LLC ("<u>92 Third Street</u>"), Oren Richland ("<u>Oren</u>"), Dearborn Capital Group LLC ("<u>Dearborn</u>"), Innovo Works 92 Third Street LLC ("<u>Innovo 92</u>") and Innovo Works LLC ("<u>Innovo</u>" 92 Third Street, Oren, Dearborn and Innovo 92 collectively, the "<u>Defendants</u>" and the Defendants and the Debtor collectively, the "<u>Parties</u>"), and authorizing the Debtor to enter into same, respectfully states as follows:

## PRELIMINARY STATEMENT

1.      This Motion is submitted by the Debtor for the purpose of approving the settlement as set forth in the Settlement Agreement and authorizing the Debtor to enter into the settlement.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this Court pursuant to 28 U.S.C. § 1408 *et seq.*

3.      The statutory predicate for the relief requested herein is section 105(a) of the Bankruptcy Code and Rule 9019(a) of the Bankruptcy Rules.

## BACKGROUND

4.      On November 27, 2023, the Debtor filed a voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code.

5.      The Debtor continues to operate its business and manage its property as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner or committee has been appointed in this case.

6.      On November 28, 2023, the Debtor filed its Declaration of David Goldwasser, pursuant to E.D.N.Y. LBR 1007-4 [Bank. Dkt. No. 7] (the "Goldwasser Declaration"). A detailed factual background of the Debtor's business and operations, as well as the events leading to the filing of the Debtor's Chapter 11 case is more fully set forth in the Goldwasser Declaration, which is incorporated herein by reference.

7.      The Debtor is a wholly owned subsidiary of Bond Collective.

8.      The Debtor previously was the tenant under that certain non-residential lease (the "Bond Lease") between the Debtor, as tenant, and 92 Third Street, as landlord, of the premises consisting of a portion of the cellar, a portion of the first floor and a portion of the second floor (collectively, the "Demised Premises") in the building located at 68-80 Third Street Brooklyn, New York 11231 (the "Building").

9.      The Debtor previously was the licensee under that certain License Agreement (the "Bond License Agreement") between the Debtor, as licensee, and 92 Third Street, as licensor, of the premises consisting of a portion of the second floor of the Building (the "Licensed Premises").

10.     The Bond Lease was terminated effective as of March 24, 2022, pursuant to (i) a Stipulation of Settlement dated March 28, 2022, so-ordered on April 29, 2022 by the Supreme Court of the State of New York, County of Kings (Wade, J.S.C.), and filed in the Kings County Clerk's Office on May 13, 2022 (the "Court-Ordered Stipulation") in that certain action titled *92 Third Street, LLC v. Coworkrs 3rd Street LLC*, Index No. 508728/22, and (ii) a Judgment issued by such Court dated April 29, 2022 and filed in the Kings County Clerk's Office on May 16, 2022 (the "Judgment").

11.     92 Third Street alleges that on or about November 21, 2023: (i) it used self-help to regain possession of the Demised Premises and the Licensed Premises from the Debtor as

authorized by the court-ordered Stipulation, the Judgment, and the Bond License Agreement; and (ii) it authorized Innovo 92 to occupy the Demised Premises and the Licensed Premises.

12.    The Debtor alleges that 92 Third Street failed to legally obtain possession of the Demised Premises and/or the Licensed Premises (the "Possession Dispute").

13.    On or about November 16, 2023, 92 Third Street, as landlord, and Innovo 92, as tenant, entered into that certain Lease for the Demised Premises (the "Innovo Lease") as well as that certain License Agreement for the Licensed Premises (the "Innovo License Agreement"), which lease is being held in escrow.

14.    92 Third Street is holding the Innovo Lease and Innovo License Agreement in escrow pursuant to the terms of such agreements.

15.    On November 30, 2023, the Debtor commenced the above-captioned adversary proceeding (the "Adversary Proceeding") by filing a complaint (the "Complaint") against the Defendants and applied for the entry of a temporary restraining order by the Bankruptcy Court (the "TRO").

16.    92 Third Street filed a written objection to the Debtor's application for a TRO, and the remaining Defendants raised oral objections to the Debtor's application for a TRO.

17.    Prior to the Bankruptcy Court's ruling on the Debtor's application for a TRO and/or the Debtor serving the Complaint, the Parties negotiated at arms' length and reached a Settlement Agreement, subject to the Bankruptcy Court's approval, resolving the Parties' claims against each other as set forth in the Settlement Agreement.

18.    The Court and all interested parties are respectfully referred to the Settlement Agreement, which is annexed to the Motion as **Exhibit "A"**.

**RELIEF REQUESTED**

19.      By this Motion, the Debtor seeks approval of the Settlement Agreement as being fair, equitable and in the best interest of the Debtor's estate in accordance with section 105(a) of the Bankruptcy Code and Rule 9019(a) of the Bankruptcy Rules.

20.      For the reasons set forth more fully below, the Debtor believes that the settlement falls well-above the lowest level of reasonableness and is in the best interest of the estate. Accordingly, the Debtor respectfully requests the Court to approve the Settlement Agreement.

**LEGAL AUTHORITY FOR APPROVAL OF SETTLEMENTS**

21.      Compromises and settlements are a normal part of the bankruptcy process. *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424 (1968) *reh'g denied,* 391 U.S. 909 (1968), *citing Case v. Los Angeles Lumber Products Co.,* 308 U.S. 106, 130 (1939). The structure and provisions of the Bankruptcy Code promote negotiation and settlement for the benefit of creditors in accordance with "the policy of the law generally [which is] to encourage settlements." *In re Jackson Brewing Co.,* 624 F.2d 599 (5th Cir. 1980). Resolution of claims through settlement furthers the goal of bankruptcy administration to liquidate estate assets as rapidly as possible "consistent with obtaining the best of fruitless litigation." *In re Carla Leather, Inc.,* 44 B.R. 457, 471 (Bankr. S.D.N.Y. 1984) *aff'd,* 50 B.R. 764 (S.D.N.Y. 1985).

22.      Bankruptcy Rule 9019(a) permits this Court to approve settlements. The Rule provides: "On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement.  Notice shall be given to creditors, the United States Trustee, the debtor, and indenture trustee as provided in Rule 2002 and to any other entity as the court may direct." Fed. R. Bank. P. 9019(a).

23.     Neither Bankruptcy Rule 9019 nor any section of the Bankruptcy Code explicitly sets forth the standards by which a court is to evaluate a proposed settlement for approval. However, the standards for approval of settlements in bankruptcy cases are well established by case law, focusing upon whether the purported settlement is reasonable and in the best interests of creditors. In *Anderson,* 390 U.S. at 414, the Supreme Court concluded that the trial court must make an informed, independent judgment as to whether a settlement is fair and equitable, stating:

> There can be no informed and independent judgment as to whether a proposed compromise is fair and equitable until the bankruptcy judge has apprised himself of all the facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated. Further, the judge should form an educated estimate of the complexity, expenses and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to full and fair assessment of the wisdom of the proposed compromise. Basic to this process in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of litigation. *Anderson*, 390 U.S. at 414.

24.     The United States Court of Appeals for the Second Circuit has stated that the responsibility of the Judge is "not to decide the numerous questions of law and fact raised by appellants, but rather to canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." *In re W.T. Grant Co.,* 699 F.2d 599, 608 (2d Cir. 1983), *cert denied sub. nom. Cossoff v. Rodman,* 464 U.S. 822 (193). *Accord, In re Gardi,* 273 B.R. 4, 18 (Bankr. E.D.N.Y. 2002); *In re Interstate Cigar Co.,* 240 B.R. 816, 822 (Bankr. E.D.N.Y. 1999); *In re Spielfogel,* 211 B.R. 133, 143-44 (Bankr. E.D.N.Y. 1997); *In re Purofied Down Products Corp.,* 150 B.R. 519, 522-23 (S.D.N.Y. 1993). The assessment of a settlement only requires identification of the issues in controversy "so that the bounds of reasonableness can be seen with some clarity." *Carla Leather,* 44 B.R. at 470.

25.     In considering a proposed settlement, the court is guided by a lenient standard consistent with the theory that "little would be saved by the settlement process if bankruptcy courts

[had to conduct] . . . an exhaustive investigation and determination of the underlying claims in order to approve a settlement." *Purofied Down Products,* 150 B.R. at 522-23. In *Carla Leather*, the Court explained the policy underlying the abbreviated review of settlements under Bankruptcy Rule 9019 as follows:

> The very uncertainties of outcomes in litigation, as well as the avoidance of wasteful litigation expense, lay behind the Congressional infusion of a power to compromise . . . This could hardly be achieved if the test on hearing for approval meant establishing success or failure to a certainty.

*Carla Leather,* 44 B.R. at 470; *see also Purofield Down Products,* 150 B.R. at 522-23.

26.    In evaluating the propriety of a settlement, a court need not conduct a trial or even a "mini-trial" on the merits to actually resolve the exact factual and legal issues. *Interstate Cigar,* 240 B.R. at 822; *Spielfogel,* 211 B.R. at 143-33. Rather, the court must simply consider whether against the background of those issues, the settlement is reasonable. *Newman v. Stein,* 464 F.2d 689, 692 (2d Cir. 1972), *cert denied sub nom. Benson v. Newman,* 409 U.S. 1039 (1972). *See also In re International Distribution Centers Inc.,* 103 B.R. 420, 423 (S.D.N.Y. 1991); *In re Drexel Burnham Lambert Group Inc.,* 134 B.R. 493 (Bankr. S.D.N.Y. 1991). In so doing, the court may consider the settlement in the context of its familiarity with the history of the case, the complexity of the claims alleged, the parties, and the context in which the claims and the settlement arose. *See Anderson,* 390 U.S. at 444.

27.    The settlement evaluation process is not designed to substitute the court's judgment for that of the trustee. *Carla Leather,* 44 B.R. at 465. While a court is not expected to "rubber stamp" the trustee's proposed settlement, *In re Ionosphere Clubs Inc.,* 156 B.R. 414, 426 (S.D.N.Y. 1993), the court should give considerable weight to a trustee's informed judgment that a compromise is fair and equitable. *Anderson,* 390 U.S. at 444; *International Distribution Centers,* 103 B.R. at 423; *Drexel Burnham Lambert,* 134 B.R. at 496; *Carla Leather,* 44 B.R. at 472. As

stated by the district court in *International Distribution Centers,* the court should give weight to the support of not only the trustee but of other counsel to a settlement in determining the wisdom of the compromise. *Id.* at 423. Thus, a court should consider both the proponents' opinions and independently evaluate the arguments both for and against the settlement to determine whether the settlement should be approved. *Purofied Down Products,* 150 B.R. at 523.

28.    The court, apprised of the facts of the controversy and the risks and costs of the litigation, is bestowed with broad discretion to approve settlements that fall within the range of reasonableness. *Purofied Down Products,* 150 B.R. at 523; *In re Texaco, Inc.,* 84 B.R. 893, 901 (Bankr. S.D.N.Y. 1988). The proposed settlement need not be ideal, but merely above the lowest point in the range of reasonableness under the circumstances. *See, W.T. Grant,* 699 F.2d at 613 14; *Newman v. Stein,* 464 F.2d at 693; *Purofied Down Products,* 150 B.R. at 523-24. This concept of a "range of reasonableness" recognizes "the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent to taking any litigation to completion. *Newman v. Stein*, 464 F.2d at 693. Thus, a court should not insist upon the best possible settlement, but only that a settlement is within the range of reasonableness.

29.    In deciding whether a settlement should be approved, courts in the Second Circuit have considered some or all of the following factors:

1.  the relative benefits to be received by creditors under the proposed settlement;

2.  the likelihood of success in the litigation compared to the present and future benefits conferred by the proposed settlement;

3.  the prospect of complex and protracted litigation if the settlement is not approved;

4.  the attendant expenses, inconvenience and delay of litigation;

5.  the probable difficulties of collecting on any judgment that might be obtained;

6.  the competency and experience of counsel who support the proposed settlement;

7.  the extent to which the settlement is the product of arm's length bargaining; and not the product of fraud or collusion;

8.  the nature and breadth of any releases to be issued as a result of the proposed settlement; and

9.  the paramount interest of the creditors and proper deference to their reasonable views.

*See City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir. 1974); *Ionosphere Clubs* 156 B.R. at 414; *Purofied Down Products,* 150 B.R. at 522; *International Distribution Centers,* 103 B.R. at 422; *In re Fugazy,* 150 B.R. 103, 106 (Bankr. S.D.N.Y. 1993); *Drexel Burnham Lambert,* 134 B.R. at 497; *Crowthers McCall,* 120 B.R. at 287; *Texaco,* 84 B.R. at 901; *In re Lion Capital Group, Inc.,* 49 B.R. 163, 175 (Bankr. S.D.N.Y. 1985); *Carla Leather,* 44 B.R. at 466. *See 10 Collier on Bankruptcy,* §9019.02 (15th Ed. Revised 1998).

30.     In summary, the "very purpose of compromise is to avoid the trial of sharply disputed issues and to dispense with wasteful litigation." *Newman v. Stein,* 464 F.2d at 692.

## DISCUSSION

31.     The Debtor respectfully submits that the Settlement Agreement falls well above the lowest point in the range of reasonableness and that the Settlement Agreement was negotiated at arm's length with all Parties to the Settlement Agreement being represented by counsel. There were multiple factors that the Debtor considered in reaching settlement.

32.     First, the Debtor has determined in its reasonable business judgment that the benefits of the settlement outweigh its costs after considering the probability of success in litigating the claims, the complexity and likely duration of the litigation and related expenses and inconvenience, and all other factors bearing on the wisdom of the compromise, including the

interests of the creditors and the extent to which the settlement is the product of an arms-length negotiation.

33.     Second, the Debtor submits that the Settlement Agreement is fair, reasonable, and in the best interest of the estate. The Debtor is confident that its claims have merit and that it would ultimately prevail in the litigation. However, there is no certainty of success in the litigation. Despite the Debtor's belief that it would ultimately prevail, if the Debtor pursued its claims through to judgment, such litigation would consume the Debtor's limited and badly needed resources. In contrast, the settlement provides certainty and permits the Debtor to retake its space.

34.     Moreover, the Debtor believes that the Settlement Agreement is in the best interests of the Debtor's estate because it resolves the issues between the Parties, and prevents the expense and time associated with litigating against the Defendants to resolve the issues and claims between the Parties with little to no additional cost or expense.

35.     As a result of all of the above, the Debtor exercised its best business judgment to enter into the Settlement Agreement. The Debtor submits that the Settlement Agreement is fair, reasonable and in the best interest of the Debtor's estate, and the Debtor recommends approval of the Settlement Agreement.

[*Remainder of Page Intentionally Left Blank*]

**WHEREFORE**, for all of the reasons set forth herein, the Debtor respectfully requests that this Honorable Court enter an order: (i) authorizing the Debtor to enter into and approving the Settlement Agreement; together with (ii) such other, further and different relief that this Court deems just, proper and equitable.

Dated: May 8, 2024
      Huntington, New York

Respectfully submitted,

**Law Offices of Avrum J. Rosen, PLLC**

By:    */s/ Avrum J. Rosen*
      Avrum J. Rosen, Esq.
      Alex E. Tsionis, Esq.
      Nico G. Pizzo, Esq.
      38 New Street
      Huntington, NY 11743
      (631) 423-8527
      arosen@ajrlawny.com
      atsionis@ajrlawny.com
      npizzo@ajrlawny.com

      *Counsel to CoWorkrs 3rd Street LLC*
      *dba Bond Gowanus*